## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## (WEST PALM BEACH DIVISION)
www.flsb.uscourts.gov

In re:                                          Case No. 17-11834-BKC-EPK

JOSEPH K. RENSIN,                               Chapter 7

      Debtor.

_____/

NICOLE TESTA MEHDIPOUR, Chapter 7 Trustee       Adv. Case No. 17-_____-EPK

      Plaintiff,

v.

JOSEPH K. RENSIN, individually

      Defendant

_____/

### COMPLAINT FOR DECLARATORY RELIEF, OBJECTING TO EXEMPTIONS AND TURNOVER OF PROPERTY OF THE ESTATE

Nicole Testa Mehdipour, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Joseph K. Rensin (the "Debtor" or "Rensin"), by and through her undersigned counsel, files this Complaint (the "Complaint") for declaratory relief, objecting to exemptions, and turnover of property of the Estate, and in support states as follows:

### I.      PARTIES, JURISDICTION AND VENUE

### A.      Parties

1.      The Trustee is the duly authorized and acting Chapter 7 Trustee of the Debtor's estate created pursuant to Section 541 of Title 11 of the United States Code (the "Bankruptcy Code").

2.    Joseph K. Rensin ("Rensin" or "the Debtor") is a debtor under the provisions of chapter 7 of the Bankruptcy Code, who currently resides at 8965 Stone Pier Drive, Boynton Beach, FL 33472 (the "Florida Property").

**B.    Jurisdiction and Venue**

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334(b).

4.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), , (H),  and (0).

5.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    GENERAL ALLEGATIONS

**A.    Procedural Background**

6.    On February 15, 2017 (the "Petition Date"), this case was commenced by Rensin's filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

7.    On February 15, 2017, the Trustee was appointed as the duly authorized and acting Trustee of the Debtor's bankruptcy estate.  See Main Case ECF No. 2.

**B.    The FTC Action Against Blue Hippo and Rensin**

8.    Prior to the Petition Date, Rensin was the Chief Executive Officer and sole owner of two related entities known as BlueHippo Funding, LLC and BlueHippo Capital, LLC (collectively "BlueHippo").

9.    BlueHippo was in the business of marketing and selling computers and other electronic products to consumers on installment payment terms.

10.    On February 22, 2008, the Federal Trade Commission (the "FTC") filed an enforcement action against BlueHippo for fraud and other misrepresentations to consumers

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

including various violations of the Federal Trade Commission Act in the United States District Court, Southern District of New York, Case No. 08-cv-01819-PAC (the "FTC Enforcement Action").

11.    On April 10, 2008, a *Stipulated Final Judgment and Order of Permanent Injunction* (the "Consent Order") was entered in the FTC Enforcement Action against BlueHippo requiring them in pertinent part to: a) pay up to $5,000,000 to the FTC to compensate and provide refunds to consumers victimized by BlueHippo's conduct; b) comply with all FTC rules, regulations and laws in marketing and selling to consumers going forward; and c) timely file a Compliance Report with the FTC within the time prescribed by the Consent Judgment.

12.    On November 16, 2009, the District Court in the FTC Enforcement Action entered an "*Order for Contempt Defendants BlueHippo Funding, LLC, BlueHippo Capital, LLC and Joseph Rensin to Show Cause Why They Should Not Be Held in Contempt for Violating this Court's Stipulated Final Judgment and Order of Permanent Injunction*" (the "First Order to Show Cause") scheduling a further hearing for December 4, 2009 which was re-scheduled to February 10, 2010.

13.    The First Order to Show Cause was entered because the FTC sought a contempt order against Rensin individually and BlueHippo through a Motion to Show Cause dated November 12, 2009, for failure to abide by the terms of the Consent Order. The FTC sought joint and several contempt sanctions against Rensin and BlueHippo for consumer losses in an amount in excess of $14 million. The FTC's sanction claims arose based on Rensin and BlueHippo's continued efforts to make false and/or fraudulent misrepresentations to consumers to induce them to purchase electronics, including computers.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

14.     After conducting evidentiary hearings, on July 27, 2010, the District Court in the FTC Enforcement Action entered a final judgment in favor of the FTC and jointly and severally against Rensin and BlueHippo finding they violated the Consent Order, and awarding contempt sanctions of $609,856.38 (the "July 27 Final Judgment").

15.     The FTC appealed the July 27 Final Judgment arguing to the Second Circuit Court of Appeals that the District Court in the FTC Enforcement Action improperly calculated the contempt sanctions owed to the FTC and consumers and that the proper amount of contempt sanctions was actually in excess of $14 million.

16.     On November 24, 2014, the Second Circuit Court of Appeals affirmed the majority of the July 27 Final Judgment, vacated the amount of the contempt sanction portion of the July 27 Final Judgment and remanded the case back to the District Court to recalculate the sanction award consistent with the FTC's position and the instruction of the Second Circuit.

17.     On June 4, 2015, the District Court conducted oral arguments on the contempt sanction for consumer losses caused by Rensin and BlueHippo and orally held that the FTC was entitled to a compensatory baseline of $14,062,627.51 in sanctions, subject to Rensin's ability to show off-sets to minimize the sanction.

18.     After conducting further hearings, on April 19, 2016, the District Court entered a new final judgment (the "April 19 Final Judgment") against Rensin finding and holding in pertinent part that:

A.     Rensin and BlueHippo failed to disclose all material conditions of BlueHippo's refund policy to consumers who entered into BlueHippo's computer finance program;

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

B.    Rensin and BlueHippo violated the Injunction Order by allowing 55,982 consumers to pay $14,062,627.51 from April 10, 2008 to July 24, 2009 in connection with orders for computers and never providing the merchandise to the consumers;

C.    After off-sets were considered by the District Court, Rensin was found jointly and severally liable to the FTC for consumer injury stemming from the violation of the Consent Order in the total amount of $13,400,627.60 plus post-judgment interest; and

D.    The District Court ordered Rensin to turn over $8,000,000 to the FTC within 7 days with the balance to be paid at a later date and if he failed to do so, he was ordered to then immediately pay the full $13,400,627.60.

19.    Rensin appealed the April 19 Final Judgment to the Second Circuit Court of Appeals; however, by Order dated June 5, 2017, the Second Circuit affirmed the April 19 Final Judgment in its entirety.

20.    On November 18, 2016, while Resin's appeal was pending to the Second Circuit, the District Court in the FTC Enforcement Action entered another *Order for Contempt Defendants BlueHippo Funding, LLC, BlueHippo Capital, LLC and Joseph Rensin to Show Cause Why They Should Not Be Held in Contempt for Violating this Court's Stipulated Final Judgment and Order of Permanent Injunction* (the "Second Order to Show Cause") scheduling hearings for the District Court to again consider contempt sanctions against Rensin for failing to pay the April 19 Final Judgment.

21.    On January 4, 2017, the District Court conducted an evidentiary hearing on the Second Order to Show Cause. At the conclusion of the hearing, the District Court required both parties to file post-trial briefs on the issue of whether Rensin could be incarcerated for failing to comply with the April 19 Final Judgment.

22.     On February 15, 2017, immediately before all post-trial briefs were due, Rensin filed this instant Chapter 7 case in an effort to stay the FTC Enforcement Action.

23.     On March 6, 2017, this Court entered its *Order Abstaining From Determination Of Applicability Of The Automatic Stay And Denying Request For Sanctions* and allowed the Enforcement Action to continue in the District Court. See Main Case ECF No. 16.

24.     On March 28, 2017, the District Court in the FTC Enforcement Action entered an *Order Granting in Part and Denying in Part the Second Order to Show Cause* (the "March 28 Order") finding:

A.     Rensin continues to be in contempt of the April 19 Final Judgment;

B.     Rensin has assets which could be utilized to purge his contempt and comply with the April 19 Final Judgment, such as a 5000 square foot home purchased for $940,000 in cash (mortgage free), annuities valued at $2 million, $15,000 per month income stream from the annuities, and retirement accounts; and

C.     Rensin failed to show he had the inability to comply with the April 19 Final Judgment.

25.     The March 28 Order did not result in the incarceration of Rensin; instead, the District Court ruled that Rensin must meet in good faith with the FTC and negotiate a payment schedule which would entail the sale of Rensin's Florida property and the payment of some of the $15,000 annuity payment to satisfy his obligations under the April 19 Final Judgment.

26.     Last, the March 28 Order concluded that the District Court would stay enforcement of the March 28 Order and further contempt proceedings until such time as the automatic stay under 11 U.S.C. § 362 is lifted.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

**C.**    **Rensin's Interest in the Joren Trust and $2 Million in Annuities**

27.    Prior to the initiation of the FTC Enforcement Action, on November 9, 2001, Rensin signed documentation to form what is known as the "Joren Trust" (the "Joren Trust") which is an off-shore trust established initially under the laws of the Cook Islands. A true and correct copy of the original Joren Trust document is attached hereto as Exhibit "A".

28.    Rensin is both the settlor and primary beneficiary of the Joren Trust.

29.    The Joren Trust was initially settled with $9,000,000 contributed by Rensin.

30.    On paper, the Joren Trust is a spendthrift trust with a trustee and/or trust protector allegedly making all decisions pertaining to investments and distributions from the Joren Trust; however, upon information and belief, Rensin does in fact exert significant control over the assets of the Joren Trust.

31.    For example, while the FTC Enforcement Action was proceeding and the FTC was asserting individual liability against Rensin, Rensin instructed and directed the trustee of the Joren Trust to make the following distributions to Rensin:

- 5/26/11- $999,985
- 10/31/11- $750,000
- 2/17/12- $500,000
- 6/21/12- $350,000
- 9/21/12- $325,000
- 11/2/12- $300,000
- 1/14/13- $299,985
- 4/3/13- $299,985
- 6/24/14- $300,000
- 10/3/13- $300,000
- 11/25/13- $1,300,000
- 2/26/14- $300,000
- 4/16/14- $1,500,000
- 7/1/14- $1,154,087 (collectively the "Joren Trust Transfers").

32.    From the inception of the Joren Trust through the middle of 2016, Southpac Trust

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

International, Inc., a Cook Islands entity ("Southpac"), was the Trustee of the Joren Trust; however, in in December 2014, Orion Corporate and Trust Services ("Orion"), a Belize formed entity, became the Trustee of the Joren Trust and the situs of the Joren Trust was changed to Belize presumably for its debtor friendly fraudulent transfer law. A true and correct copy of the "Deed of Removal of Trustee, Appointment of New Trustee and Change of Trust Situs" and "Restatement of Trust" all signed by Rensin is attached hereto as Composite Exhibit "B".

33.    Based on documents produced by Rensin and his Rule 2004 Exam testimony taken on May 8, 2017, it appears that the majority of the Joren Trust transfers were utilized by Rensin to fund a startup technology company called AGX Funds, LLC f/k/a Fonetix, LLC, purchase three luxury homes in 2014 and otherwise fund an opulent lifestyle.

34.    In August, 2014, recognizing that his personal liability could be in excess of $14 million to the FTC if the FTC was successful on its appeal of the July 27 Final Judgment, Rensin consulted with at least two asset protection planning attorneys located in Florida and California.

35.    On December 16, 2015, shortly after the District Court oral ruling in the FTC Enforcement Action that Rensin would be personally liable to the FTC for 14,062,627.51 in contempt sanctions, Rensin transferred $350,000 from his personal bank account, the last amount of significant cash he had, back to the Joren Trust in a transparent effort to shield it from his creditors.

36.    Also, in December, 2015, the Joren Trust and/or Rensin utilized the remaining $1,700,000 of funds in the Joren Trust and the $350,000 that Rensin transferred back to the Joren Trust to fund a $350,000 deferred variable annuity policy (the "Variable Annuity") and $1,700,000 fixed annuity (the "Fixed Annuity") which purports to pay Rensin $15,000 per month during his life with any remainder transferred to his heirs. A true and correct copy of the

Variable Annuity is attached hereto as Exhibit "C" and a true and correct copy of the Fixed Annuity is attached hereto as Exhibit "D".

37.    The business entity which sold the Variable Annuity and Fixed Annuity to the Joren Trust and/or Rensin is known as Advantage Life and Annuity Company, SPC, a Cayman Islands company ("Advantage Life").

38.    According to the terms of both the Variable Annuity and Fixed Annuity (the "Annuities"), the Joren Trust is the policy owner with Rensin designated as "annuitant".

39.    Rensin does not seek to exempt his interest in the Joren Trust, Variable Annuity or Fixed Annuity on his Schedule C list of exemptions; however, Rensin does seek to exempt his interest in a Regions Bank Checking account holding $79,014.00 (the "Regions Annuity Account") claiming that the funds in the bank account are distributions from the Fixed Annuity and exempt under Florida Statute section 222.14.

## COUNT I
## DECLARATORY JUDGMENT THAT THE FUNDS IN THE ANNUITIES AND/OR JOREN TRUST ARE PROPERTY OF THE ESTATE

40.    The Trustee realleges and reincorporates the allegations in paragraphs 1 through 39 above as if fully reinstated herein.

41.    This is an action against the Debtor seeking a declaratory judgment that the the Variable Annuity, Fixed Annuity, any proceeds from the Annuitiesand/or funds held in the Joren Trust are property of the Estate.

42.    Rensin was both the settlor and prime beneficiary of the Joren Trust, which was totally funded with non-exempt assets.

43.    As such, under applicable non-bankruptcy law, the assets held by the Joren Trust constitute property of the Estate under 11 U.S.C. § 541(c)(2) because applicable non-

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

bankruptcy law does not recognize transfer restrictions in self settled trusts where a debtor is both the settlor and beneficiary.

44.     Both the Variable Annuity and Fixed Annuity were funded with assets from the Joren Trust which were non-exempt assets which otherwise would constitute property of the Estate had the assets not been fraudulently transferred to Advantage Life.

45.     Moreover, both the Variable Annuity and Fixed Annuity were funded through transfers authorized and/or directed by either Rensin and/or Orion as Trustee at a time when Rensin knew he was obligated on a significant financial obligation owed to the FTC which rendered him insolvent and otherwise purchased with the actual intention to hinder, delay and/or defraud creditors of the Estate.

46.     Accordingly, the Debtor's interest in any property held in the Joren Trust, the Variable Annuity, the Fixed Annuity, and any proceeds of the Annuities constitute property of the Estate subject to administration by the Trustee.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment finding that the assets held in the Joren Trust, the Variable Annuity, the Fixed Annuity, and proceeds of the Annuities, constitute property of the Estate and granting such other and further relief as is just and appropriate.

## COUNT II
### OBJECTION TO ANY EXEMPTION IN ANNUITIES, INCLUDING THE REGIONS ANNUITY ACCOUNT PROPERTY PURSUANT TO FLA. STAT. § 222.30

47.     The Trustee realleges and reincorporates the allegations in paragraphs 1 through 39 above as if fully reinstated herein.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

48.    This is an action to object to the Debtor's claim of exemption in the Regions Annuity Account, and to the extent necessary, the remainder of the funds in the Variable Annuity and Fixed Annuity and any future proceeds of the Annuities.

49.    Rensin was both the settlor and prime beneficiary of the Joren Trust, which was totally funded with non-exempt assets; therefor, at all material times, the assets of the Joren Trust were property of the Estate.

50.    Both the Variable Annuity and Fixed Annuity were funded with assets from the Joren Trust.

51.    The Variable Annuity and Fixed Annuity were funded through transfers authorized and/or directed by either Rensin and/or Orion as Trustee at a time when Rensin was insolvent and when Rensin knew he was obligated on a significant financial obligation owed to the FTC which he could not pay.

52.    The funding of the Annuities represents a prohibited effort to fraudulently convert a non-exempt asset into an exempt asset.

53.    The funds in the Regions Annuity Account are also the product of Rensin's impermissible efforts to shield his remaining assets from his creditors with the actual intention to hinder, delay and/or defraud creditors of the Estate.

54.    As such, under Florida Statute section 222.30, the Variable Annuity, Fixed Annuity, and any funds in the Regions Annuity Account do not qualify as exempt assets as they are the product of a fraudulent transfer of non-exempt assets into exempt assets.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment denying the exemption for deposits in the Regions Annuity Account and any proposed exemption the Debtor may allege to the Variable Annuity, the Fixed Annuity, and/or any

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

proceeds or cash surrender value of the Annuities and granting such other and further relief as is just and appropriate.

## COUNT III
### TURNOVER UNDER SECTION 542 OF THE BANKRUPTCY CODE

55.    The Trustee realleges and reincorporates the allegations in paragraphs 1 through 39 above as if fully reinstated herein.

56.    This is an action for turnover of property pursuant to Section 542(a) of the Bankruptcy Code.

57.    The Joren Trust, Variable Annuity, Fixed Annuity and the Regions Annuity Account constitute property of the Estate subject to administration by the Trustee.

58.    Rensin is improperly in possession of the funds in the Regions Annuity Account and continues to receive $15,000 per month from the Fixed Annuity.

59.    As such, Rensin should be compelled to immediately turnover to the Trustee the funds in the Regions Annuity Account, the $15,000 per month income stream from the Fixed Annuity and any and all other funds or cash surrender value held in the Variable Annuity and Fixed Annuity as all of the assets and accounts constitute property of the Estate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment compelling Rensin to turnover to the Trustee the funds in the Regions Annuity Account, the

12

$15,000 per month income stream from the Fixed Annuity and any and all other funds or cash surrender value held in the Variable Annuity and Fixed Annuity and granting such other and further relief as is just and appropriate.

Dated:  July 17, 2017          Respectfully submitted,

**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Tel: (954) 463-2700
Fax: (954) 463-2224

By:   /s/ D. Brett Marks
    D. Brett Marks, Esq.
    Florida Bar No. 096635
    Email: brett.marks@akerman.com
    Eyal Berger, Esq.
    Florida Bar No: 11069
    Email: eyal.berger@akerman.com

# EXHIBIT "A"



# JOREN TRUST

# JOREN TRUST

## TABLE OF CONTENTS

Page

ARTICLE I

DEFINITIONS AND CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
- A.    NAME OF TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
- B.    DISTRIBUTION EVENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
- C.    SETTLEMENT; TRUST; TRUST FUND, ETC. . . . . . . . . . . . . . . . . . 2
- D.    PROVISIONS RELATING TO BENEFICIARIES . . . . . . . . . . . . . . 2
- E.    FIDUCIARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- F.    ESTATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- G.    PERSONAL REPRESENTATIVE . . . . . . . . . . . . . . . . . . . . . . 3
- H.    TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- I.    CHILD; CHILDREN; GRANDCHILD; GRANDCHILDREN; DESCENDANT
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
- J.    HEIRS-AT-LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
- K.    PER STIRPES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
- L.    HEADINGS AND CAPTIONS; GENDER AND NUMBER . . . . . . . . . . 5
- M.    SURVIVORSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
- N.    APPLICABLE LAW; CONSTRUCTION . . . . . . . . . . . . . . . . . . . . 5
- O.    CODE; INTERNAL REVENUE CODE; REGULATIONS . . . . . . . . . . 8
- P.    RELATED OR SUBORDINATE PARTY . . . . . . . . . . . . . . . . . . . 8
- Q.    DISCRETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
- R.    HEREIN; HEREUNDER; ETC. . . . . . . . . . . . . . . . . . . . . . . . 9
- S.    ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
- T.    SPOUSE; SETTLOR'S SPOUSE . . . . . . . . . . . . . . . . . . . . . . 9
- U.    LEGAL AGE; ADULT; AGE OF MAJORITY . . . . . . . . . . . . . . . . 10
- V.    INCAPACITY; ADJUDICATED INCAPACITY . . . . . . . . . . . . . . . 10
- W.    SEVERABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
- X.    PROTECTOR; TRUST PROTECTOR . . . . . . . . . . . . . . . . . . . . 11
- Y.    TRUST PERIOD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
- Z.    PERSON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
- AA.   COMMENCEMENT OF TRUSTS . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE II

DISPOSITIVE PROVISIONS: DURING THE SETTLOR'S LIFETIME . . . . . . . . . . 12
- A.    INCOME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
- B.    PRINCIPAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
- C.    DISCRETIONARY DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . 12
- D.    TESTAMENTARY POWER OF APPOINTMENT . . . . . . . . . . . . . . 12
- E.    NATURE OF POWER OF APPOINTMENT . . . . . . . . . . . . . . . . . 13

Case 1:08-cv-01819-PAC    Document 169-3    Filed 03/10/17    Page 3 of 50

ARTICLE III
    DISPOSITIVE PROVISIONS: UPON THE SETTLOR'S DEATH . . . . . . . . . . . . . 13
        A.    UPON DISTRIBUTION EVENT . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        B.    DIVISION OF TRUST ESTATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        C.    ADMINISTRATION OF TRUSTS . . . . . . . . . . . . . . . . . . . . . . . . 14
        D.    LIMITATION ON EXERCISE OF POWER . . . . . . . . . . . . . . . . . . . 17
        E.    DISTRIBUTION UPON TERMINATION OF TRUST PERIOD . . . . . 18
        F.    GENERATION-SKIPPING TAX PROVISIONS . . . . . . . . . . . . . . . 19
        G.    COORDINATION WITH GOVERNMENTAL OR PRIVATE ASSISTANCE
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARTICLE IV
    TERMINATION AT TRUSTEES' DISCRETION . . . . . . . . . . . . . . . . 21

ARTICLE V
    PROTECTIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        A.    SPENDTHRIFT PROVISION . . . . . . . . . . . . . . . . . . . . . . . . . 22
        B.    NO ACTION UNDER DURESS . . . . . . . . . . . . . . . . . . . . . . . . 24
        C.    CHANGE IN SITUS/APPLICABLE LAW . . . . . . . . . . . . . . . . . 25
        D.    REVISIONS OF INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . 26
        E.    DISCLAIMERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        F.    DISREGARDING INTERESTS OF OTHERS . . . . . . . . . . . . . . . 27
        G.    CHANGE IN TRUST PERIOD . . . . . . . . . . . . . . . . . . . . . . . . 27
        H.    EXCLUSIVE PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARTICLE VI
    DISABILITY OF BENEFICIARY . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARTICLE VII
    FIDUCIARY POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        A.    PROPERTY RETENTION AND INVESTMENTS . . . . . . . . . . . . . 30
        B.    ACTION AS SECURITIES OWNERS . . . . . . . . . . . . . . . . . . . . 31
        C.    REGISTRATION OF PROPERTY . . . . . . . . . . . . . . . . . . . . . . 32
        D.    PRINCIPAL AND INCOME . . . . . . . . . . . . . . . . . . . . . . . . . 32
        E.    BUSINESS, FARM, AND NATURAL RESOURCE INTERESTS . . . . . . . . 34
        F.    DISPOSITION OF PROPERTY . . . . . . . . . . . . . . . . . . . . . . . 36
        G.    BORROW OR LEND MONEY AND PLEDGE PROPERTY . . . . . . . . 36
        H.    COMPROMISE AND SETTLE CLAIMS . . . . . . . . . . . . . . . . . 37
        I.    DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
        J.    EMPLOYMENT OF AGENTS . . . . . . . . . . . . . . . . . . . . . . . . 38
        K.    APPORTIONMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
        L.    POWERS RELATING TO TRUSTS . . . . . . . . . . . . . . . . . . . . . 39
        M.    TRANSACTIONS WITH CERTAIN FIDUCIARIES . . . . . . . . . . . 41
        N.    EXECUTION OF DOCUMENTS . . . . . . . . . . . . . . . . . . . . . . 42
        O.    TRANSACTIONS WITH CO-OWNERS AND ASSOCIATES . . . . . . . 42
        P.    TAX PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Exhibit C

Q.      OPTIONAL TREATMENT OF DEDUCTIONS . . . . . . . . . . . . . . . . 46
R.      EMPLOYEE BENEFIT PLAN ELECTIONS . . . . . . . . . . . . . . . . . . . 46
S.      DELEGATION OF DUTIES AND POWERS . . . . . . . . . . . . . . . . 46
T.      PROVISIONS RELATING TO INSURANCE . . . . . . . . . . . . . . . . . . 47
U.      CLOSELY HELD BUSINESS . . . . . . . . . . . . . . . . . . . . . . . . . . 50
V.      MANAGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
W.      GENERAL AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
X.      RESTRICTION ON EXERCISE OF POWER . . . . . . . . . . . . . . . 53
Y.      DIRECTIONS TO FIDUCIARIES . . . . . . . . . . . . . . . . . . . . . 53
Z.      ADDITIONAL POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

ARTICLE VIII
        APPOINTMENT OF, AND PROVISIONS RELATING TO, FIDUCIARIES . . . . . . . . 55
A.      APPOINTMENTS; RESIGNATIONS . . . . . . . . . . . . . . . . . . 55
B.      ADDITIONAL REMOVAL AND SUCCESSION PROVISIONS . . . . . . . . . 60
C.      WAIVER OF SECURITY . . . . . . . . . . . . . . . . . . . . . . . . . . 70
D.      FIDUCIARIES' RESPONSIBILITY . . . . . . . . . . . . . . . . . . . . 70
E.      TRANSACTIONS WITH RELATED PARTIES . . . . . . . . . . . . . . . 72
F.      ACTION OF FIDUCIARIES . . . . . . . . . . . . . . . . . . . . . . . . . 72
G.      ACCOUNTING AND QUALIFICATION . . . . . . . . . . . . . . . . . 74
H.      COMPENSATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
I.      MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
J.      DISCLOSURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

ARTICLE IX
        TRUST IRREVOCABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

ARTICLE X
        RECEIPT OF PROPERTY BY TRUSTEES . . . . . . . . . . . . . . . . . . . 80
A.      INITIAL TRUST CONTRIBUTION . . . . . . . . . . . . . . . . . . . . . 80
B.      SUBSEQUENT TRUST CONTRIBUTIONS . . . . . . . . . . . . . . . . 81

ARTICLE XI
        ACCUMULATIONS AND PERPETUITIES . . . . . . . . . . . . . . . . . . . . 81

ARTICLE XII
        PROVISIONS RELATING TO THE TRUST PROTECTOR . . . . . . . . . . . . 81
A.      APPOINTMENT OF FIRST PROTECTOR . . . . . . . . . . . . . . . . 81
B.      SUCCESSOR PROTECTOR . . . . . . . . . . . . . . . . . . . . . . . . . 82
C.      VACANCY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
D.      VETO POWER OF PROTECTOR . . . . . . . . . . . . . . . . . . . . . 83
E.      WAIVER OF VETO POWER . . . . . . . . . . . . . . . . . . . . . . . . 84
F.      TRUST CONSTRUCTION IF NO PROTECTOR . . . . . . . . . . . . . 84
G.      COMMITTEE OF TRUST PROTECTORS . . . . . . . . . . . . . . . . 85
H.      REPRESENTATION OF BENEFICIARIES . . . . . . . . . . . . . . . . 85
I.      RESPONSIBILITY OF PROTECTOR . . . . . . . . . . . . . . . . . . . 85

J.    COMPENSATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

ARTICLE XIII
POWERS OF APPOINTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
A.    GENERAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
B.    OPERATING RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

SCHEDULE I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

SCHEDULE II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

SCHEDULE III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

SCHEDULE IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

SCHEDULE V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

SCHEDULE VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

SCHEDULE VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

SCHEDULE VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102

# JOREN TRUST

This SETTLEMENT OF TRUST made this 9th day of November 2001, between **JOSEPH K. RENSIN** (hereinafter referred to as "Settlor") and the Trustee whose name and address are as set forth in Schedule I attached hereto and incorporated herein by this reference (who, together with its successors, shall be hereinafter called "Trustees" or "Fiduciaries").

## W I T N E S S E T H :

WHEREAS, the Settlor desires to provide for the security of the Beneficiaries identified on Schedule III and the Appointed Class described below; and

WHEREAS, the Settlor desires to create this Irrevocable Trust as the means to accomplish the aforesaid objective;

NOW, THEREFORE, the Settlor hereby transfers to the Trustee the property described in Schedule II annexed hereto and made a part hereof, receipt of which is hereby acknowledged by the Trustee, TO HAVE AND TO HOLD the same (together with any additional property acceptable to the Trustee which may at any time be conveyed to the Trustee by the Settlor or by any other person), IN TRUST, upon the terms and conditions hereinafter set forth.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION

Unless otherwise specified to the contrary in this Instrument:

A.    **NAME OF TRUST:** The name of the trust established under this Instrument shall be the **JOREN TRUST**. Such name shall be deemed adopted by the Trustees as the name of the Trust.

B.    **DISTRIBUTION EVENT:** The term "Distribution Event", as used herein, shall mean the death of the Settlor.

Exhibit C

**C.    SETTLEMENT; TRUST; TRUST FUND; ETC.:**

    1.    **GENERAL.** The terms "Settlement", "Trust", "Trust Fund", "Trust Property", and "Trust Estate", as used herein, shall mean and include all property received initially by the Trustee with respect to any separate trust, all additions thereto received by the Trustee from any other source, all investments and reinvestments of such property and such additions thereto and all accrued and undistributed income of such trust. The terms "Settlement" and "Trust" shall also mean each executed original of this Instrument, as required or permitted by the context in which such terms are used.

    2.    **PREDECESSOR TRUST.** For purposes of this Instrument, the term "Predecessor Trust" shall mean and refer to the trust identified as such in ARTICLE I A, above, if any.

**D.    PROVISIONS RELATING TO BENEFICIARIES:**

    1.    **BENEFICIARY:** Unless otherwise expressly identified herein, wherever reference is made herein to a "Beneficiary", such reference shall be deemed to mean a person identified as such on Schedule III attached hereto and incorporated herein by this reference. No person who is an Excluded Person hereunder (as hereinafter defined) shall be capable of being a Beneficiary.

    2.    **APPOINTED CLASS:** Subject to ARTICLE V, Sections D, E and F hereof, for purposes of this Instrument, the term "Appointed Class" means: (i) the Beneficiaries (as hereinabove defined); (ii) any then living spouse, surviving spouse, Child (as hereinafter defined), or other Issue (as hereinafter defined) of any of the Beneficiaries; and (iii) any organization appointed as such pursuant to the Settlor's Last Will and Testament which qualifies for United States federal income and/or estate tax deductions pursuant to §§ 170 and/or 2055 of the Code. No person

- 2 -

Exhibit C

who is an Excluded Person hereunder (as hereinafter defined) shall be capable of being a member of the Appointed Class.

      3.    **EXCLUDED PERSON:** For purposes of this Instrument, the term "Excluded Person" means any resident or citizen of the Cook Islands, any person who is specified as such in Schedule IV attached hereto and incorporated herein by this reference, any person who is so designated pursuant to ARTICLE II, Sections A and B hereof, and/or any person who is so designated pursuant to ARTICLE V, Section D hereof.

      E.    **FIDUCIARY:** Wherever reference is made herein to a "Fiduciary", such term shall mean and include the Trustee, as required or permitted by the context. Such term shall also mean and include a successor to such Trustee and each Co-Trustee.

      F.    **ESTATE:** The term "Estate", as used herein, shall mean not only the Settlor's property which is subject to court administration, but any other property with respect to which the Fiduciary may properly exercise any power, direction, or take any action.

      G.    **PERSONAL REPRESENTATIVE:** The term "Personal Representative", as used herein, means the person appointed by a court of competent jurisdiction to administer an estate of a decedent.

      H.    **TRUSTEE:** The term "Trustee" means the person appointed to hold, administer, and distribute the Trust Estate, subject to applicable fiduciary standards as modified herein, and such term includes an original, additional, surviving, remaining, or successor Trustee, regardless of whether appointed or confirmed by any court. No reference to a "Co-Trustee" shall be interpreted as an exception to this Section H.

- 3 -

Exhibit C

I.    **CHILD; CHILDREN; GRANDCHILD; GRANDCHILDREN; DESCENDANT:**

As used herein, and except with respect to any Excluded Person, the term "child" or "children" shall mean lawful descendants in the first degree of the designated person, "grandchild" or "grandchildren" shall mean lawful descendants in the second degree of the designated person, and "descendant or descendants" shall mean lawful descendants in the first, second or any other degree of the designated ancestor. Any implication herein to the contrary notwithstanding, a lawfully adopted child shall be deemed to be a descendant of the relevant person (if legally adopted prior to such child attaining age eighteen [18]), and a child or grandchild in gestation (later born alive) at the date of a specified event shall be deemed to be living at the date of such specified event.

J.    **HEIRS-AT-LAW:** As used herein, and except with respect to any Excluded Person, the term "heirs-at-law" shall mean only those persons, other than creditors and Excluded Persons, who would receive the personal property of the designated person under the laws of descent and distribution of the jurisdiction wherein said designated person was domiciled at the date of his death, as if said designated person had died intestate on the date stipulated for distribution, unmarried and domiciled in said jurisdiction, and in such shares as if said designated person had owned only the property constituting the Trust Estate of the Trust to be distributed among such heirs-at-law.

K.    **PER STIRPES:** As used herein, the term "per stirpes" shall have its accepted legal meaning, so that, for example, if a distribution is to be made "per stirpes" to the descendants or Issue of a specified person and one of said person's children is deceased but is survived by children, then the share which would otherwise have been distributable to such deceased child of said specified person had he then been living shall be divided equally among the then-living children and the Issue (as a group) of each deceased child of such deceased child, with the effect that the recipient(s) (as a group) of a distribution in such a case will receive by right of representation the share (in total)

- 4 -

Exhibit C

which their parent would have received had he then been living.

**L.    HEADINGS AND CAPTIONS; GENDER AND NUMBER:**

      **1.    HEADINGS AND CAPTIONS:** The headings, captions, titles, and subtitles herein are provided for convenience of reference only, and shall in no way be construed as defining, extending, limiting, or describing the scope of this Instrument, or any provision hereof, or the Settlor's intent with respect to any provision hereof.

      **2.    GENDER AND NUMBER:** Wherever the context of this Instrument so requires, references to the singular number shall be read, construed, and interpreted to mean and include the plural number and vice-versa; references to the masculine gender shall be read, construed, and interpreted to mean and include the feminine gender and vice-versa; and references to the neuter gender shall be read, construed, and interpreted to mean and include the masculine and/or feminine genders, as applicable, under the circumstances.

**M.    SURVIVORSHIP:**

      1.    In the event that any Beneficiary hereunder and the Settlor shall die under circumstances which make difficult or impracticable the determination of the order of their deaths, then, in such event, it shall be presumed that any such Beneficiary survived the Settlor.

      2.    Subject to the application of Paragraph 1 of Section M, above, in the event any income Beneficiary of a Trust Fund created hereunder shall die at the same time as the remainder Beneficiary of such Trust Fund, or under circumstances which make difficult or impracticable the determination of the order of their deaths, it shall be presumed that such income Beneficiary survived such remainder Beneficiary.

**N.    APPLICABLE LAW; CONSTRUCTION:**

      1.    As used herein in general, and, if specified in particular with respect to any

- 5 -

Exhibit C

term, provision or aspect hereof: the term "Applicable Law" means the law of the jurisdiction to which the rights of all parties hereto shall be subject and/or if specified in particular with respect to any term, provision or aspect hereof, the law of the jurisdiction so specified, to which the construction and effect of this Settlement or the specified term, provision or aspect shall be subject, and by which such rights, construction and effect shall be construed, interpreted and governed. The Settlor hereby acknowledges that, at any time, and from time to time, the law of more than one jurisdiction may constitute the "Applicable Law" with respect to the several terms, provisions, and aspects of this Instrument.

2.    Subject and without prejudice to any transfer of the administration of the trusts hereof, to any change in the Applicable Law of this Settlement (or any term, provision or aspect hereof), to any change in the law of interpretation of this Settlement (or any term, provision or aspect hereof) duly made according to the powers and provisions herein declared, and to any specific provision hereof to the contrary: from the date of registration of this Instrument as an International Trust under Section 15 of The International Trusts Act 1984 (Cook Islands), the Applicable Law of this Settlement shall be the Laws of the Cook Islands, whose law shall govern all transfers to the Trust, the protection of the property interests herein of the Beneficiaries hereof, and the construction, validity, and, subject to paragraph 3 of this ARTICLE I N, below, the administration hereof.

3.    Subject always to ARTICLE V C: In determining the law governing the administration of the Trust and the proper forum to which the primary supervision of the Trust shall be subject at any time, and from time to time:

a.    No U.S. Trustee: Other than during a temporary hiatus due to the death, resignation, or inability to act of a sole U.S. Trustee, if there shall be no Trustee resident in the United States (a "U.S. Trustee"): the principal place of administration of the Trust shall be

- 6 -

Exhibit C

deemed to be the usual place of business (or if there shall be no usual place of business, the residence) of the managing Trustee who shall be resident or maintain a usual place of business outside of the United States (and its territories and possessions) (the "non-U.S. Trustee"), and the administration of the trust shall be governed by the law and subject to the primary supervision of the courts of, the jurisdiction where the managing Trustee resides. If there shall be more than one non-U.S. Trustee and they shall be resident in diverse jurisdictions, then the Protector shall designate one Trustee as the managing Trustee for purposes of the preceding sentence and for such other purposes as the Protector may specify. In the event this paragraph 3 a shall be applicable and there shall be more than one non-U.S. Trustee resident in diverse jurisdictions and the Protector shall fail to designate a managing Trustee, then, in such event, and for so long as such failure to designate shall continue, this paragraph 3 shall be deemed deleted from this Instrument.

b.    One U.S. Trustee: If at least one U.S. Trustee shall be serving hereunder, then the principal place of administration of the Trust shall be deemed to be the usual place of business (or if there shall be no usual place of business, the residence) of the Trustee located in, and the administration of the trust shall be governed by the law and subject to the primary supervision of the courts of, that [U.S. Trustee's] jurisdiction.

c.    More Than One U.S. Trustee: If there shall be more than one U.S. Trustee serving hereunder, and such Trustees reside in diverse states or jurisdictions, then, solely for purposes concerning the supervision of the administration of the Trust (and for no other purpose), the principal place of administration of the Trust shall be deemed to be the usual place of business (or if there shall be no usual place of business, the residence) of the Settlor, and the administration of the trust, for so long as this sentence shall be true, shall be governed by the law and subject to the primary supervision of the courts of the jurisdiction where the Settlor shall be resident.

- 7 -

Exhibit C

d.    <u>Miscellaneous:</u>

(i)  Any such law to which the administration of the trust shall be subject pursuant to the preceding three subparagraphs shall be deemed the "Applicable Law" under paragraph 1, above, of this Section N of this ARTICLE I, but *only with respect to any term, provision or aspect hereof concerning the administration of the Trust and for no other purpose connected to the Trust whatsoever* (unless set forth to the contrary in this Instrument). If any term, provision or aspect of the Trust would be invalid under any Applicable Law then governing the relevant term, provision or aspect of the trust, the application of such term, provision or aspect shall be suspended until such time that the same would be valid and enforceable under the then Applicable Law.

(ii) For purposes of determining the situs of any personal property held in the Trust where there exists a diversity of Trustee residency, such personal property shall be deemed to be situated in the jurisdiction the laws of which govern the administration of the Trust.

O.    <u>CODE; INTERNAL REVENUE CODE; REGULATIONS:</u> As used herein, any reference to the "Code" or to the "Internal Revenue Code" shall mean and refer to the United States Internal Revenue Code of 1986, as amended from time to time, or any statute from time to time in effect and corresponding thereto. References to Treasury Regulations shall mean and refer to the regulation promulgations of the United States Treasury Department, as amended from time to time, and the terms "Proposed" and "Temporary" when used in conjunction with a Treasury Regulation reference shall be deemed to mean and include the final version of same, to the extent not substantially inconsistent with the said Proposed or Temporary version.

P.    <u>RELATED OR SUBORDINATE PARTY:</u> As used herein, such term shall have the meaning assigned to it by Section 672 of the Internal Revenue Code, and the legal interpretations

- 8 -

Exhibit C

thereof.

**Q.** **DISCRETION:** As used herein, the word "discretion", unless otherwise expressly limited herein, shall mean the sole and absolute right, power, and authority to make a determination which shall not be subject to question by any person and shall be conclusive and binding on all persons and parties howsoever interested in the matter.

**R.** **HEREIN; HEREUNDER; ETC.:** As used in this Instrument, the words "herein", "hereunder", and similar compounds of the word "here", shall, unless otherwise required by the context, mean and refer to this entire Instrument.

**S.** **ISSUE:** The word "Issue" as used herein, and except with respect to any Excluded Person, shall have the same meaning as the word "descendant", and such terms shall mean and refer to a person's legitimate natural born children, legally adopted children (if legally adopted prior to such child attaining age eighteen [18]), and the lineal descendants of such child or children. Subject to ARTICLE XI, the term "descendant" or "descendants" shall include those persons in being (or in gestation, if later born alive) at the time they must be ascertained to give effect to the reference to them regardless of whether they were born before or after the death of the Settlor, or the death of any other person.

**T.** **SPOUSE; SETTLOR'S SPOUSE:** For purposes of this Instrument, the Settlor's Spouse shall be that person to whom the Settlor is married from time to time during his lifetime, and, after the Settlor's death, such term shall mean the person to whom the Settlor was married at the date of his death. In the event the Settlor shall be married at the date of his death, but not regularly living with his spouse as husband and wife at such time (other than solely as a result of illness), then, in such event, the Settlor shall be deemed to have survived his spouse for all purposes of this Instrument. Notwithstanding the foregoing, in no event shall a person who has been accused of the

- 9 -

Exhibit C

wrongful death of the Settlor (in a civil or criminal matter) be considered to be the Settlor's Spouse.

     U.    **LEGAL AGE; ADULT; AGE OF MAJORITY:**  Applicable Law to the contrary notwithstanding, for all purposes hereunder, terms such as "adult", "age of majority", and similar references shall be construed to mean and refer to a person who has attained the age of twenty-one (21) years. Prior to such time, a person shall be considered to be a minor for all purposes hereunder.

     V.    **INCAPACITY; ADJUDICATED INCAPACITY:**  For all purposes of this Instrument, any person shall be treated as having been adjudicated incompetent (which shall begin a period of Adjudicated Incapacity) when the Trustees are presented with either:

        1.    a certified copy of an order or decree of any court of competent jurisdiction finding such person to be incapacitated (unless such order or decree does not find such person to be incapacitated with regard to his financial and business affairs), or

        2.    a written certificate stating that, in the opinion of the signers of such certificate, the subject person is in such a permanent physically or mentally deteriorated condition that such person is, and thereafter for the foreseeable future will be, unable to responsibly conduct his financial and business affairs on a continuous basis. Such certificate must be signed, in the presence of a notary public or other official authorized by law to take sworn statements, by the subject person's regular physician, by one (1) other physician not affiliated in medical practice with such regular physician, and by one (1) licensed clinical social worker (who represents that he/she has expertise in matters involving the determination of competency).

     W.    **SEVERABILITY:**  In the event any term, condition, right, power, privilege, or provision of this Instrument, or the administration thereof, is determined by a court of competent jurisdiction to be unenforceable or invalid, or should otherwise be unenforceable or invalid, for any reason whatsoever, then, in such event, the remaining provisions hereof shall be unaffected in any

- 10 -

Exhibit C

way, and shall continue in full force and effect.

      **X.**      **PROTECTOR; TRUST PROTECTOR:** For purposes of this Instrument, the terms "Protector" or "Trust Protector" mean the person who is initially designated as such pursuant to ARTICLE XII, Section A, hereof and such person's respective successors pursuant to ARTICLE XII hereof. If the Protector exercises the Protector's right and power to form a committee of protectors, pursuant to ARTICLE XII, Section G, hereof, then the singular "Protector" shall be deemed to refer to the committee for so long as such a committee may exist.

      **Y.**      **TRUST PERIOD:** For purposes of this Instrument, the term "Trust Period" means the period of time which began on the date first above written, or, if this is an amendment and restatement of Predecessor Trusts, from the original date of the oldest of said Predecessor Trusts, and continuing through and including the first to occur of the following dates or points in time: (i) the date as of which the entirety of the Trust Fund has been distributed according to the terms and provisions hereof, or (ii) such date or dates as the Trustees may in their discretion appoint by a written declaration executed by them pursuant to ARTICLE V, Section G, hereof, which declaration shall by its terms be applicable to the whole or such part or portions of the Trust Fund as shall therein be specified.

      **Z.**      **PERSON:** "Person" means, when used generally herein, an individual, person, firm, corporation, partnership (general or limited), company, trust, association, entity, or other such classification. When used generally herein, such word need not be capitalized.

      **AA.**      **COMMENCEMENT OF TRUSTS.** The Trusts established by this Instrument shall commence existence on the date first above written, such date being the time when the last of the following has occurred: the Settlor has executed this Instrument, one of the Trustees has executed this instrument, and a corpus has been transferred to the said Trustees. Notwithstanding the

Exhibit C

foregoing, a Trust established hereunder shall not constitute an International Trust under the laws

of the Cook Islands until such time as the Trust has been registered as an International Trust in

accordance with Section 15 of the International Trusts Act 1984.

## ARTICLE II
## DISPOSITIVE PROVISIONS: DURING THE SETTLOR'S LIFETIME

Prior to the Settlor's death:

A.    **INCOME:**  To the extent remaining following the superseding exercise (if any) of

the power of appointment set forth in Section D below, of this ARTICLE II, the Trustees may, in

their sole and absolute discretion, pay or apply the whole, any portion, or none of the net income of

the Trust to or in any manner the Trustees deem to be for the benefit of all or any one or more of the

members of the Appointed Class other than an Excluded Person. Income not so applied shall be

added to and administered as a part of Trust corpus.

B.    **PRINCIPAL:**  To the extent remaining following the superseding exercise (if any)

of the power of appointment set forth in Section D below, of this ARTICLE II, the Trustees may, in

their sole and absolute discretion, pay, transfer, or apply the whole, any portion, or none of the Trust

Principal to or in any manner the Trustees deem to be for the benefit of all or any one or more of the

Appointed Class other than an Excluded Person.

C.    **DISCRETIONARY DISTRIBUTIONS:**  In exercising the discretion conferred

upon them by Sections A and B above, the Trustees may pay more to, appropriate, or apply more for

some members of the Appointed Class than others, and may make payments to or application of

benefits for one or more of them to the exclusion of one or all of the others.

D.    **TESTAMENTARY POWER OF APPOINTMENT:**  Subject to Section E of this

ARTICLE II, and subject to ARTICLE V hereof, upon the death of the Settlor, the Trustees shall

- 12 -

Exhibit C

distribute the Trust Fund or any part thereof to such one or more members of the Appointed Class, on such terms and conditions, either outright or in trust, as the Settlor may appoint by an instrument in writing (including, without limitation, a Will or a Codicil) signed by the Settlor and delivered to the Trustees, specifically referring to and exercising this power of appointment.

      **E.**    **NATURE OF POWER OF APPOINTMENT:** The power of appointment set forth in Section D, above, of this ARTICLE II is a limited power of appointment subject to the restrictions set forth in Section B 5 of ARTICLE XIII.

## ARTICLE III
## DISPOSITIVE PROVISIONS: UPON THE SETTLOR'S DEATH

    Following the death of the Settlor, the Trust Estate, including any assets received from the Settlor's Estate and any other assets received by virtue of the Settlor's death, together with any other property acquired hereunder, to the extent not appointed by the Settlor pursuant to Section D of ARTICLE II, above, shall be administered in accordance with the provisions of this ARTICLE III.

      **A.**    **UPON DISTRIBUTION EVENT:**

    Upon the Distribution Event, the Trustees shall divide the entire Trust Estate which they have received hereunder equally into the number of separate shares determined pursuant to Section B of this ARTICLE III, below.

      **B.**    **DIVISION OF TRUST ESTATE:**

    Pursuant to Section A, above, the Trustees shall divide the Trust Estate as follows: A separate share shall be created for the Settlor's parents (or the survivor of them, as a unit) and for each sibling of the Settlor who survives the Distribution Event, and a separate share shall be created for the issue, as a group, of each sibling of the Settlor who shall fail to survive the Distribution Event, but who shall leave issue who so survive. Each share set apart for the issue, as a group, of

- 13 -

Exhibit C

each deceased sibling of the Settlor shall be further divided on a per stirpes basis into separate shares, one such share for each of such issue. Each share so set apart for a sibling of the Settlor (regardless of age) and each share so set apart for any other Beneficiary who shall have attained his thirty-fifth (35th) birthday shall be subject to an inter vivos power of appointment exercisable by such beneficiary at any time and from time to time in favor or for the benefit of such Beneficiary and/or any Issue of the Settlor or of such Beneficiary and/or any trust under which any of such persons is a Beneficiary (regardless of when any such trust is established). *For all purposes of this instrument, the Settlor's parents shall each be deemed never to attain age twenty-one (21).*

### C.   ADMINISTRATION OF TRUSTS:

1.    Each share so set apart for a Beneficiary who has not attained his thirty-fifth (35th) birthday, and any portion of any share subject to appointment as aforesaid but which is not so appointed, shall be held as a separate trust for such Beneficiary, in accordance with the following provisions of this Section C, and with the other provisions of this Instrument. These trusts shall be maintained as separate entities, with separate accounting and tax records.

2.    Prior to the attainment by a Beneficiary of his twenty-first (21st) birthday, the Trustees may, in their discretion, pay to or apply for the benefit of the Beneficiary, so much of the net income of his separate trust as the Trustees deem advisable to provide adequately and properly for the support, maintenance, health, medical care (including, but not limited to, dental, chiropractic, cosmetic surgical, and psychiatric care), welfare, education (including, but not limited to, private schools [elementary, preparatory, junior high, and high school], tutoring, college, professional, vocational, language, artistic studies, and other post-graduate education), comfort, and emergency needs of the Beneficiary, and to enable the Beneficiary to maintain his accustomed standard of living, purchase a home, and/or invest in, purchase, or commence a business venture. Income not

- 14 -

Exhibit C

so distributed shall be added to principal.

       3.      Upon the attainment by a Beneficiary of his twenty-first (21st) birthday, or from the commencement of the Beneficiary's separate Trust hereunder, if such separate Trust shall commence following the Beneficiary's twenty-first (21st) birthday, the Trustees shall pay to, or apply for the benefit of the Beneficiary, all of the net income of his separate Trust, in convenient installments, no less frequently than quarter-annually.

       4.    (a)    In addition, the Trustees may, in their discretion, pay to or apply for the benefit of the Beneficiary, so much of the principal of his separate Trust as the Trustees deem advisable to provide adequately and properly for the support, maintenance, health, medical care (including, but not limited to, dental, chiropractic, cosmetic surgical and psychiatric care), welfare, education (including, but not limited to, private schools [elementary, preparatory, junior high, and high school], tutoring, college, professional, vocational, language, artistic studies, and other post-graduate education), comfort, and emergency needs of the Beneficiary, and to enable the Bene-ficiary to maintain his accustomed standard of living, purchase a home, and/or invest in, purchase, or commence a business venture.

       (b)    Notwithstanding anything to the contrary contained in this entire Instrument, in the event a separate Trust being administered hereunder shall be depleted as a result of the exercise by the Trustees of their discretion in applying Subsection 4 (a), above, of this ARTICLE III C, then, in such event, the Trustees may, in their absolute discretion, utilize the principal of and/or income from any other (non-depleted) separate Trust then being held hereunder for the benefit of the Beneficiary of the depleted separate Trust. The preceding sentence shall in no way be construed as obligating a Trustee to, or conferring upon any Beneficiary the right to demand that the Trustee, exercise this invasion power to any extent.

- 15 -

Exhibit C

5.    Upon the attainment by a Beneficiary of his twenty-fifth (25th) birthday, or, upon the commencement of the Beneficiary's separate Trust hereunder, if such separate Trust shall commence following the Beneficiary's twenty-fifth (25th) birthday, but prior to the Beneficiary's thirtieth (30th) birthday, one-third (⅓) of the then value of his separate Trust shall be subject to an inter vivos power of appointment exercisable by such beneficiary in favor or for the benefit of such Beneficiary and/or any Issue of the Settlor or of such Beneficiary and/or any trust under which any of such persons is a Beneficiary.

6.    Upon the attainment by a Beneficiary of his thirtieth (30th) birthday, one-half (½) of the then value of his separate Trust shall be subject to an inter vivos power of appointment exercisable by such beneficiary in favor or for the benefit of such Beneficiary and/or any Issue of the Settlor or of such Beneficiary and/or any trust under which any of such persons is a Beneficiary. Upon the commencement of the Beneficiary's separate Trust hereunder, if such separate Trust shall commence following the Beneficiary's thirtieth (30th) birthday, but prior to the Beneficiary's thirty-fifth (35th) birthday, two-thirds (⅔) of the then value of his separate Trust shall be subject to an inter vivos power of appointment exercisable by such beneficiary in favor or for the benefit of such Beneficiary and/or any Issue of the Settlor or of such Beneficiary and/or any trust under which any of such persons is a Beneficiary.

7.    Upon the attainment by a Beneficiary of his thirty-fifth (35th) birthday, the then remaining balance of his separate Trust shall be subject to an inter vivos power of appointment exercisable by such beneficiary in favor or for the benefit of such Beneficiary and/or any Issue of the Settlor or of such Beneficiary and/or any trust under which any of such persons is a Beneficiary, and, upon the appointment and distribution of the remaining balance of a separate Trust hereunder, such separate trust shall then terminate.

- 16 -

Exhibit C

8.  Upon the death of a Beneficiary hereunder, the separate Trust being held for such Beneficiary pursuant to this Section C shall be distributed as appointed by such Beneficiary in his Will (duly admitted to probate, and making specific reference to this power), in any manner (including, but not limited to, in further trust under this Instrument or otherwise), to or for the benefit of any person or entity, other than to said Beneficiary, the estate of said Beneficiary, or the creditors of either (subject, however, to modification pursuant to Subsection 5 of Section P of ARTICLE VII), and, in the absence of such appointment, such share shall be reallocated on a per stirpes basis and, depending upon the age of the recipient, distributed outright to, or to existing or newly created (pursuant to this Section C) trusts held hereunder for the benefit of:

(i)  the then living Issue of the deceased Beneficiary, if any, or, if none, to

(ii)  the then living Issue of the deceased Beneficiary's most immediate ancestor who had Issue then living and who was a descendant of the Settlor, if any, or, if none, to

(iii)  the Settlor's then living Issue.

9.  In the event Subsection 8, above, of this Section C would be applicable, but none of the persons described therein are then living, then, in such event, the provisions of Section E of this ARTICLE III shall apply.

**D.    LIMITATION ON EXERCISE OF POWER:**  Anything herein to the contrary notwithstanding, but subject to Subsection 5 of Section P of ARTICLE VII, Section B of ARTICLE III, Subsections 5, 6, and 7, above, of ARTICLE III C, and any power granted to any Beneficiary hereunder described in Section 2041(b)(2) of the Code, to the extent that the possession or existence of any power by or with respect to any Beneficiary of any Trust Fund hereunder shall result in the inclusion of all or any portion of the principal of such Trust Fund in the Estate of any such

- 17 -

Exhibit C

Beneficiary for federal estate tax purposes, by virtue of the application of Section 2041 of the Internal Revenue Code or any other applicable tax law, where such inclusion would not result in the absence of such power, or, to the extent that the existence or possession of any such power would result in the inclusion of any portion of the income of such Trust Fund in the income of such Beneficiary for federal income tax purposes under any applicable tax law, where such an inclusion would not result in the absence of such power, such power shall be null, void and of no effect whatsoever.

E.    **DISTRIBUTION UPON TERMINATION OF TRUST PERIOD:** Subject always to the provisions of Section D of ARTICLE II relating to certain powers of appointment, at the expiration of the Trust Period the Trustees shall stand possessed of the Trust Fund and any sub-trust thereof upon such trusts for the benefit of the members of the Appointed Class or any one or more of them exclusive of the other or others, in such shares and proportions if more than one, and generally in such manner as the Trustees shall prior to or on the date of such expiration in their absolute discretion appoint, but without infringing upon any rule against perpetuities applicable hereto. In default of and subject to any such appointment as aforesaid the Trustees shall at the expiration of the Trust Period stand possessed of the Trust Fund and any sub-trust thereof for such of the Beneficiaries as are then living or any one or more of them in such shares as the Trustees shall prior to the end of the Trust Period appoint. In default of such appointment, the undistributed balance (if any) remaining of the Trust Fund or any sub-trust thereof shall be distributed to the respective then income beneficiaries thereof in the proportions in which they are, at such time, entitled to receive the income. However, if the rights to income are not then fixed, distribution under this ARTICLE III, Section E shall be made to the Settlor, and should the Settlor not then be living, then to the spouse of the Settlor, and should said spouse not then be living, per stirpes to the Settlor's

- 18 -

Exhibit C

Issue who are then entitled or authorized in the Trustees' discretion to receive income payments, or,

if there are no such Issue, in equal shares to the Beneficiaries who are then entitled or authorized in

the Trustees' discretion to receive income payments, and if there are no such Beneficiaries, to the

Settlor's Heirs-At-Law.

F.    **GENERATION-SKIPPING TAX PROVISIONS:**

1.    **Allocation Of Exemption:**  In addition to the provisions of ARTICLE VII,

Section P, the Fiduciaries shall allocate that amount of the Settlor's generation-skipping tax

exemption (the "Section 2631 exemption") to any Trust created under ARTICLE III, above, which

will result in an inclusion ratio (as defined in Section 2642 of the Code) of zero for such Trust. In

the event the amount of the Settlor's unallocated Section 2631 exemption is less than the value of

the property which would be allocated to the said Trust, then, in such event, such property shall

instead be allocated to two (2) separate trusts pursuant to the provisions of subsection 4 b of Section

P of ARTICLE VII, and the Section 2631 exemption shall then be allocated to one such Trust in a

manner which will result in one such Trust having an inclusion ratio of zero, and one such Trust

having an inclusion ratio of one. Such trusts may be designated as "Exempt" and "Nonexempt", and

both shall be held, administered, and distributed as separate trusts pursuant to ARTICLE III, above.

2.    **Preservation Of Exempt Trusts:**  Upon the distribution or division into

further trusts of any exempt trust (as described in Section F 1, above, of this ARTICLE III) upon the

occurrence of the Distribution Event, or for any other reason, such exempt trust shall,

notwithstanding anything to the contrary contained herein, be distributed or divided in such a manner

as to preserve the zero inclusion ratio applicable thereto. Thus, for example, where an exempt trust

is to be distributed into further trusts simultaneously with a distribution from a nonexempt trust, and

where such exempt and nonexempt distributions would, absent this provision, be combined in one

- 19 -

Exhibit C

trust, then the distribution from the exempt trust (or trusts) shall be received and maintained by the recipient Trustee as a separate exempt trust and the distribution from the nonexempt trust (or trusts) shall be received and maintained by the recipient Trustee as a separate nonexempt trust both (or all) of which shall be held for the benefit of the Beneficiary thereof, otherwise in accordance with the terms of this Settlement.

3.    **Non-Prorata Distributions:**   To the extent permitted by the Code, by Treasury Regulations, and by this Instrument, the Trustees are directed that distributions of principal which would otherwise be made pursuant to the provisions of this Instrument or in the discretion of the Trustees to any non skip person (as that term is defined in the Code) shall (if made), to the extent practicable, be made from the Trust of which such person is a Beneficiary hereunder which has an inclusion ratio of one, regardless of whether this direction results in non-prorata distributions to such person from multiple trusts held hereunder for the benefit of such person.

G.    **COORDINATION WITH GOVERNMENTAL OR PRIVATE ASSISTANCE.** During any period in which a Beneficiary of a Trust established under this ARTICLE III may be, or is eligible for governmental or private assistance as a result of any physical or mental condition, handicap or disability, the Trust shall be subject to the provisions of this Section G of this ARTICLE III, and the Trustee, in the administration of the distribution provisions otherwise applicable to the Trust, may, in the discretion of the Trustee, distribute only such part of the income or principal, or both, or neither, of the Trust as may be determined by the Trustee to provide for the extra and supplemental care, maintenance and support of the Beneficiary, over and above any benefits the Beneficiary may be eligible to receive as a result of the Beneficiary's condition, handicap, or disability from any local, state or federal government or agency, or from any private agency, it being the Settlor's intent to use the Trust Estate, if at all, only to supplement such other benefits received

- 20 -

Exhibit C

by the Beneficiary. The Trustee shall not distribute trust income or principal to or upon the direction

of a governmental agency or department, and the Trust shall at all times be free of the claims of such

governmental bodies, and, subject to ARTICLE XI hereof, but notwithstanding any other provision

of this Instrument to the contrary, the affected Beneficiary's interest in the Trust shall not vest (and

the Beneficiary shall have no power of appointment over the Trust otherwise provided hereunder)

during the time this Section G shall be applicable. It is the Settlor's intent that the Trustee not

distribute to or apply for the benefit of any such Beneficiary any income or principal of the Trust if

such distribution, in the judgment and discretion of the Trustee, would jeopardize the eligibility of

the Beneficiary for, or reduce the amount of any financial assistance administered by any state (or

political subdivision thereof) or federal agency or department or any private agency, including, but

not limited to, Social Security Administration benefits, Medicaid and Supplemental Security Income

benefits, unless such distribution, in the discretion of the trustee, would be in the best interests of the

Beneficiary, notwithstanding any possible reduction in financial assistance administered by any state

(or political subdivision thereof) or Federal agency or department or any private agency.

**ARTICLE IV**
**TERMINATION AT TRUSTEES' DISCRETION**

A.    Whenever the principal value of a separate Trust Fund held hereunder –

1.    is less than **FIFTY THOUSAND DOLLARS** ($50,000.00), or

2.    for any other reason in the discretion of the Trustees becomes uneconomical

to continue to manage as a Trust Fund with respect to a comparison of all costs and fees to be

incurred with the income to be produced, the Trustees may, in their sole discretion, pay such fund,

or part thereof, to the Beneficiary of such Trust. If such Beneficiary is subject to any of the

conditions set forth below in ARTICLE VI A, the Trustees may pay out such fund in accordance

- 21 -

Exhibit C

with the provisions of ARTICLE VI B, below, or, in the case of a minor, may deposit such fund in

a financial institution of their choosing, payable to the minor at majority.

B.      Anything contained herein to the contrary notwithstanding, the right herein conferred

upon the Trustees to terminate any trust in whole or in part shall not be construed to confer upon any

Beneficiary a right to demand or otherwise compel such a termination.

C.      Anything contained herein to the contrary notwithstanding, no Trustee who shall also

be a Beneficiary hereunder shall take part in any decision to terminate a Trust Fund of which such

Trustee is at such time entitled or eligible to receive the income.

## ARTICLE V
## PROTECTIVE PROVISIONS

A.      **SPENDTHRIFT PROVISION.**

1.      **General.**  No Beneficiary shall have the right, power or authority to assign,

transfer, dispose of, pledge, hypothecate, anticipate, encumber, or in any other manner alienate,

impair, or create a charge upon the income, principal, or any other benefit devolving from all or any

portion of any Trust created hereunder to which such Beneficiary may be entitled, and likewise,

income or principal distributable or which may become distributable to a Beneficiary, or any other

benefit devolving on a Beneficiary with respect to any Trust hereunder shall not be subject to seizure,

lien, levy, attachment, bankruptcy, transfer, assignment, garnishment, or any other legal process

whatsoever, nor shall any such interest in income or principal or any other benefit hereunder be

subject to interference or control by any creditor of any Beneficiary, nor subject to any claim for

alimony or for the support of a spouse pursuant to a decree of separate maintenance or separation

agreement, until distribution is actually made to such Beneficiary; and, to the extent permitted by

Applicable Law, the Trust Funds administered hereunder, until actually paid over and distributed to

- 22 -

Exhibit C

one or more Beneficiaries, as herein provided, shall be held by the Fiduciaries free and clear of all manner of anticipation or voluntary or involuntary alienation.

        2.        **Personal Enjoyment.**  In addition to the foregoing, no distribution of Trust income and/or principal required to be made under any provision of this Settlement (including pursuant to the exercise of any power of appointment) shall be made to any Beneficiary hereunder if, at the time such nondiscretionary distribution is to be made, such Beneficiary: is insolvent (where the Trustees determine, in their sole discretion, that the Beneficiary's insolvency would prevent the Beneficiary from personally enjoying the distribution), has filed a petition in bankruptcy (where the bankruptcy proceeding is ongoing), or otherwise would not personally enjoy the income or principal to be distributed. In connection with the preceding sentence, the Trustees, in their sole discretion, may or may not inquire into the Beneficiary's solvency, bankruptcy status, and/or the likelihood that the Beneficiary will personally enjoy the intended distribution (and the Trustees shall incur no liability whatsoever for failing to so inquire, or for doing so in an inadequate, incomplete, or incompetent manner), and the Trustees may accept as sufficient proof, or reject, any oral or written statement of the Beneficiary in regard to the matters mentioned in the preceding sentence. During the period in which required distributions are suspended by reason of this provision, the Trustees may, in their sole discretion, make such discretionary distributions of income and/or principal to or for the benefit of the affected Beneficiary, as the Trustees deem advisable to provide adequately and properly for the support, maintenance, health, medical care (including, but not limited to, dental, chiropractic, cosmetic surgical, and psychiatric care), welfare, education (including, but not limited to, private schools [elementary, preparatory, junior high, and high school], tutoring, college, professional, vocational, language, artistic studies, and other post-graduate education), comfort, and emergency needs of the Beneficiary, and to enable the Beneficiary to maintain his accustomed

Exhibit C

standard of living.

    **B.**    <u>**NO ACTION UNDER DURESS.**</u> To the extent any person is granted the power hereunder to do any act or to compel any act on the part of one or more of the Trustees, or has the authority to render advice to one or more of the Trustees, or to otherwise approve, compel, or veto any action or exercise any power which affects or will affect this Settlement, each Trustee is directed, to the extent the respective Trustee then in office would not be subject to personal liability or personal exposure (for example, by being held in contempt of court or other such sanction by a court having jurisdiction over the respective Trustee): (1) to accept or recognize only instructions or advice, or the effects of any approval, veto, or compelled action or the exercise of any power, which are given by or are the result of persons acting of their own free will and not under any manner of compulsion imposed by any legal process, like authority, or otherwise; and (2) to ignore any advice or any directive, veto, order, or like decree, or the results or effects thereof, of any court, administrative body or any tribunal whatsoever or of past or present Trustees, of any Protector hereunder, or of any other person, where: (a) such has been instigated by directive, order, or like decree of any court, administrative body or other tribunal, or (b) the person attempting to compel the act, or attempting to exercise the authority to render advice, or otherwise attempting to compel or veto any action or exercise any power which affects or will affect this Settlement, is not a person either appointed or so authorized or the like pursuant to the terms and conditions of this Settlement. In order to satisfy themselves as to the voluntariness of any person's directive, order, veto, advice, or action pursuant to authority granted under this Settlement, the Trustees may, in their sole and absolute discretion, but shall not be required to, obtain an affidavit or other evidence from the said person to the effect that such person's directive, order, veto, advice, or action is wholly voluntary and not made under duress or court order of any kind. The Trustees shall not be liable for failing to

- 24 -

Exhibit C

request an affidavit or other evidence of voluntariness in any case. For purposes of this Settlement, a person shall be deemed to be acting under compulsion, and otherwise involuntarily, during any period of Adjudicated Incapacity of said person.

C.    **CHANGE IN SITUS/APPLICABLE LAW.** The Trustees may, by a written declaration executed by them, at any time or times and from time to time, during the Trust Period, as they deem advisable in their discretion for the benefit or security of this Trust Fund or any portion hereof, remove (or decline to remove) all or part of the assets and/or the situs of administration thereof from one jurisdiction to another jurisdiction and/or declare that this Settlement shall from the date of such declaration take effect in accordance with the law of some other state or territory in any part of the World and thereupon the courts of such other jurisdiction shall have the power to effectuate the purposes of this Settlement to such extent. In no event, however, shall the law of some other state or territory be any place under the law of which: (1) substantially all of the powers and provisions herein declared and contained would not be enforceable or capable of being exercised and so taking effect; or (2) this Settlement would not be irrevocable. From the date of such declaration the law of the state or territory named therein shall be the Applicable Law, but subject always to the power conferred by this Section C of this ARTICLE V and until any further declaration be made hereunder. So often as any such declaration as aforesaid shall be made, the Trustees shall be at liberty to make such consequential alterations or additions in or to the powers, discretions and provisions of this Settlement as the Trustees may consider necessary or desirable to ensure that the provisions of this Settlement shall, *mutatis mutandis,* be so valid and effective as they are under the Applicable Law governing this Settlement at the time the power contained herein is exercised. The determination of the Trustees as to any such removal or change in Applicable Law shall be conclusive and binding on all persons interested or claiming to be interested in this Settlement, and

- 25 -

Exhibit C

the written declaration executed by the Trustees from time to time effecting any such change in situs or Applicable Law is hereby deemed to be a term or provision of this Settlement as if included herein on the date of execution of this Settlement by the Settlor.

D.     **REVISIONS OF INTERESTS.** During the Settlor's lifetime, the Trustees may, by a declaration in writing executed by them, declare that the person or persons or members of a class named or specified (whether or not ascertained in such declaration) who are, would be or might be or become (but for this Section D) a Beneficiary or a member or members of the Appointed Class (as the case may be): (i) shall be partially excluded from future benefit hereunder; (ii) shall cease to be a Beneficiary or a member or members of the Appointed Class (as the case may be); or (iii) shall be an Excluded Person or Excluded Persons. Any such declaration may be revocable during the Trust Period or irrevocable and shall have effect from the date specified in the declaration. During the Settlor's lifetime the Trustees may, by a declaration in writing executed by them, revocable at any time or times during the Trust Period or irrevocable, add to the Appointed Class any person or persons or class or classes of persons other than an Excluded Person or Excluded Persons and other than one or more or all of the Trustees or their respective estates, their creditors or creditors of their estates, provided that the persons so added are at the time related by blood or marriage to at least one of the members of the Appointed Class. Any such addition so made shall name or describe the person or persons or class or classes of persons to be thereby added to the Appointed Class, and shall specify the date (not being earlier than the date of the declaration but during the Trust Period) from which such person or persons or class or classes of persons shall be so added and the period (if terminating before the end of the Trust Period) for which such person or persons shall be added.

E.     **DISCLAIMERS.** Subject to any specific provision herein inconsistent herewith, any person age twenty-one (21) or over to whom or for whose benefit any principal or income of the

- 26 -

Exhibit C

Trust Fund may be liable to be appointed, paid, appropriated, transferred or applied in any manner whatsoever, directly or indirectly, by or in consequence of an exercise of any trust power or discretion vested hereunder in the Trustees, or in any other person, may by declaration in writing signed by him and received by the Trustees during the Trust Period, either revocable during the Trust Period only, or irrevocably: (i) disclaim his interest as an object of such trust power or discretion, either wholly or with respect to any specified part or share; (ii) cease to be a Beneficiary or member of the Appointed Class (as the case may be); or (iii) declare that he shall be an Excluded Person. Such declaration shall have effect from the date that the same is received by one of the Trustees. In the event of any such disclaimer of any interest in any trust created hereunder, the property disclaimed shall be disposed of in the manner provided herein as though the disclaimant had failed to survive the Settlor or other designated person.

F.    **DISREGARDING INTERESTS OF OTHERS.** The Trustees, in exercising any of the powers, authorities or discretions hereby conferred in favor of any particular person, are hereby expressly authorized to disregard entirely the interests of any other person who is interested or who may become interested hereunder. Without limiting the generality of the foregoing, no appointment, payment, appropriation, application, transfer or advancement made in exercise of any power herein contained shall be invalid on the grounds that either: (i) an insubstantial, illusory, or nominal share is appointed to any one or more objects of such power, or is left unappointed; or (ii) any object of such power is thereby wholly or partially, revocable or irrevocably excluded.

G.    **CHANGE IN TRUST PERIOD:** During the Settlor's lifetime, the Trustees may, by an executed written declaration, declare that the Trust Period shall be determined in relation to either: (i) the whole of the principal and/or the income of the Trust Fund (excluding accumulations of income that have not been added to the Trust Fund as an accretion thereto); or (ii) any part or parts

- 27 -

Exhibit C

thereof. The intent of the foregoing is that the principal and/or said income of the Trust Fund (or part or parts thereof, as the case may be), shall be held upon the trusts and subject to the powers and provisions upon and subject to which the same would then be held if the Trust Period had then expired by the passage of time and such declaration shall take effect accordingly.

H.    **EXCLUSIVE PROPERTY:**  No benefit devolving on any Beneficiary under this Deed shall form or constitute any portion of any communal or joint estate property of such Beneficiary but such benefit shall be and remain the sole, separate, and exclusive property of such Beneficiary and should such Beneficiary be married or marry in a community of property jurisdiction then any benefit so devolving shall be expressly excluded from the community and such benefit shall also be free from the interference, control, or marital power of any spouse of such Beneficiary. For the purposes of this Section H the word "benefit" shall include moveable and immovable property and the provisions of this Section H shall apply moreover not only to the benefits actually devolving on any such Beneficiary but also to the property for the time being representing the same and the income thereof.

## ARTICLE VI
## DISABILITY OF BENEFICIARY

A.    Unless otherwise specifically provided herein, if any Beneficiary hereunder:

1.    has not attained the age of twenty-one (21) years,

2.    has been adjudicated incompetent, or

3.    because of drug or alcohol abuse, or for any similar reason, is, in the reasonable judgment of the Trustees, incapable of properly attending to his business and financial affairs,

then, in any such event, the Trustees shall, until such Beneficiary has attained the age of twenty-one

- 28 -

Exhibit C

(21) years, or during said incapacity, or until, in the reasonable judgment of the Trustees, such Beneficiary is capable of properly attending to his business and financial affairs, as a result of demonstrated rehabilitation or other factor, as the case may be, hold such property or income, IN TRUST, for such Beneficiary and shall apply so much of the net income therefrom and such portion of the principal thereof as is in their opinion necessary for the support, maintenance, health, medical care (including, but not limited to, dental, chiropractic, cosmetic surgical and psychiatric care), welfare, education (including, but not limited to, private schools [elementary, preparatory, junior high, and high school], tutoring, college, professional, vocational, language, artistic studies, and other post-graduate education), comfort, and emergency needs of such Beneficiary, and to enable such Beneficiary to maintain his accustomed standard of living, without the intervention of a guardian, and the receipts from such persons as may be selected by the Fiduciaries to receive and disburse such sums shall be a full and complete acquittance. Any such income not so applied shall be accumulated, reinvested and become part of principal.

      B.    In connection with their administration of Section A, above, the Trustees may, in their sole and absolute discretion, make distributions (other than to any Excluded Person) in any one or more of the following ways, and thereupon shall be absolved from any further liability without seeing to the application of such distributions:

      1.    Directly to such Beneficiary;

      2.    To the legally appointed guardian or conservator of such Beneficiary;

      3.    To a relative or friend of such Beneficiary; or

      4.    Directly by the Trustees for the purposes set forth above:

      C.    Other than receipts for payments and distributions which may be executed by any person selected by the Fiduciaries as set forth in Section A, above, all statements, accounts, written

- 29 -

Exhibit C

instruments, releases, notices or other documents requested hereunder to be executed by, or delivered

to, and, all powers exercisable hereunder by a Beneficiary, may be delivered to, executed by, or

exercised by, the legally appointed conservator or guardian of an incompetent Beneficiary or the

legal guardian of the estate of a minor Beneficiary, or if there is at such time no guardian of the

estate, by a parent or adult relative of the minor (including a step-parent when the natural parent is

unable to act for any reason); and when so delivered, executed or exercised, such documents shall

be binding upon such incompetent or minor Beneficiary and his heirs, personal representatives of

his estate and assigns, and shall be of the same force and effect as if delivered to, executed by, or

exercised by, a Beneficiary acting under no legal disability.

      D.     Subject to Section G of ARTICLE III: it is the Settlor's intention, that the disability

of a Beneficiary shall not prevent such Beneficiary from receiving benefits under this Trust and the

authority granted to the Trustees in this ARTICLE VI to postpone distribution shall in no way affect

the vesting of money, property, or investments included in or forming part of any Trust herein as

therein provided.

## ARTICLE VII
## FIDUCIARY POWERS

      In addition to the powers vested in them by law and other provisions of this Instrument, the

Fiduciaries shall have the following powers, exercisable in their sole and absolute discretion, without

court approval, and effective until actual distribution of all property:

      A.    **PROPERTY RETENTION AND INVESTMENTS:**  Without regard to any

principle of diversification, risk of loss, or lack of productivity, (i) to retain any or all property; (ii)

to invest and reinvest, and to buy, sell, encumber, and deal in any manner in all forms of real and

personal property, or undivided interests in same, of every nature and wherever situate, including,

- 30 -

Exhibit C

by way of illustration, but not by way of limitation: bonds, notes (secured or unsecured), and/or stocks of or other equity interests in domestic or foreign corporations regardless of class, debt instruments of the United States which may be used and applied at par or face value for or toward the payment of federal estate tax, regardless of whether such application could occur under this Instrument, options of any type, commodities of any type, and any and all types of securities now extant or hereinafter developed, and any and all derivative securities of any of the foregoing; (iii) to keep and maintain funds in savings accounts in banking or other savings institutions, including but not limited to the bank or banks of any corporate fiduciary, without being limited by any statute or rule of law concerning legal list or other investments by Fiduciaries; (iv) to purchase investments at a premium or discount; (v) to open, maintain, utilize, close, and otherwise deal in any manner with respect to any type of brokerage account, including, but not limited to, any margin account, and (vi) to receive and retain any such property whether originally a part of any trust herein created or subsequently acquired, even if any Fiduciary is personally interested in such property, and without liability for any decline in the value thereof; all without limitation by any statutes or judicial decisions, whenever enacted or announced, regulating investments or requiring diversification of investments, it being the Settlor's intention to give the broadest investment powers and discretion to the Fiduciaries.

**B.    ACTION AS SECURITIES OWNERS:** Generally, to vote, or refrain from voting, any corporate stock either in person, or by general or limited proxy, for any purpose, including without limiting the generality of the foregoing, for the purpose of electing any Settlor, Trustee, Protector, or Beneficiary as a director of any such corporation; to exercise, or refrain from exercising or to purchase or sell, any conversion privilege, warrant, option or subscription right with respect to any security forming a part of the trust estate; to consent to take any action in connection with, and

- 31 -

Exhibit C

to receive and retain any securities resulting from, any reorganization, consolidation, merger, readjustment of the financial structure, sale, lease, mortgage, or other disposition of the assets of any corporation or other organization the securities of which may at any time form a part of the trust estate; to deposit any securities with or under the direction of a committee formed to protect such securities and to consent to or participate in any action taken or recommended by such committee; to pay all assessments, subscriptions and other sums of money which may seem expedient for the protection of the interest of such trust as the holder of such stocks, bonds or other securities; to enter into an agreement making said trusts liable for a *pro rata* share of the liabilities of any corporation which is being dissolved and in which stock is held, when in the opinion of the Trustee such action is necessary to the plan of liquidation and dissolution of any such corporation; to join in and vote for participation in or modification or cancellation of any restrictive purchase or retirement agreement relating to any partnership interest or corporate stock held as a portion of such trust; to join in the formation, modification, amendment, extension or cancellation of any voting trust.

C.    **REGISTRATION OF PROPERTY:**  To register any property (including safety deposit boxes) in the name of the Trust (as set forth in ARTICLE I A), a nominee, or in the name of any one or more of the Trustees (with or without designation of fiduciary capacity), or to hold property unregistered, all for and on behalf of the Trusts herein set forth.

D.    **PRINCIPAL AND INCOME:**

1.    **General:**  The Settlor hereby waives the applicability of any principal and income law or rule with respect to any trust created hereunder, and hereby authorizes the Fiduciaries to exercise the maximum discretion in allocating items of income or expense between trust income and principal, including the authority to establish out of income, and credit to principal, reasonable reserves for depreciation, obsolescence and depletion, determined to be fair and equitable in

- 32 -

Exhibit C

accordance with some recognized reasonable and preferably uncomplicated trust accounting principle; and, provided further, that the Fiduciaries shall not be required to provide a minimum rate of return on any property unless otherwise provided in this Instrument.

2.    **Capital Gains; Other Principal Items:**    The Fiduciaries are specifically authorized and are hereby granted the sole discretion, but are not required, to allocate all or any portion of any capital gain (and/or all or any portion of any other item of income or gain usually allocable to Trust principal under applicable principal and income law) from time to time realized, to Trust principal or income, and to distribute such capital gain (and/or such other item) if allocated to income, in accordance with the provisions herein regarding distributions of net income. The discretionary allocation of any such capital gain (and/or other item) to income; and any other special allocations herein authorized shall be made by the Fiduciaries by the creation of a document or memorandum to be retained with Trust records, and by advising the accountant for the Trust of such allocation.

3.    **Definition Of Net Income For Real Property Holdings:**

With respect to any asset of any Trust created hereunder which consists, in whole or in part, of any interest (whether held directly or through a joint venture, partnership, or otherwise), in real property held for investment, the term "net income" shall mean the greater of: (i) the net income of or from such interest determined without regard to this Subsection D 3 of this ARTICLE VII, or (ii) the "operating cash flow" (i.e., gross rental income, less operating expenses such as taxes, interest, insurance, maintenance and amortization of principal on existing debts, but specifically excluding depreciation and also excluding the proceeds of the sale, refinancing, or other disposition of the real property) received by any Trust hereunder from such interest.

4.    **Source of Distributions/Payments:**    For purposes of determining the source

- 33 -

Exhibit C

of any distribution to a Beneficiary or payment to any person of any kind, such distribution and/or payment shall be deemed to have been made first from current year income to the extent thereof, and then from the most recently contributed or accumulated principal of the Trust.

E.    **BUSINESS, FARM, AND NATURAL RESOURCE INTERESTS:**

1.    **General:**  Alone or with others: (i) to conduct any business or investment which may become a part of the Trust principal for whatever period of time they deem proper, with all powers of an owner with respect thereto, including but not limited to the power to borrow money and pledge trust property as security therefor, or to delegate such powers to any partner, manager, or employee; (ii) to dispose of any such business, investment, or any assets thereof, at public or private sale, upon such terms and conditions as they deem proper; (iii) to form and invest Trust Funds in partnerships, corporations, trusts, or other entities (resident anywhere in the world) to carry on such business or investment, and to contribute any trust property as capital thereto; and (iv) to employ, elect or permit any Settlor, Protector, Beneficiary, Trustee or other representative hereof to be retained as a director, officer or employee of such entity.

2.    **Farm Interests:**  To purchase or otherwise acquire, for cash, credit, or installments, or to invest in, reinvest in, retain or continue for an indefinite term, or to surrender or abandon, any agricultural operation or activity received from any source without the necessity or requirement of application to or order from any court in any jurisdiction, to do any and all things deemed advisable by them in the management and maintenance of any farm, which term shall include, but shall not be limited to, a farm, garden, orchard, ranch (of any type), fishery, timber tract, or dairy; and to do any and all things, and to take any action, or to refrain from taking any action, concerning the production and marketing of crops and dairy, poultry, livestock, furs, animals (of any type), orchard, and forest products including, but not limited to, the following powers: to operate the

- 34 -

Exhibit C

farm with hired labor, tenants, or sharecroppers; to lease or rent the farm for cash, a share of the crops (or other production), or for a combination of cash and a share of the crops (or other production); to purchase or otherwise acquire farm machinery and equipment, livestock, feed, seeds, and supplies; to undertake to construct, repair, and improve farm buildings of any kind as deemed necessary by the Fiduciaries for the operation of the farm; to make or obtain loans or advances at the prevailing rate or rates of interest for farm purposes such as for production, harvesting, or marketing, or for the construction, repair, or improvement of farm buildings, or for the purchase of farm machinery, equipment, livestock, feed, seeds, and supplies; to utilize approved soil and other environmental conservation practices in order to conserve, improve, and maintain the fertility and productivity of soil and/or water; to protect, manage, and improve the timber and forest on the farm, and to sell the timber and forest products (and/or interests therein) when deemed best by the Fiduciaries; to ditch, dam, and drain damp or wet fields and areas of the farm; to engage in the production of livestock, poultry, or dairy products, and to construct such fences and buildings, and plant such pastures and crops, as they deem necessary to carry on such operations; and to market the products of the farm.

      3.    **Oil, Gas, And Mineral Interests:**  To purchase or otherwise acquire, for cash, credit, or installments, or to invest in, reinvest in, retain or continue for an indefinite term, any interests in oil, gas, minerals, or other natural resources without the necessity or requirement of application to or order from any court in any jurisdiction; to enter into, as to any such interests, any agreements, assignments, contracts, deeds, grants, leases for any term (even though the term of any such lease may extend beyond the duration of any entity then entering into such lease), and any other instruments or documents; to manage, control, operate, drill, test, explore, mine, develop and otherwise exploit any and all such interests; to install, operate, or participate in the operation of any

- 35 -

Exhibit C

plant, mine or other facilities; to pay from principal or income, all delay rentals, lease bonuses, royalties, overriding royalties, taxes, assessments, and other charges; to surrender or abandon any or all such interests, and to enter into farm-out, pooling, or utilization agreements in connection therewith; and to produce, process, sell or exchange all production from such interests.

    4.  **Limitation:** Notwithstanding the foregoing or anything to the contrary herein contained, under no circumstances shall the Trust itself directly operate or participate in the operation of a business at the Trust level; any such activity must take place at the level of a separate entity in which the Trust has an interest.

    **F.**  **DISPOSITION OF PROPERTY:**  For such prices and upon such terms as they deem proper: (i) to sell at public or private sale, or to exchange, any real or personal property; (ii) to lease for any term or perpetually, any such property; and (iii) to give options for any such sales, exchanges, or leases.

    **G.**  **BORROW OR LEND MONEY AND PLEDGE PROPERTY:**

    1.  To borrow money from any person or institution, including but not limited to any Fiduciary, Beneficiary, or other person who may have a direct or indirect interest in any trust created hereunder, and to mortgage or pledge any real or personal property of any trust herein created as security for the payment thereof, without incurring any personal liability thereon and to do so for a term within or extending beyond the term of any Trust herein created and to renew, modify or extend existing borrowing on similar or different terms and with the same or different security without incurring any personal liability; and such borrowing by the Fiduciaries may be with or without interest, and may be secured by a lien on the Trust assets or any Beneficiary's interest in said assets.

    2.  To extend, modify, or waive one or more of the terms of any obligation, bond

- 36 -

Exhibit C

or mortgage at any time forming a part of any Trust herein created and to foreclose any such mortgage, or to take title to the property securing same by deed in lieu of foreclosure or otherwise and to satisfy or not satisfy the indebtedness securing said property; to accept a conveyance of encumbered property; and to protect or redeem any such property from forfeiture for non-payment of taxes or other lien; generally, to exercise as to such bond, obligation or mortgage all powers that an absolute owner might exercise; and to loan funds to Beneficiaries and other persons (other than any Excluded Person) at such rates, and upon such terms and conditions as the Fiduciaries shall, in their sole discretion, determine.

        3.      To guarantee or provide an indemnity or surety in respect of the performance of any obligations or liability of any person whether or not such person is a Beneficiary or member of the Appointed Class, and to give security in support of any such guarantee, by mortgaging or charging any investments, property or other assets which may from time to time form a part of the Trust Fund, or to deposit, pledge or transfer any such investments, property or other assets with or to any person by way of security.

        **H.**    **COMPROMISE AND SETTLE CLAIMS:** To enforce, compromise, and settle claims, adjust, arbitrate, sue on or defend, abandon, release or otherwise deal with claims in favor of or against any Trust funds hereunder and/or the interest of any and all Beneficiaries therein, as the Fiduciaries shall in their discretion deem proper.

        **I.**    **DISTRIBUTIONS:** To make any division or distribution in cash, or in kind, or partly in each, to utilize any reasonable method to value any division or distribution in kind, and to allocate undivided interests in property and dissimilar property (without regard to tax basis) to different shares.

- 37 -

Exhibit C

J.   **EMPLOYMENT OF AGENTS:**

1.   General.  To engage and pay reasonable compensation to attorneys, solicitors, accountants, title-holders, escrowees, advisors, brokers, depositories, appraisers, insurers, custodians, clerks, investment counsel and such other persons as they may deem necessary or advisable in the administration of any trust created under this Instrument.

2.   Employment of Investment Advisor.  *Notwithstanding any provision of this Instrument to the contrary,* the Trustee may engage the Settlor or any other person pursuant to a written agreement to act in the capacity of investment advisor for any trust created under this Instrument. The non-Trustee investment advisor may be authorized to direct any financial institution, bank, brokerage firm, or entity having custody of Trust assets (a "Custodial Entity") in the purchase, sale, liquidation, investment, and transfer of said Trust assets. However, notwithstanding any provision contained in this Instrument, the advisor shall not be authorized, and the advisor agreement must specify that the advisor is not authorized to cause or direct a Custodial Entity to distribute Trust assets to any person, except that the advisor may be authorized in the written agreement to direct a transfer of Trust assets from one Custodial Entity to another Custodial Entity, *but only with the consent of the Trustee.*

K.   **APPORTIONMENTS:** Except as otherwise specifically provided herein, to allocate receipts and expenses, including but not limited to, stock, extraordinary, and liquidating dividends, premiums on investments, taxes, depreciation and other charges and allowances and compensation for professional and other personal services, to principal or income, or partly to each, as the Fiduciaries (other than a Fiduciary having a beneficial interest in any such determination) from time to time deem proper and equitable in their discretion, having due regard for the interest of the income Beneficiaries hereunder. In this connection, the Settlor specifically authorizes the Fiduciaries, in their

- 38 -

Exhibit C

discretion, to allocate capital gains to income, from time to time, and to distribute such capital gains as a part of such income (as more specifically set forth in Section D, above).

**L.    POWERS RELATING TO TRUSTS:**

1.    **Creation Of Further Trusts.**  By a declaration in writing executed by the Trustees revocable during the Trust Period or irrevocable, the Trustees may create or appoint such new or other trusts, powers and provisions governing the Trust Fund or any part or parts thereof, and the subsequent income arising from that which is so appointed, for the benefit of the members of the Appointed Class or any one or more of them exclusive of the other or others, at such age or time or respective ages or times, in such shares and proportions, and subject to such powers of appointment (for the benefit of the members of the Appointed Class or any one or more of them) as may be vested in any person or persons, together with such provisions for maintenance, education, or advancement, or for the purposes of raising a portion or portions, or for forfeiture in the event of bankruptcy, or otherwise, together with such discretionary trusts and powers exercisable by such persons, and generally in such manner as the Trustees may think fit for the benefit of such members of the Appointed Class or any one or more of them as aforesaid. For the purpose of giving effect to any such declaration, the Trustees shall have the power and authority to revoke all or any of the Trust's powers and provisions herein contained with respect to the Trust Fund or the part or parts thereof to which such appointment relates. In the event of any such appointment the Trustees shall thenceforward hold the Trust Fund or the part or parts thereof to which such appointment relates upon and subject to the Trust's powers and provisions so appointed in substitution for any of the trust's powers and provisions hereof so revoked as aforesaid, and in priority to the other trust's powers and provisions herein declared and contained and in any appointment under the foregoing power the Trustees may delegate to any person or persons all or any of the powers and discretions

- 39 -

Exhibit C

by the Settlement or by law vested in the Trustees.

2.      **Transfer of Trust Fund.** The Trustees may pay or transfer the whole or any part or parts of the Trust Fund to the trustees for the time being of any other trust wheresoever established or existing, and whether governed by the Applicable Law of this Settlement at the time of the exercise of the power contained herein, or by the law of any other jurisdiction, state or territory, so long as the Trustees shall be satisfied that such payment or transfer is or would be for the benefit of the members of the Appointed Class or some or one of them, notwithstanding that other persons (not being any Excluded Person) may be capable of benefiting under such other trust, and so that after such transfer the money, investments and property so transferred shall cease to be regarded as held upon the terms of this Settlement and cease to be regarded as the Trust Fund or part of the Trust Fund of this Settlement, as the case may be, for all the purposes of this Settlement.

3.      **Settlement of Capital.** The Trustees may settle capital on all or any one or more of the members of the Appointed Class, and any settlement made by the Trustees under this present power upon, or for the benefit of, any one or more of the Appointed Class as aforesaid may be created in and under the law of any jurisdiction in the World (being a jurisdiction the local law whereof recognizes settlements of the kind proposed to be made). Any such settlement may contain such trust powers and provisions whatsoever (including trust powers and provisions to be exercised at the discretion of any person or persons) as the Trustees shall think proper for the benefit of such members of the Appointed Class.

4.      **Combining Assets of Several Trusts.** Except as otherwise provided herein: (i) to pool the assets of any or all Trusts hereunder for investment purposes, allocating to each Trust an undivided interest in all assets so held and the income therefrom; and (ii) to merge any Trust with any other trust held by them whether created by the Settlor or by any other person by Will or Deed,

- 40 -

Exhibit C

if the terms are then substantially similar and such trusts are held for the primary benefit of the same persons.

**M.**     **TRANSACTIONS WITH CERTAIN FIDUCIARIES:**

     **1.**     **Loans, Sales And Purchases:**  Anything herein contained to the contrary notwithstanding, to make loans, of short or long term, with or without security, to the Fiduciary of the Settlor's Estate and/or the estate of any person related to the Settlor by blood or marriage, and/or to the Fiduciary of any trust created by the Settlor or such other related person, and to sell or purchase real or personal property to or from such Fiduciary (on any convenient terms, including, without limitation, in exchange for a self-cancelling note) notwithstanding that one or more Trustees may also be such Fiduciary. The Trustees shall not be liable for any loss arising as a result of any loans made or authorized under this Section M. In addition, the propriety of any transaction authorized under this Section M, the amount of such transaction, the terms of any such transaction, and the ascertainment of a fair price for assets involved in any such transaction, shall be solely within the discretion of the Trustees, and the Trustees shall incur no liability for any loss arising as a result of any such transaction, regardless of whether the assets involved in any such transaction constitute investments of a type authorized to be made by Trustees under Applicable Law.

     **2.**     **Payment Of Taxes, Etc.:**  Subject to any specific directions by the Settlor herein: (i) all United States federal, state, or other taxes, penalties, and/or interest thereon payable because of the Settlor's death, and (ii) the funeral and administration expenses allowable as deductions to the Settlor's Estate under § 2053 of the Code (regardless of whether such items were deducted for Federal Estate Tax purposes), proportionately allocable to any property then held by or passing to the Trustees hereunder, shall be paid from trust property either directly, or, upon written request, to the domiciliary Personal Representative of the Settlor's estate, without any right of

- 41 -

Exhibit C

reimbursement from any person or Beneficiary; *provided, however*, that notwithstanding anything to the contrary contained in this or in any other instrument, that any and all property not included in the Settlor's gross estate for Federal Estate Tax purposes, and any property (or the proceeds thereof) qualifying for the federal estate tax marital or charitable deductions, including property in, or distributable to a Marital Trust hereunder (if any), shall not be used to pay any such taxes, penalties, interest, or any other expenses or obligations of the Settlor's estate. All such taxes on present or future interests shall be paid at such time or times as the Trustees may in their sole discretion deem proper, regardless of whether such taxes are then due, provided that any postponed taxes on future interests (including any Generation Skipping Taxes imposed by § 2601) shall only be charged against (and paid from) the principal of the particular trust or share with respect to which the taxes are imposed.

N.    **EXECUTION OF DOCUMENTS:** Any one Trustee may execute and deliver any and all documents and instruments which the Fiduciaries, in their discretion, may deem necessary or advisable, or which are required by any person, court, or entity.

O.    **TRANSACTIONS WITH CO-OWNERS AND ASSOCIATES:** In addition to the powers of sale, exchange or partition herein granted, to sell or exchange the Settlor's interest in any property, real or personal, to or with any person or persons associated with the Settlor in such property as a shareholder, partner, owner or co-owner, including, without limitation, any and all of the Settlor's shares of corporate stock, partnership interests, or real estate interests.

P.    **TAX PROVISIONS:**

1.    With the overall objective of achieving the minimum in total combined present and reasonably anticipated future taxes of all kinds, upon all entities and Beneficiaries herein considered, and by way of illustration, and not in limitation, to enter into any agreements with the

- 42 -

Exhibit C

United States or any agency thereof, or a sovereign state or any agency thereof concerning or relating to any income, inheritance, estate, transfer, succession, property, or excise tax, penalty, and/or interest relating thereto, including agreements concerning the waiving of the statute of limitations as to assessment or collection of any such tax, penalty, and/or interest.

2.    The Fiduciaries shall not be accountable to any person interested in any Trust created herein for the manner in which they shall carry out the Settlor's intent to minimize overall taxes and, even though their decisions in this regard may result in increased tax or decreased distribution to a trust or to one or more Beneficiaries, there shall in no event be any compensating adjustments or reimbursements between any of the Trusts created hereunder or between any of the Trusts and any Beneficiaries hereunder by reason of the manner in which the Fiduciaries carry out said direction.

3.    Notwithstanding any provision of Section F of ARTICLE III, the Fiduciaries hereunder, other than a Fiduciary who is also a Beneficiary hereunder, shall have the power, in their discretion, to allocate any portion of the exemption allowed to the Settlor under § 2631(a) of the Internal Revenue Code, as amended, to any property as to which the Settlor was the transferor, including but not limited to any property transferred by the Settlor during the Settlor's lifetime as to which the Settlor did not make an allocation prior to death.

4.    a.    Subject to Section F of ARTICLE III, the Fiduciaries, other than a Fiduciary who is also a Beneficiary hereunder, shall have the power, exercisable in their sole discretion, to divide any Trust being held hereunder which, absent this provision, would have an inclusion ratio, as defined in § 2642(a)(1) of the Code, of neither one nor zero, into two separate Trusts, one such Trust to then have an inclusion ratio of one, and the other such Trust to then have an inclusion ratio of zero.

- 43 -

Exhibit C

b.      In dividing any Trust pursuant to the foregoing provision, or pursuant to any provision of this Settlement which references this subsection 4 b of this Section P of this ARTICLE VII, the Fiduciary shall:

i.      Sever or fund the Trust prior to the date set forth in Treasury Regulation § 26.2654-1(b)(1)(ii)(B), and

ii.     Either:

(A)     Fund each such Trust with a fractional share of each and every substantial interest or right held by or in the Trust or fund being divided; or each such Trust may be funded on a non prorata basis, provided that funding is based either on the fair market value of the assets on the date of funding or in a manner that fairly reflects the net appreciation or depreciation in the value of the assets measured from the date of death to the date of funding, or

(B)     If the severance or funding is required to be made hereunder on the basis of a pecuniary amount, utilize date of distribution values in funding such pecuniary amount, and, if such pecuniary amount shall not be funded or irrevocably set aside within fifteen months of the date of the Chapter 13 transferor's death, said amount shall be credited with appropriate interest [as defined in Treasury Regulation § 26.2642-2(b)(4)].

5.      The Settlor hereby grants the Trustees (other than a Trustee who is also a Beneficiary or a Related or Subordinate Party) the power, exercisable following the Distribution Event in their sole and absolute discretion, and applicable with respect to all or any portion of the principal of any Trust created hereunder:

a.      To create a general testamentary power of appointment (within the meaning of § 2041 of the Code) in any Beneficiary (under which the Beneficiary may appoint the subject property to anyone, notwithstanding the restrictions contained in Section B 5 of ARTICLE

- 44 -

Exhibit C

XIII);

        b.      To revoke or eliminate (prior to the death of the power holder) a power created under the preceding clause for all or any portion of Trust principal with respect to which such power would have been effective; and/or

        c.      To divide Trust principal (with respect to any separate Trust created hereunder) into two separate Trusts, representing two fractional shares of the property being divided, based upon the includable and non-includable (for Federal Estate Tax purposes) portions thereof with respect to the estate or potential estate of a Beneficiary holding a power created under this subsection.

        6.      The separate Trusts created pursuant to the preceding sentence may, in the discretion of the Trustees, be later combined into a single Trust. The Settlor's purpose for including subsections 5 and 6 of this Section P is to provide tax planning flexibility, by providing a means whereby it may be determined whether inclusion of property in a Beneficiary's estate under Chapter 11 of the Code would effect a transfer tax savings over taxation of such property subject to the power under Chapter 13 of the Code, in the event the later mode of taxation could foreseeably be applicable. Notwithstanding the preceding sentence, a general testamentary power may be created as specified above regardless of whether Chapter 13 taxation of the subject property would be possible. Any power created or revoked hereunder shall be created or revoked by a written, executed, witnessed and notarized instrument filed with the permanent records of the Trust, and written notice of such creation/revocation shall be given to the affected Beneficiary within ten (10) days of such creation/revocation. Any notice to a Beneficiary regarding the creation of a power hereunder (and the instrument creating the power itself) shall specify the manner by which such power is to be exercised in the Beneficiary's will.

- 45 -

Exhibit C

7.    If an executor, administrator, or personal representative is appointed, qualified, and acting with respect to the estate of a Settlor, such person is the proper person to make the QTIP Election, the Section 2652(a)(3) reverse QTIP election, and the election to allocate the deceased Settlor's Section 2631 exemption (the "Tax Elections"). The Trustees shall consult with such person and shall assign the property held subject to this Settlement consistent with the Tax Elections made or to be made by such person. If no such person is appointed, qualified, and acting within the United States, then the Trustee is the proper person to make the Tax Elections with respect to the property subject to this Settlement.

**Q.    OPTIONAL TREATMENT OF DEDUCTIONS:**  To exercise any law-given option to treat administrative or other expenses as either allocable to income or to trust principal.

**R.    EMPLOYEE BENEFIT PLAN ELECTIONS:**

1.    To the extent that death or other benefits from a qualified employee benefit plan, or individual retirement account or similar arrangement, are directly or indirectly payable to the Fiduciaries hereunder by virtue of the Settlor's interest or participation in such plan and to the extent that the Settlor has not made irrevocable elections to the contrary, to make any and all elections and to exercise any and all rights under each such plan regarding the time, manner, and form of receipt of such payments.

2.    For purposes of this Section R, the term "qualified employee benefit plan" shall mean and refer to a plan/trust which satisfies the requirements of § 401(a) of the Code. The terms "individual retirement account or similar arrangement" shall mean and refer to an account or arrangement which satisfies the provisions of § 408 of the Code.

**S.    DELEGATION OF DUTIES AND POWERS:**

1.    **Ministerial Duties.** To delegate and assign any one or more ministerial duties

- 46 -

Exhibit C

in connection with the management and operation of the Trusts hereunder to any one or more Trustees or other persons (other than the Settlor) as shall be designated in writing by not less than the number of Trustees required hereunder to make decisions and take actions, thereby giving to each recipient of any such delegation or assignment the full power and authority to act for and to bind the Trustees with respect to the exercise of the duties so delegated and/or assigned. For purposes of this Section S 1, a "ministerial duty" is any duty regarding this Settlement which is wholly non-discretionary.

      2.    **Trustee Powers.**  Except as may otherwise be provided herein, any Trustee may by a signed declaration in writing revocable during the Trust Period or irrevocable, delegate to any other person other than the Settlor, but including delegation from one Co-Trustee to another Co-Trustee the exclusive or non-exclusive exercise of any of the specific powers, discretions, or authorities conferred upon the delegating Trustee by this Settlement or by law. The delegating Trustee shall provide a copy of the writing to each other Trustee then in office. While any delegation is in effect any of the powers, discretionary or otherwise, so delegated may be exercised and action may be taken with the same force and effect as if the delegating Trustee had personally joined in the exercise of such power and the taking of such action. Anyone dealing with such delegated person shall be absolutely protected in relying upon the written statements of such Trustee.

**T.**      **PROVISIONS RELATING TO INSURANCE:**

      1.    **Rights In Policies.**  The Trustees are hereby vested with all right, title and interest in and to the policies of life insurance comprising a part of the trust estate and are authorized to exercise and enjoy, for the purpose of the Trust herein created and as absolute owners of any such policies of insurance, all the options, benefits, rights and privileges under such policies, including the right to borrow upon the policies and pledge them for loans, to collect the cash surrender values,

- 47 -

Exhibit C

to receive any dividends on such policies, distributions of surplus, or other refunds of a similar nature, and to collect payments upon the face amount of such polices if they become due and payable. The insurance companies which have issued such policies are hereby authorized and directed to recognize the Trustees as absolute owners of the policies of insurance, fully entitled to all options, rights, privileges and interests under such policies. Any receipts, releases and other instruments executed by the Trustees in connection with such policies shall be binding and conclusive upon the insurance companies and upon all persons interested in the Trusts established pursuant to this Instrument. The Settlor hereby relinquishes all rights and powers in the policies of insurance which may not be assignable, and at the written request of the Trustees will execute all other instruments reasonably required to effectuate this relinquishment. The signature of only one Trustee shall be required to execute any and all instruments relative to insurance policies held pursuant to the terms of this Trust. Notwithstanding any provision herein to the contrary, the Trustees must maintain the Trust created hereunder as the sole Beneficiary of all life insurance policies constituting trust corpus.

    2.  **Reduction In Premiums.** With respect to all insurance policies comprising any part of the trust estate, the Trustees shall notify the insurance companies that all sums distributed in the nature of dividends on such policies, distributions of surplus, or other refunds of a similar nature shall be used, so far as permitted by the companies issuing such policies and so far as authorized by the terms of the policies themselves, to pay or reduce the premiums or other charges payable on such policies. The dividends, distributions of surplus and other refunds of a similar nature not so applied to pay or reduce the premiums or other charges payable on the insurance policies, shall be paid to the Trustees, or held subject to their order, and shall constitute a part of the corpus of the trust estate.

- 48 -

Exhibit C

3.    **Payment Of Premiums.**  Except as herein otherwise provided, the Trustees shall be under no obligation to pay the premiums which may become due and payable under the provisions of the insurance policies comprising any part of the trust estate, and shall be under no obligation to make certain that such premiums are paid by the Settlor or any other persons, or to notify any persons of the non-payment of such premiums. Nor shall the Trustees be under any responsibility or subject to any liability in the event the premiums on any insurance policies are not paid, provided however, that the Trustees shall be required to apply dividends on such policies, distributions of surplus and other refunds, to the payment or reduction of the premiums or other charges payable on such policies, as more specifically set forth in Subsection 2, above, of this Section T. Upon notice at any time during the duration of the Trust that the premium due upon any insurance policy is in default, or that the premium to become due will not be paid by the Settlor or by any other persons, the Trustees, within their sole discretion, may apply any cash values attributable to such policy to the purchase of paid-up insurance or of extended term insurance, or the Trustees, in their sole discretion, may borrow upon such policy for the payment of premiums due thereon, or the Trustees, in their sole discretion, may apply other funds held by them toward the payment of premiums, or the Trustees may accept the cash value of such policy upon its forfeiture in the event the premium on the policy is not paid.

4.    **Disability Of Insured.**  In the event the insured under the policies of insurance included in the corpus of the Trust becomes totally and permanently disabled within the meaning of any of said policies, and any policy contains a provision that due to such a disability the payment of premiums shall be permanently or temporarily waived, the Trustees, upon being notified of the disability, shall promptly notify the insurance company which has issued such policy and shall take any and all steps necessary to make the waiver of premium provision effective.

- 49 -

Exhibit C

5.     **Death Of Insured.**  Upon the death of insured under any policies included in the corpus of this Trust, the Trustees shall promptly furnish proof of loss to the insurance companies and shall collect the proceeds of said policies and hold and administer said proceeds as trust corpus in accordance with the terms and conditions of this Trust. The Trustees shall have the power to execute and deliver receipts and any other instruments and to take such other action as may be necessary to collect the proceeds of the insurance policies. The Trustees shall not be obligated to undertake litigation for collection of any benefits or assets payable by reason of a Settlor's death including, but not limited to, such benefits under life insurance policies, employee benefit plans or other contracts, plans or arrangements providing for payment or transfer at death which are payable to the Trustees, unless the Trustees are indemnified to their satisfaction against any liability for the expense of such litigation.

6.     **General.**  To hold, retain, purchase, acquire, dispose of and otherwise deal in and with life insurance, annuities, or other forms of insurance on the life or lives of any Beneficiary or Beneficiaries hereunder or upon the life or lives of other persons (including the Settlor) for the benefit of any trust created hereunder or any Beneficiary or Beneficiaries of any such trust, and to pay all or a part of any such premiums and costs thereof from the income or principal of (or from contributions from any person to) any trust funds held hereunder as the Fiduciaries in their sole discretion shall determine. The purchase of health and/or accident insurance for a Beneficiary hereof is authorized by this provision.

U.     **CLOSELY HELD BUSINESS:**  To invest in, hold, retain, purchase, acquire, dispose of and otherwise deal in and with securities of, or any equity, debt, or hybrid interest in any closely held corporation, general or limited partnership, limited liability company, or other closely held business, and, in addition, and not in limitation of any of the foregoing powers:

- 50 -

Exhibit C

1.      To take or fail to take an active part in the management and control of the internal affairs of any such business or entity in such manner and to such extent as they in their discretion deem advisable (and which is appropriate to the type of interest concerned), and to take or fail to take any action in respect to the management of said business which the Settlor, as owner of such interests and/or securities, could have taken (or refrained from taking) if the owner thereof, including, but not by way of limitation, to sell or exchange the interests in and/or securities of such business or entity, to vary the nature of the operation(s) conducted by or investments made by such business or entity by reducing, expanding, limiting or otherwise changing the same, the type of merchandise used, product manufactured, service rendered, and/or internal investment mix by or of any such business or entity.

2.      Directly or by proxy, conferring discretionary power upon the proxy if so desired, to vote or abstain from voting:

a.      Regarding any matters in their discretion;

b.      Without limitation of this general power, regarding a change in the capital structure of any such business or entity by providing, among other things, for the issuance of secured or unsecured bonds or debentures or different classes of equity interests, having preference or no preference, and voting rights or no voting rights;

c.      To accept as investments, without liability for loss attributable thereto, any such bonds, debentures, shares of stock, or other equity interests issued to them;

d.      Regarding the dissolution of any such business or entity or the sale of all or any of its assets or its merger or consolidation with any other entity;

e.      Regarding the election of directors, managers, general partners or others who may or may not declare dividends or other distributions and/or who may determine to

- 51 -

Exhibit C

leave income from the business at the risk of the business by way of loans subordinated to other creditors; and

        f.      To do any and all things and to take any and all steps which they in their discretion deem necessary, desirable or convenient.

        3.      To pay themselves additional compensation above and beyond the customary allowances payable to them for their services as Fiduciaries, commensurate with the amount of time required and with the responsibility involved or services provided by them in connection with the continuance of any such business or entity.

        4.      With regard to any single-member limited liability company: To take any and all actions which the Trustees in their sole discretion deem necessary or advisable to maintain such entity as a single-member entity, including, but not limited to causing such single-member interest to be held by multiple trusts hereunder as co-partners, and/or causing such entity to be divided into multiple single-member entities, each of which to be held by a separate trust hereunder as the respective single-member.

      **V.**    <u>**MANAGEMENT:**</u> To manage, develop, improve, partition or change the character of, or abandon an asset or interest in property at any time; and to make ordinary and extraordinary repairs, replacements, alterations and improvements, structural or otherwise.

      **W.**    <u>**GENERAL AUTHORITY:**</u> To perform all acts, take all such proceedings and exercise all rights and privileges, although not hereinbefore specifically mentioned, with relation to any property, as if they were the absolute owners thereof, and to comply with, amend, modify or rescind any agreement made during the Settlor's lifetime, including those regarding the disposition, management or continuation of any unincorporated business, corporation, partnership or joint venture, and including the power to complete or breach contracts to purchase or sell real estate or

Exhibit C

any other property, when, in their discretion, they deem any such action or failure to act to be for the benefit and/or security of the Trust Fund.

      **X.**    **RESTRICTION ON EXERCISE OF POWER:** Anything contained herein to the contrary notwithstanding, if the possession of any power hereunder by any Fiduciary would result in the inclusion of the property subject to the exercise of such power in the estate of such Fiduciary for purposes of application of any federal, state or other death tax, and/or would cause the income therefrom to be includable in the gross income of such Fiduciary for purposes of any federal, state or other income tax, where such death and/or income tax inclusions would not occur in the absence of such power, then such Fiduciary shall not possess or be eligible or entitled to exercise such power. In addition: It is the intent of the Settlor that neither the Trust Fund (nor any part thereof) be included within the gross estate of any Trustee for United States federal estate tax purposes. Accordingly, no Trustee shall have any of the powers or discretions otherwise conferred upon a Trustee pursuant to ARTICLE V, Sections D (but only with respect to the portion thereof commencing with the third sentence of that Section D), and G, pursuant to ARTICLE VII, Section L, and pursuant to Schedule VI, Paragraphs 2 and 3, during any period of time during which either: (i) the respective Protector for that portion of the Trust Fund is unable, for whatever reason, to exercise his or her veto power over such powers or discretions; or (ii) a person whose interests are substantially adverse to the exercise of the power or discretion in favor of the Trustee or Trustees is not then acting as Protector over the relevant portion or portions of the Trust Fund.

      **Y.**    **DIRECTIONS TO FIDUCIARIES:**

      1.    **Settlor's Purpose.** The Settlor's primary purpose for creating Trust Funds hereunder is to provide for the income Beneficiaries hereof, the rights and interests of remaindermen being subordinate to such purpose. Therefore, the Fiduciaries are directed to consider the Settlor's

Exhibit C

foregoing purpose for the creation of Trust Funds hereunder in connection with their making any determination regarding invasion of principal of Trust Funds for the benefit of one or more income Beneficiaries thereof.

      2.    **Precatory Factors.** In making determinations regarding invasion of principal of Trust Funds for the benefit of income Beneficiaries, the Fiduciaries may, *but shall not be required to*, take into consideration the standard of living to which each such Beneficiary was accustomed at the time of commencement of such Trust Fund, and all other income and resources available to such Beneficiary together with any and all other factors which the Fiduciaries deem relevant in their sole and absolute discretion,

      3.    **Trustees' Exercise Of Discretionary Powers.** The Trustees shall exercise the powers and discretions vested in them as they shall think most expedient for the benefit of all or any of the persons actually or prospectively interested under this Settlement. The Trustees may exercise (or refrain from exercising) any power or discretion for the benefit of any one or more of such persons without being obliged to consider the interests of the others or other. Subject to the previous provisions of this Section Y, and subject to ARTICLE XII, Section D hereof, every discretion vested in the Trustees shall be absolute and uncontrolled; every power vested in them shall be exercisable in their sole, absolute and uncontrolled discretion; and the Trustees shall have such discretion in deciding whether or not to exercise any such power.

    Z.    **ADDITIONAL POWERS:** The additional Trustees' powers and provisions which are set forth in Schedule VI attached hereto and incorporated herein by this reference, shall have effect as if fully set forth in this ARTICLE VII. However, in no event shall any power or provision (wheresoever set forth in this Settlement) be exercisable after the expiration of the Trust Period or in such a way so as to infringe any applicable rule against perpetuities or rule against excessive

- 54 -

Exhibit C

accumulations, or to benefit any Excluded Person.

**ARTICLE VIII**
**APPOINTMENT OF, AND PROVISIONS RELATING TO, FIDUCIARIES**

A.      **APPOINTMENTS; RESIGNATIONS:**

1.      **Initial Appointment.**  The initial Trustees hereunder shall be the persons identified in Schedule I attached hereto and incorporated herein by this reference.

2.      **Successor Appointments.**  In the event any Trustee for any reason becomes unable or unwilling to so serve, then the person or persons specified in Schedule V attached hereto and incorporated herein by this reference, in order of priority as therein set forth, may by an executed written declaration appoint one or more other persons to serve as successor.  All appointments made herein or by any person howsoever empowered are subject to the limitations set forth in Section B 1 c, below, and to any exclusions or provisions which may be specified in Schedule V.  Subject to such possible limitations, exclusions, and/or provisions, successor Trustees may be resident or domiciled anywhere in the world.  In addition to other causes of inability, an individual during any period of Adjudicated Incapacity of such person, and a corporation which is insolvent or winding-up its affairs, shall be deemed unable to serve as a Trustee hereunder.

3.      **Resignation Of Trustees.**  Any Trustee may resign by delivering notice containing an effective date not earlier than thirty (30) days from the date said notice is received by the person specified in this sentence (unless such notice period is waived or reduced in writing by the Protector), in the manner set forth in Section B 3, below, to the person specified in Schedule V having for the respective time the power to appoint successor or additional Trustees hereof.  Such notice shall be executed by the resigning Trustee himself, or in the case of a corporate Trustee by any of its duly appointed officers or directors, and the same shall be effective on the date specified in the

- 55 -

Exhibit C

preceding sentence or, if receipt cannot be established, at the expiry of forty (40) days from the date of posting the same by a method specified in ARTICLE VIII B 3 to the last known address of the addressee. Upon the effective date of said notice, the resigning Trustee shall cease to be a Trustee hereof for all intents and purposes, except for such acts or deeds as may be reasonably necessary for the proper vesting of the Trust Fund in the continuing or successor Trustees or otherwise as the case may require. Notwithstanding the foregoing provisions of this Section A 3, if at any time there is only one (1) Trustee remaining in office, and such remaining Trustee wishes to resign and has given the notice required by this Section A 3 which notice has not resulted in the appointment of a successor Trustee by the person having the power to appoint such successor, then, under such circumstances, such remaining Trustee may itself appoint a Trustee in its stead, to hold the position of Trustee pending the appointment of another Trustee by the person having the power so to do. Written notice of the retiring Trustee's selection and appointment of successor Trustee shall be given to any persons to whom the notice of resignation was originally given.

4.    **Custodian Trustee.**  The person or persons specified in Schedule V attached hereto and incorporated herein by this reference, in order of priority as therein set forth, shall have the power to appoint any one of the existing Trustees to be a Custodian Trustee pursuant to Section 19F of the Cook Islands International Trusts Act 1984 (the "Act"). In addition, such appointment may also be made by designation in Schedule I, upon the execution of this deed. In the event a Custodian Trustee has been appointed pursuant to this ARTICLE VIII, Section A 4 of this Instrument, The following provisions of this Section A 4 shall apply notwithstanding any provision of this Instrument to the contrary:

(a)    Title to all assets comprising the Trust Fund shall be transferred forthwith to and held by the Custodian Trustee as if the Custodian Trustee were the sole Trustee.

- 56 -

Exhibit C

(b)      The appointment of the Managing Trustee shall be evidenced to the extent that such Trustee shall be designated or redesignated as Managing Trustee, and the powers and duties of the Managing Trustee shall be modified in accordance with the terms of this ARTICLE VIII A 4.

(c)      Subject only to the provisions of subparagraph (d) below, the management of the Trust Fund and the exercise of all other powers, rights, duties and discretions exercisable by the Trustees in accordance with the terms of this Instrument, or expressed or implied by law, shall remain vested the Managing Trustee to the exclusion of the Custodian Trustee as fully and effectually as if the Managing Trustee were the sole Trustee. All decisions of the Managing Trustee shall be minuted and copied to the Custodian Trustee for its information.

(d)      The sole function of the Custodian Trustee (subject always to ARTICLE V Section B of this Instrument) shall be to obtain and hold the Trust Fund in its name, and to invest and dispose of the assets so obtained and held as the Managing Trustee in writing shall direct. In performing this function, the Custodian Trustee shall have all the rights, powers and discretions conferred on the Managing Trustee and Trustees generally under this Instrument and the Act as are required to allow it to perform its functions. In the interests of certainty, but not by way of limitation of the above, the Custodian Trustee:

(i)      shall have the power to delegate the performance of any part of its function to any person;

(ii)      may permit assets to be held by or in the name of the Managing Trustee to facilitate the management and administration of the Trust Fund by the Managing Trustee, or as otherwise directed by the Managing Trustee;

(iii) shall have the liability limitations and rights to indemnity set out

- 57 -

Exhibit C

in Article VIII, Sections D and I 1 of this Instrument;

(iv)     shall not be liable to any person for acting on any direction of the Managing Trustee;

(v)     shall not be liable for any act or default on the part of Managing Trustee;

(vi)     shall have the same rights to compensation conferred on the Trustees pursuant to Article VIII, Section H of this Instrument;

(vii) may resign, be removed and be replaced in the same manner as a Trustee, as provided in this Instrument.

(e)     *Subject to Section F of this ARTICLE VIII*, for the purposes of paragraph (d), a direction given by the Managing Trustee must be given by them unanimously where there are two, or may be given by a majority where there are more than two.

(f)     The Custodian Trustee is to concur in and perform all acts necessary to enable the Managing Trustee to exercise the powers of management or any other power or discretion vested in them. If the Custodian Trustee is of the opinion that any direction of the Managing Trustee conflicts with the terms of this Instrument or the law or is otherwise objectionable, the Custodian Trustee may, without being under any obligation to do so, refer the direction back to the Managing Trustee with notice of such objection. The decision and direction of the Managing Trustee in response to such notice shall be final and the Custodian Trustee shall act in accordance therewith. The Custodian Trustee is entitled to assume that any direction of the Managing Trustee has been made in accordance with the law, and with the terms of this Instrument.

(g)     All actions or proceedings concerning the Trust Fund shall be brought or defended in the name of the Custodian Trustee at the written direction of the Managing Trustee,

- 58 -

Exhibit C

and the Custodian Trustee shall not be liable for the costs thereof apart from such as are available under the Trust Fund.

(h)    No person dealing with the Custodian Trustee shall be concerned to inquire as to the concurrence or otherwise of the Managing Trustee, or be affected by notice of the fact that the Managing Trustee have not concurred.

(i)    On the appointment of the Custodian Trustee ceasing to exist, whether by resignation removal or as otherwise herein provided, unless there is a simultaneous appointment of a successor Custodian Trustee:

(i)    all restrictions imposed on the powers of the Managing Trustee by virtue of the appointment of the Custodian Trustee shall be removed;

(ii)    the Managing Trustee shall thereupon become the Trustees so that all references in this Instrument to Managing Trustee or Custodian Trustee shall be read as references to the Trustees;

(iii) title to the assets comprising the Trust Fund shall be transferred to the Managing Trustee by the Custodian Trustee;

(iv)    the Trustee may at any time or times thereafter by deed make such consequential changes in or additions to or deletions from the powers and provisions of this Instrument as the Trustee shall consider necessary or advisable to give full force and effect to such succession.

(j)    A Managing Trustee may resign, be removed and be replaced in the same manner as a Trustee, as provided in this Instrument.

(k)    Notwithstanding Section 19F of the Act, upon the appointment of the Managing Trustee ceasing to exist, whether by resignation, removal or as otherwise herein provided,

- 59 -

Exhibit C

unless there is a simultaneous appointment of successor Managing Trustee:

(i)    all restrictions imposed on the powers of the Custodian Trustee by virtue of the appointment of the Managing Trustee shall be removed;

(ii)    the Custodian Trustee shall thereupon become the Trustee so that all references in this Instrument to Managing Trustee or Custodian Trustee shall be read as references to the Trustee;

(iii) the Trustee may at any time or times thereafter by deed make such consequential changes in or additions to or deletions from the powers and provisions of this Instrument as the Trustee considers is necessary or advisable to give full force and effect to such succession.

(iv)    title to any assets comprising the Trust Fund and held in the name of the Managing Trustee shall be transferred to the Custodian Trustee by the Managing Trustee.

**B.    ADDITIONAL REMOVAL AND SUCCESSION PROVISIONS:**

**1.    Removal Of Trustees; Appointment of Additional Or Successor Trustees; Limitation:**

a.    Removal.

(i)    Subject to the provisions of Section B of ARTICLE V, and Section D 2 of ARTICLE XII, the person or persons specified in Schedule V attached hereto and incorporated herein by this reference, in order of priority as therein set forth, shall, subject to the limitations set forth in Section B 1 c, below, and any exclusions or provisions which may be specified in Schedule V, have the power to remove any Trustee hereof with or without cause, and shall have the power to appoint one or more other persons, wheresoever resident or domiciled in the

- 60 -

Exhibit C

world, to be an additional or successor Trustee hereof.

        (ii)     In addition, upon the happening of any of the events enumerated hereinbelow in this Section B 1 a (ii), the Trustees who reside in or who are domiciled in a given country shall have the power and authority to remove from office one or more of the Trustees who reside in or who are domiciled in another given country wherein the event has occurred, with no powers, authorities, benefits or discretions of the Trustees so removed surviving such removal, and thereupon the Trustees so removed shall be divested of the title to any assets belonging to the Trust Fund. The enumerated events are as follows: War, invasion, or revolution; confiscation or expropriation of assets, either with or without "compensation"; the termination of exchange control regulations favorable to the Trust Fund or the implementation of exchange control regulations unfavorable to the Trust Fund; the mandatory liquidation or dissolution of existing Trustees; the mandatory replacement of existing Trustees or the placing of limitations on the powers of Trustees other than in accordance with the terms or provisions hereof; devaluation or inconvertibility of the currency in which Trust Fund assets are held; serious governmental threat to the ownership or free transfer of private property by citizens of the jurisdiction; the threat of or the actual suspension or abrogation in whole or in part of this Settlement, or any contract with a party involved in the trust; compulsory conversion of the Trust Fund assets into the currency of the jurisdiction; the threat of or the actual compulsion of the Trustees to sell, transfer or otherwise dispose of Trust Fund assets in a manner inconsistent with the terms and provisions of this Settlement, including, but not limited to the threat or the actual commencement of litigation involving any Beneficiary hereof. Removal pursuant to this power shall be effective immediately upon notice thereof to the Trustee so removed, or to the Protector. In such event, the Trustees authorized to exercise this power (which may only be exercised by their unanimous action if there

Exhibit C

shall be more than one (1) such Trustee) shall have the sole power and authority to designate the successor or successors to the Trustee or Trustees who are so removed, or to otherwise determine in their sole and absolute discretion that there shall, for the time being or for any time, not be a successor or successors in office to the Trustees so removed.

      b.    <u>Other Vacancy.</u> Subject to paragraph c, below, and any exclusions or provisions which may be specified in Schedule V, in the event of a vacancy occurring or about to occur in the office of Trustee hereunder by resignation, death, incapacity, or otherwise (other than through removal pursuant to Section B 1 a, above), where no person specified in Schedule V is willing and able to appoint a successor Trustee, or if such a person is willing and able, such person otherwise does not act prior to the effective date of such vacancy, the then serving Trustee shall have the power to fill such vacancy by appointment of any person, resident anywhere in the World, as successor Trustee. In the event the Trustee acting pursuant to this Section B 1 b is a resigning sole Trustee, the resigning Trustee shall make a reasonable effort to appoint a successor hereunder in accordance with the provisions of Section A 3, above; however, the failure of said effort shall not affect the validity of the resigning Trustee's retirement pursuant to this provision.

      c.    <u>Limitation.</u>

      I.    **LIMITATION ON APPOINTMENT**: Under no circumstance:

      (i)    shall the Settlor or the Settlor's Spouse (if any) be appointed to serve as a trustee hereunder,

      (ii)    shall any Beneficiary be appointed as a sole Trustee of any Trust under the terms of which such Beneficiary may receive any benefits, or

      (iii) shall a successor trustee be appointed who is subject to the

- 62 -

Exhibit C

jurisdiction of any court in any country in which a court action, proceeding, order, or like event of duress is in existence with respect to this Trust, any property of this Trust, or any Settlor hereof.

        **II.**      **LIMITATION ON TRUSTEE ACTION:** Following the Distribution Event, under no circumstance:

        (i)     shall any Beneficiary who is serving as a co-trustee hereunder be permitted to exercise (directly or indirectly) or in any manner participate in the exercise of any discretionary power or authority granted hereunder which may affect such Beneficiary's interest in Trust income or principal in any manner, or

        (ii)    shall a Trustee hereunder participate in any determination regarding discretionary distributions of income or principal to the spouse of such Trustee, or to other persons with respect to whom such Trustee has an obligation of support or other legal obligation. Any Trustee affected by item (i) or (ii) of this clause II, or by any other similar provision of this Instrument, may, at any time or from time to time, request the Protector to designate one or more persons to act as a Trustee under this Instrument. In the event the Protector shall fail to act in accordance with said request within a reasonable period of time, or, if there shall be no Protector then serving, then, in either such event, the Trustee affected by this provision, or by any other similar provision of this Instrument, may, under such circumstance, designate one or more persons (first from those listed on Schedule I and not then serving, if any) to act as a Trustee under this Instrument. Such designation shall be in writing ("Instrument of Designation") and shall specify the effective date or event upon which the designation so made shall become effective, shall specify that the designation shall be effective for a specific transaction or period of time, and shall otherwise comply with Section B 3, below. The Instrument of Designation shall further specify, as to each designee appointed thereby, whether the designee shall serve as a Co-Trustee with the designating Trustee or

- 63 -

Exhibit C

other Trustees then serving, or as a successor Trustee, and, if as a successor, the order of succession. No designee may commence serving before his execution of a written acceptance of his position as Trustee. A designee under this provision shall be deemed to have commenced serving and to have taken office as Trustee upon the last to occur of: (A) the effective date specified in the Instrument of Designation, and (B) the date of execution of a written acceptance of his position as Trustee by the designee. Any Instrument of Designation may be revoked as to any designee who has not commenced serving as Trustee hereunder by the person(s) who may at that time make a new designation in accordance with this provision, or by the Protector at any time. Any such revocation shall comply with Section B 3, below.

2.    **Additional Provisions Relating To Notice:**

a.    In the event that there is more than one member of a class of persons specified in Schedule V for the relevant time having the power to act pursuant thereto, then any notice required to be given pursuant to this ARTICLE VIII by a Trustee to a person then authorized to act under Schedule V may be given to any member of such then empowered class.

b.    In the event a class referred to in the preceding sentence consists of Beneficiaries, then, in selecting such class member to whom notice shall be given, priority shall be given to any person known to have received directly or indirectly distributions of income from the Trust, *PROVIDED THAT* the giving by the Trustee of written notice to a Beneficiary without such priority shall not affect the validity of such notice and such notice shall be valid and effectual provided such notice was given in good faith.

c.    In the event that any person receiving notice pursuant to this ARTICLE VIII is found to be incompetent or of unsound mind, or a minor, or in the case of a corporation, to be in liquidation, then notice shall be served upon that person's or that corporation's legal

- 64 -

Exhibit C

representative or guardian.

3. **Formality Required.**

a.      Any resignation, removal, or appointment of a Trustee hereunder, or any other notice required by this ARTICLE VIII, shall be effected by the execution and delivery of a witnessed document by and to the appropriate interested parties, which document may, but shall not be required to unless so required by another provision of this Instrument, specify the effective date thereof or the event upon which the same shall become effective. In the event an effective date or event is not so specified, in the case of a removal of a Trustee hereunder, the same shall be effective upon receipt of notice of removal by the Trustee so removed or by the Protector, and, in any other case, upon receipt of notice by the Protector or by a Trustee. Any document specified in this Section B.3. shall not be effective unless sent by certified or registered mail or by courier, postage and/or fees prepaid, return receipt requested, by facsimile transmission (where receipt is capable of being determined), or by hand delivery.

b.      Upon there being any change in Trustees, a memorandum shall be endorsed on or permanently affixed to this Settlement wherein the names of the Trustees for the time being shall be set forth. The memorandum shall be signed by the persons so named. Anyone dealing with the Trust Fund or this Settlement shall be entitled to rely upon such memorandum as sufficient evidence that the Trustees named therein are the duly constituted Trustees for the time being. In the case of there being more than one memorandum, anyone dealing with the Trust Fund or this Settlement shall be entitled to rely upon the memorandum which is most recent in time.

4. **Additional Succession Provisions:**

a.      Power Of Attorney.

i.      Grant of Power.  Each Trustee hereby irrevocably grants the

- 65 -

Exhibit C

Protector and each successor Protector its power of attorney, for the sole purpose of executing any document transferring title of any asset belonging to the Trust Fund from the outgoing Trustee to the new Trustee, on his resignation, inability to act, or removal as a Trustee.

ii.    Exercise of Power.   The Protector may exercise such power without notice to the Trustee, *provided however,* that the exercise of this power of attorney under this ARTICLE VIII B 4 a shall thereby grant an irrevocable release and indemnity to the outgoing Trustee as set forth in Section I 1, below. The exercise by the Protector of the power of attorney granted by this Section B 4 a of this ARTICLE VIII shall always be subject to the provisions of Section B of ARTICLE V, and Section D 2 of ARTICLE XII, and, *in order to be effective to transfer title of any asset belonging to the Trust Fund,* any document executed by a Protector under which the within power of attorney shall be exercised shall contain (have attached to it, or be accompanied by, as the case may be) these three elements: (A) the Protector's statement under oath to the effect that the action being taken by the Protector is wholly voluntary, and not in connection with, pursuant to, or as a result of duress or court order of any kind, (B) a reference to the source of the power of attorney (this ARTICLE VIII B 4 a), and (C) a copy of this ARTICLE VIII B 4 a. A document or documents comprised of the foregoing three elements shall be referred to (collectively, if need be) for purposes of this ARTICLE VIII B 4 a as a "Document of Exercise". A Document of Exercise may be executed in one or in multiple originals if necessary, and as shall be expedient. In the event a Protector is acting pursuant to the power of attorney granted under this ARTICLE VIII B 4 a, then, in order to expeditiously effectuate the power granted herein to transfer title to assets belonging to the Trust Fund, and not in limitation or derogation of any power of the Protector granted elsewhere in this Instrument, the Protector shall have the power and authority to execute and deliver any document, take any action, and do any thing said Protector deems necessary to effectuate the

- 66 -

Exhibit C

provisions of this ARTICLE VIII B 4 a.

        iii.    <u>Reliance By Third Parties.</u>  The authority of the Protector to exercise the power of attorney granted under this ARTICLE VIII B 4 a, and the ability of any person to rely and act upon same without incurring liability to any person howsoever interested in this Settlement or in any accounts, securities, properties and/or assets held hereunder, shall be evidenced by a Document of Exercise. Any person acting in reliance on this ARTICLE VIII B 4 a pursuant to a Document of Exercise is hereby held harmless and indemnified with respect to liability to any person howsoever interested in this Settlement or in any accounts, securities, properties and/or assets held hereunder.

        b.    <u>Direction To Custodian.</u> In the event the power of attorney set forth in ARTICLE VIII B 4 a, above, cannot be effectively exercised for any reason, then, in such event, this ARTICLE VIII B 4 b shall be applicable.

        i.    <u>Irrevocable Direction.</u>  Each Trustee by execution of this Instrument, and each and every successor Trustee by acceptance of such appointment, hereby irrevocably directs each and every custodian (the "custodian") of Trust assets to assist in giving effect to a resignation of a Trustee, a change of Trustee, the inability to act of a Trustee, a removal and appointment of a new Trustee, and similar events (a "Change Event") documented to such custodian by a Protector hereof in accordance with Section B 4 b ii, below. The custodian, therefore, is hereby irrevocably directed by each Trustee (as if a separate written direction had then been given by the appropriate Trustee) to assist in giving effect to a Change Event by transferring the title on its records of any asset belonging to the Trust Fund from the outgoing Trustee to the new Trustee (or to the remaining Trustee, as the case may be), on the occurrence of a Change Event. This ARTICLE VIII B 4 b shall constitute the written direction by the outgoing Trustee to the custodian

- 67 -

Exhibit C

to change title on its records of any asset belonging to the Trust Fund from the outgoing Trustee to the new Trustee (or to the remaining Trustee, as the case may be).

        ii.      Executing Direction. The custodian may execute this direction without notice to any Trustee, *provided however*, that the execution of this direction under this ARTICLE VIII B 4 b shall thereby grant an irrevocable release and indemnity under this Instrument to the outgoing Trustee as set forth in Section I 1, below. The effectiveness of any document presented by the Protector to any custodian under this Section B 4 b of this ARTICLE VIII shall always be subject to the provisions of Section B of ARTICLE V, and Section D 2 of ARTICLE XII, and, *in order to be effective under this Section B 4 b of this ARTICLE VIII to properly document a Change Event,* any document executed by a Protector reflecting a Change Event shall contain (have attached to it, or be accompanied by, as the case may be) these four (4) elements: (A) the Protector's statement under oath to the effect that the action being taken by the Protector is wholly voluntary, and not in connection with, pursuant to, or as a result of duress or court order of any kind, (B) a reference to this ARTICLE VIII B 4 b, (C) a copy of this ARTICLE VIII B 4 b, and (D) a document appointing a successor Trustee to whom the custodial assets are to be transferred or a document indicating that the custodial assets are to be titled in the names of the remaining Trustee(s). A document or documents comprised of the foregoing four (4) elements shall be referred to (collectively, if need be) for purposes of this ARTICLE VIII B 4 b as a "Document of Change Event". A Document of Change Event may be executed in one or in multiple originals if necessary, and as shall be expedient. In the event this ARTICLE VIII B 4 b shall be applicable, then, in such event, in order to expeditiously effectuate the transfer of title to assets belonging to the Trust Fund pursuant to this provision, and not in limitation or derogation of any power of the Protector granted elsewhere in this Instrument, the Protector shall have the power and authority to execute and deliver

- 68 -

Exhibit C

any document, take any action, and do any thing said Protector or custodian deems necessary to effectuate the provisions of this ARTICLE VIII B 4 b.

        iii.    <u>Reliance By Third Parties.</u>  The ability of any person to rely and act upon the direction set forth in this ARTICLE VIII B 4 b without incurring liability to any person howsoever interested in this Settlement or in any accounts, securities, properties and/or assets held hereunder, shall be evidenced by a Document of Change Event. Any person acting in reliance on the direction set forth in this ARTICLE VIII B 4 b pursuant to a Document of Change Event is hereby held harmless and indemnified with respect to liability to any person howsoever interested in this Settlement or in any accounts, securities, properties and/or assets held hereunder.

        c.    <u>Merger Or Consolidation Of Corporate Trustee.</u>

        In the event a corporation herein named as Fiduciary, or any successor corporate Fiduciary, shall cease to have legal existence because of merger, consolidation or other transfer of substantially all of its trust business to a successor corporation, then such successor, if duly authorized to engage in such business within the jurisdiction of its predecessor, shall, upon such succession, also become successor Fiduciary hereunder without any further action or appointment by any person.

        d.    <u>Successor Trustee - Powers, and Discretions.</u>  Each successor Trustee shall automatically acquire, as of the effective date of his appointment, or as of the date of the occurrence of a vacancy regarding his predecessor, all of the title to each asset of the trust estate, and all powers and discretions which are then vested in his predecessor, without the necessity of any conveyance or transfer, but any predecessor Trustee shall execute all documents and perform all acts necessary to vest and indicate such title in such successor Trustee.

        e.    <u>Expenses of Succession; Security.</u>  Upon the death, resignation, or

- 69 -

Exhibit C

removal of any Trustee, such Trustee (or his estate or other successor(s), as the case may be) shall be entitled to reimbursement from the Trust assets for all reasonable expenses incurred in the settlement of its accounts and in the transfer to its successor of the Trust assets and documents, including an executed original of this Instrument and all attachments and endorsements thereto. An outgoing Trustee who is liable as a Trustee or former Trustee hereof for any taxes or like charges (wherever imposed and of whatever nature) shall be entitled to reasonable security with respect to any such liability, in accordance with Subsection I 1, below.

    **C.**   **WAIVER OF SECURITY:**  No Fiduciary serving hereunder shall be required to post any bond or furnish sureties in any jurisdiction, and the Settlor hereby specifically waives any and all requirements therefor.

    **D.**   **FIDUCIARIES' RESPONSIBILITY:**

        1.   **General.**  No Fiduciary of any trust created hereunder shall be liable for any loss, liability, expense or damage to any such trust occasioned by such Fiduciary's acts or omissions in good faith in the administration of any such trust (including acts or omissions in reliance on opinion of counsel). In no event shall any Fiduciary be liable except for his own fraud or fraudulent breach of trust; in no event shall any Fiduciary be liable for honest errors of judgment. No Fiduciary shall incur any liability for any payment or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in any trust held hereunder. No successor Fiduciary shall be liable for the acts or defaults of any predecessor Fiduciary, nor for any loss, liability, damage, or expense resulting from anything done or neglected to be done by any predecessor Fiduciary, nor shall any such successor be required to inquire into or take notice of the prior administration of the Trust Fund, but such successor Fiduciary shall be liable under this Section only with respect to property received by him as Fiduciary after the date he

- 70 -

Exhibit C

actually received it. Any successor Fiduciary who shall be then acting as Fiduciary pursuant to a notice of vacancy shall not be guilty of any wrongdoing merely because he is acting as successor Fiduciary if it shall later be discovered that another has been designated as successor Fiduciary pursuant to any provision hereof. Any corporate Trustee or trust company shall have the power and authority to act by and through its duly appointed and proper officers or directors, and no officer or director of a company which is one of the Trustees hereof shall be liable for any loss not attributable either to the fraud or fraudulent breach of trust of that officer/director or to the wilful commission or omission of an act known by that officer/director to be fraud or a fraudulent breach of trust. In addition, no such person nor any such officer/director shall be bound to take any proceedings against a co-trustee or co-director (or officer) for any fraud or fraudulent breach of trust or allegations thereof committed by that co-trustee or co-director (or officer) not involving the fraud or fraudulent breach of trust by that co-trustee or co-director (or officer).

2.    **Responsibility For Agents.**  No Trustee shall be liable for any loss, liability, expense, or damage to any Trust created hereunder howsoever occurring resulting from any act or omission (whether wilfully fraudulent, or wilfully dishonest or grossly negligent, or otherwise) of any solicitor, attorney, agent, banker, accountant, auditor, stockbroker, investment advisor, or other agent or power of attorney employed or appointed in good faith by such Trustee.

3.    **Responsibility for Co-Trustees.**  In the event that there is more than one Trustee, a co-Trustee shall not be liable for any loss, liability, expense, or damage howsoever occurring resulting from any act or omission (whether wilfully dishonest, wilfully fraudulent, or grossly negligent, or otherwise) of any other co-Trustee.

4.    **Assets Not Effectively Transferred.**  Where any asset included in the Trust Fund is found not to have been properly transferred into the Trust Fund, or if properly transferred

- 71 -

Exhibit C

such transfer is subsequently avoided, then no Trustee shall be liable to any person or entity claiming the return or reconveyance of that property for any loss suffered by virtue of the fact the Trustee has already exercised any of the trusts or powers hereof in relation to that property.

**E.** **TRANSACTIONS WITH RELATED PARTIES:** The Fiduciaries may enter into any contract, transaction, or other matter on an equitable and arms' length basis, with any partnership in which any one or more of them is a partner, any corporation in which any one or more of them is a stockholder, director, officer, or employee, or any other entity in which any one or more of them has any interest as a Fiduciary or otherwise.

**F.** **ACTION OF FIDUCIARIES:**

1.    **General.**  Any and all actions to be made and taken hereunder by the Fiduciaries shall be made and taken by the affirmative vote of a majority of the Fiduciaries then serving and eligible hereunder to make and take each such action.

a.    Determination of Majority. If there shall be an even number of such Fiduciaries then serving, any and all actions shall be made and taken by the affirmative vote of one more than one-half of the number of Fiduciaries then serving and eligible hereunder to make and take such action. If only two (2) Fiduciaries are authorized to vote on a matter, the affirmative vote of both shall be required unless at such time one (1) of the Fiduciaries is a resident of or domiciled in the same country as Settlor and the other Fiduciary is not a resident of or domiciled in the same country as Settlor, in which case the determination of the Fiduciary who is a resident of or domiciled in the same country as Settlor shall govern.

b.    Action of Majority. The majority may act without the concurrence or prior knowledge of the other Trustee(s); however, due notification of any such action shall be provided to such other Trustee(s) to enable such other Trustee(s) to cast an affirmative or negative

- 72 -

Exhibit C

vote as approving or disapproving such majority action. Any fiduciary who is not notified within

thirty (30) days of the majority action as aforesaid shall be deemed to have cast a negative vote on

the matter. Any majority action shall be valid and effective as if all Fiduciaries had concurred therein

(regardless of any negative vote thereon).

        c.    <u>Tie-Breaker Provisions.</u> If no Fiduciary is a resident of or domiciled

in the same country as the Settlor, and if there shall be only two (2) Fiduciaries authorized to vote

on a matter, and they shall not agree, said matter shall be submitted to the Protector to cast a

tie-breaking vote. If: (i) there shall be no Protector then serving, (ii) the effectiveness of the

Protector's actions shall be then subject to Section B of ARTICLE V, or (iii) the Protector shall be

unwilling or unable to then act for any reason, said matter shall be submitted to any other person

acceptable to both Fiduciaries (as indicated in a written instrument signed by them) to cast a

tie-breaking vote. Subject to Section B of ARTICLE V, the Protector's tie-breaking vote, or the

tie-breaking vote of such other person so selected, shall be given effect with respect to said matter,

as if there had been three (3) Fiduciaries authorized to vote on the matter, except that said Protector

or such other selected person shall incur no liability whatsoever for acting or failing to act pursuant

to this Section F 1, and the Protector or such other person shall, in no sense, be deemed to be a

fiduciary with respect to this Settlement as a result of the application of this Section F 1 c.

        d.    <u>Effect of No Majority; Negative Vote.</u> Subject to the preceding

provisions of this Section F 1, the failure to obtain a majority shall constitute a decision by the

Trustees not to undertake the matter being considered. Any Fiduciary who shall cast (or be deemed

to have cast) a negative vote with respect to any matter considered by the Trustees shall not question,

by court action or otherwise, the matter with respect to which he shall have cast (or be deemed to

have cast) his negative vote and he shall in no way be liable or responsible for the consequences of

- 73 -

Exhibit C

the majority decision on the said matter.

      e.    <u>Application of Section.</u> The provisions of this Section F shall apply to the Fiduciaries inter se, and no third party shall have any obligation or standing whatsoever to inquire into compliance with the provisions of this Section F. Wherever a person is prohibited hereunder from exercising a power or making an election or taking any action because such person is a Beneficiary hereunder or a Related or Subordinate Party, such person shall not be entitled to vote or be considered a Trustee in matters related to the exercise of such power, election, or action.

      2.    <u>Written Minute.</u> Any action, determination, or resolution of the Trustees under any provision of this Settlement shall be recorded in a written Minute and such Minute shall be signed by the requisite Trustees or if a Trustee is a corporation by a director or person(s) nominated for the purpose by the director(s) thereof and kept with the accounts and records of the Trust. A resolution in writing signed or assented to by letter or by facsimile by the requisite Trustees shall be as valid and effective as if it had been passed at a meeting. Any such resolution may consist of several documents in like form, each signed or purporting to have been despatched by one or more Trustees.

      G.    <u>ACCOUNTING AND QUALIFICATION:</u> To the extent permitted by law, the Settlor hereby waives compliance with the provisions of any law requiring the qualification of, or accounting by, the Trustees to any court. The Trustees, however, shall furnish (within ninety [90] days), at the written request of a Beneficiary, but not more frequently than annually, a full and complete accounting to such trust Beneficiary (or his legal representative) then receiving or being credited with income of any and all Trust Funds held hereunder for his benefit. Such Beneficiary, or legal representative, shall state in writing his objections to such accounting, if any, and shall deliver such objections to the Trustees within sixty (60) days after receipt of such accounting. The

Exhibit C

failure to raise such timely objections in the manner herein set forth shall constitute a waiver of such objections, and such waiver shall be binding as to all matters stated in such accounting or as shown by it upon all persons, whether or not they are then lives in being, or may thereafter become eligible to receive principal or income of the Trust Fund for which such accounting is made. In order to avoid unnecessary delay and expenses incident to a judicial settlement of the Trustees' accounts, the Trustees may at any time render to the Protector an account of their acts as Trustees. The Protector shall have full authority to determine the accuracy, and to accept the accounting of the Trustees; and upon the basis thereof, the Protector may discharge the Trustees from all liability for their acts or omissions through the period of the accounting. The Protector's acceptance of the accounting and discharge of the Trustees shall be binding upon all persons interested in the Trust even though some of said persons are then under a legal disability or are unborn, and shall have full force and effect of a final judgment or order of a court of competent jurisdiction in any action or proceeding for the settlement of the Trustees' accounts in which jurisdiction was obtained of all necessary and proper parties. The preceding provisions shall not be construed to preclude the Trustees from having their accounts judicially settled if they shall deem such course of action advisable.

**H.    COMPENSATION:**

1.    Each corporate and/or non-corporate Fiduciary shall receive such compensation as shall be set forth in a written agreement between (i) such corporate and/or non-corporate Fiduciary and (ii) the Settlor (executed prior to or simultaneously with the execution of this Instrument) or the individual Fiduciaries, relating to such compensation; or if no such agreement shall be in effect or if any such corporate and/or non-corporate Fiduciary shall be required to perform services which are not customary or usual, such Fiduciary shall receive such compensation as shall be determined to be fair and reasonable by agreement of the parties, or by

- 75 -

Exhibit C

arbitration, if necessary. If no such agreement shall be in effect and if any such corporate Fiduciary shall be required to perform only customary or usual services, then such Fiduciary shall receive such compensation as shall be determined in accordance with its schedule of fees in effect from time to time during which services are performed hereunder. In any event, each corporate and/or non-corporate Fiduciary shall receive reimbursement for all necessary and reasonable out-of-pocket expenses incurred during the performance of service in accordance herewith.

2.    Each non-corporate Fiduciary or successor non-corporate Fiduciary (other than a member of the Settlor's family as hereinafter provided) shall receive reasonable compensation for such services and shall be reimbursed for any and all ordinary and necessary out-of-pocket expenses incurred in connection with the administration of the Trust Funds hereunder and such person's services as Fiduciary hereunder. If such person is a practicing accountant, attorney, investment advisor, or other professional, then the amount of such compensation shall be based upon and shall be equal to such person's usual and customary fees for professional services rendered to clients generally determined on an hourly basis; and if such person is not an attorney, accountant, investment advisor, or other professional, but is otherwise regularly employed, then such compensation shall be based upon and shall be equal to the same compensation then received by such person in his or her usual and customary occupation, determined on an hourly basis, during the periods of time over which such services are rendered. Notwithstanding the foregoing, if such person also renders professional services to the Fiduciaries hereunder, such person shall be entitled to receive compensation for such professional services at the usual and customary amounts charged by such person to clients generally for the time actually expended in rendering such professional services to the Fiduciaries hereunder; provided, however, that with respect to all time expended by such person either as a Fiduciary or as a professional rendering services to the Fiduciaries, such

- 76 -

Exhibit C

person shall be compensated as either a Fiduciary or a professional but not as both with respect to each hour of service rendered.

3.        Except as otherwise specifically set forth herein, the Settlor hereby directs that in no event shall any member of the Settlor's family or any Beneficiary hereunder serving as a Fiduciary receive any compensation for services rendered as such Fiduciary; however, any such person shall nevertheless be reimbursed for any and all reasonable out-of-pocket expenses incurred in connection with the administration of Trust Funds and the performance of such person's services as Fiduciary hereunder. For purposes of this provision, the term "member of the Settlor's family" shall mean any person who is related by blood or marriage to the Settlor or any Issue of the Settlor.

4.        If the Protector is of the opinion that any commission, fee, charge, or expense levied under this Section H is excessive the Protector may make application for its review under Applicable Law and for these limited purposes the Trustees unconditionally and irrevocably agree that the Protector shall be deemed to be the "person on whose behalf the work was performed" and waive all objection to locus standi.

I.    **MISCELLANEOUS:**

1.        **Reimbursement/Indemnification:**   The Fiduciaries shall be entitled to reimburse themselves from any trust created hereunder and they shall be indemnified out of the Trust Fund for all reasonable expenses and liabilities incurred by them in performing their duties hereunder or in connection with the establishment or administration of this Trust or their association with this Trust in any way, and they shall have a lien on the Trust Fund for such reimbursement and/or indemnity. The preceding sentence shall not apply with respect to any Trustee with for any loss, liability, expense, damage, or other item which results in any manner from any action or inaction for which the Trustee would be liable under Section D, above, of this ARTICLE VIII. In addition, in any

- 77 -

Exhibit C

contract or agreement made by the Trustees on behalf of any trust created hereunder, the Trustees may provide against the personal liability of the Trustees and that of any other individual, and the rights or obligations created under and by virtue of such contract or agreement shall belong to or be the obligation of such trust; the Trustees shall be reimbursed from the trust estate for any tax, penalty, and/or interest thereon paid by the Trustees during the existence of a separate trust or thereafter, and if such trust estate is insufficient or if such trust be then terminated, such Trustees shall be reimbursed by the person or persons to whom the property of such trust shall have been distributed to the extent of the amount received by each such person (and, before making any distribution of either income or corpus, the Trustees may accordingly require an undertaking by the distributee in a form satisfactory to the Trustees to reimburse the Trustees for all such taxes, penalties, and/or interest or the Trustees may withhold distribution of an amount reasonably required to meet any taxes, interest and penalties thereon pending release of any tax lien or the final determination of any tax controversy); the Trustees may secure from any Beneficiary or the Protector a full and complete release and indemnity from any and all liabilities whatsoever attributable to any acts by the Trustees or any decisions by the Trustees (other than with respect to any loss, liability, expense, or damage for which the Trustee would be liable under Section D, above, of this ARTICLE VIII): to act or to refrain from acting in any manner whatsoever with respect to the investment of the assets of the trust estate, retention of any or all trust assets, and the sale or disposition of any or all trust assets; the Trustees may secure the written approval of the Protector or any Beneficiary of any account or statement; settle the account of a deceased, incapacitated or resigned Trustee, and the Trustees, the Protector, or any Beneficiary of any trust created hereunder may, without liability to any present or future Beneficiary or any other person, approve the accounts of any deceased, incapacitated or resigned Trustee; any approval, release, indemnity, or discharge given under this

- 78 -

Exhibit C

subsection I 1 shall be conclusively binding on all persons then or thereafter having any interest in such trust, including each Beneficiary and all of said Beneficiary's descendants (including then unborn descendants), heirs or appointees who may then have or thereafter acquire any interest in such trust.

      2.    **Reliance Upon Communication:** The Fiduciaries may rely, in performing their duties hereunder, upon any letter, notice, certificate, report, statement, document or other paper, or upon any telephone, telegraph, facsimile, cable, wireless or radio message, if believed by the Fiduciary to be genuine, and believed to be signed, sealed, acknowledged, presented, sent, delivered, or given by or on behalf of the proper person, firm or corporation, without incurring liability for any action or inaction based thereon.

      3.    **Assumptions:** The Fiduciaries may assume, in the absence of written notice to the contrary from the person or persons concerned, that a fact or an event, by reason of which an interest in any trust created hereunder shall commence or terminate, does not exist or has not occurred, without incurring liability for any action or inaction based upon such assumption.

      4.    **Third Parties:** No person dealing with any Fiduciary of any separate trust or receiving any documents executed by such Fiduciary on behalf of any trust shall be obligated to inquire as to the powers of such Fiduciary or to see to the application of any money or property delivered to such Fiduciary. Such Fiduciary shall not be required to obtain authority from, or approval of, any court in the exercise of any power conferred upon him hereunder. Any person dealing with the Fiduciary may rely on the opinion of counsel as to such Fiduciary's rights and powers hereunder.

      5.    **Instruments Executed By Fiduciaries:** Any certificate signed by any person purporting to be an acting Fiduciary concerning the number or identity of the Fiduciaries, the

- 79 -

Exhibit C

necessity, validity or propriety of any action or instrument, the fact that any instrument delivered or

action taken by the Fiduciary is valid and authorized hereunder, or the existence or nonexistence of

any fact or circumstance which in any manner relates to the affairs hereof, shall be conclusive

evidence as to the matters so certified in favor of any person dealing with the person purporting to

be a Fiduciary hereunder.

      **J.**      **DISCLOSURE:** Subject to the second sentence of Section G of this ARTICLE VIII,

but otherwise notwithstanding any rule of law or equity to the contrary, no Trustee domiciled in the

Cook Islands shall have any duty to divulge any information concerning any aspect of this Trust

including, without limiting the generality of this provision, its existence, the existence of any

entitlement whether vested or contingent of any Beneficiary, or any decision of the Trustee, to any

person including, without limiting the generality of this provision, any Beneficiary provided that the

Trustee shall supply such information as is requested to the Settlor, the Protector, or any person

authorized by either of them, and such Trustee shall have discretion to provide information

concerning any aspect of the Trust to any Beneficiary, whether existing or contingent if, in the

Trustee's opinion, it is in the interests of the Trust so to do.

**ARTICLE IX**
**TRUST IRREVOCABLE**

      This Settlement and the Trusts created pursuant to this Instrument are irrevocable. The Settlor

does not reserve the right in any respect to alter, amend, modify, revoke, or terminate this Settlement

or any Trust created hereunder.

**ARTICLE X**
**RECEIPT OF PROPERTY BY TRUSTEES**

      **A.**      **INITIAL TRUST CONTRIBUTION:** The initial property settled in trust by the

- 80 -

Exhibit C

Settlor pursuant hereto is hereby accepted by the Trustees.

      **B.**     **SUBSEQUENT TRUST CONTRIBUTIONS:**  With the consent of the Trustees, the Settlor and any other persons may, at any time and from time to time, increase the corpus of any Trust established pursuant to the terms of this Instrument, by contributing thereto insurance policies, cash, securities, or other property. All such contributions shall be subject to the terms of this Trust Instrument in the same manner and to the same extent as if they had been delivered to the Trustees as part of the corpus of the Trust estate at the time of the execution of this Instrument.

### ARTICLE XI
### ACCUMULATIONS AND PERPETUITIES

     Notwithstanding any provisions of this Instrument to the contrary, neither shall property be held in a separate trust (or any share or portion thereof) longer than, nor shall any estate or trust created by the exercise of any power of appointment hereunder terminate beyond the Trust Period (or, if sooner, the Rule Against Perpetuities of the Applicable Law), and if, at the expiration of such period, any property continues to be held in a separate trust, or any share or portion thereof, or any estate therein has not vested, the Trustees shall cease to accumulate any net income thereof, and such separate trust, or share or portion thereof, or such estate, shall vest in, and immediately be distributed to, the income Beneficiary thereof or, if there shall be more than one income Beneficiary thereof, to the income Beneficiaries thereof in equal shares.

### ARTICLE XII
### PROVISIONS RELATING TO THE TRUST PROTECTOR

      **A.**     **APPOINTMENT OF FIRST PROTECTOR.** The first Protector of the Trust Fund shall be the person executing this deed as such, who shall serve in such capacity until such person's earlier death, Adjudicated Incapacity, or resignation. A Protector may resign by delivering a written

- 81 -

Exhibit C

resignation to any Trustee or to the person then having the power to appoint a successor Protector as provided in Section B of this ARTICLE XII, below.

       **B.**    **SUCCESSOR PROTECTOR.**  In the event the Protector then serving shall cease to act as Protector, or, for whatever reason, become unable or unwilling to serve, then, in any such event, a successor Protector shall be appointed. In no event shall the Settlor (or the Settlor's Spouse, if any) serve as the Protector of any Trust created hereunder.

          1.    **Procedure.**  Whenever the occasion arises for appointing a successor Protector, such successor Protector shall be appointed by a written declaration (which declaration may be a Will or Codicil) executed by the person making such appointment. The same shall be effective when the document or a certified copy thereof effecting the same is received by one of the Trustees, who shall notify the other Trustees thereof and shall cause a memorandum of such appointment to be affixed to this Settlement. A successor Protector (as well as one or more of such successor's replacement(s)) may be appointed in advance by a written declaration (which declaration may be a Will or Codicil) executed by the person making such appointment. To be effective, the declaration (i) must specify the date or event upon the occurrence of which a respective Protector then in office (if any) shall be removed, with the respective successor to concurrently take office, or the event upon the occurrence of which the successor shall take office; and (ii) must be delivered to and received by one of the Trustees (as an original document or as a certified copy thereof), with the recipient Trustee then notifying the other Trustees thereof and causing a memorandum thereof to be endorsed on this Settlement.

          2.    **Who May Appoint.**  The power to appoint a successor Protector shall be vested in such persons as are specified in Schedule VII attached hereto and incorporated herein by this reference, in the order or priority and in the manner and subject to such conditions (if any)

Exhibit C

therein specified.

    **C.**    <u>**VACANCY:**</u>  If, for any period of six (6) months, there shall be a vacancy in the office of Trust Protector hereunder, the Trustees shall, upon the expiration of that period and unless and until a Protector is appointed under Section B, above, have the power themselves to appoint a person other than one of the Trustees to be the Protector. Any appointment so made under this power shall have the same effect in all respects as if it had been duly made under Section B, above.

    **D.**    <u>**VETO POWER OF PROTECTOR:**</u>

    1.    Subject to Section D 2, below of this ARTICLE XII, but notwithstanding any other provision of this Instrument to the contrary, and, in particular, notwithstanding anything conferring an absolute or uncontrolled discretion on the Trustees hereof, each and every power and discretion vested in the Trustees by such provisions of this Settlement as are specified in Schedule VIII attached hereto and incorporated herein by this reference shall only be exercisable by them subject always to the power of the Protector to veto any exercise by the Trustees of such power or discretion, and, accordingly, the Trustees shall be required to provide the Protector with sufficient prior notice of their intent to exercise any such powers or discretions to permit the Protector reasonable advance opportunity within which to consider the factors relevant to his determination to veto or refrain from vetoing the exercise of the power or discretion. The Protector's exercise or non-exercise of this veto power shall be communicated in writing to the Trustees and failure to so communicate in a timely fashion provided notice is actually received by the Protector shall be treated by the Trustees as a veto of the proposed exercise of the power or discretion; *provided however,* if one or more of the Trustees reasonably believes that failure by the Protector to so communicate is due to the Protector being restrained or enjoined from doing so, then such failure to communicate shall be deemed to be an acquiescence by the Protector. If deemed necessary by the Protector in order

- 83 -

Exhibit C

to implement the foregoing veto power, the Protector may at any time, or from time to time, require the establishment of (and the transfer of the Trust Estate or any portion thereof to) Trust bank and/or brokerage accounts, and/or other forms of ownership under which both the Protector's signature and the signature of one or more of the Trustees (as specified by the Protector) would be required to effect any transfer or conveyance.

2.    Notwithstanding anything to the contrary otherwise herein expressed or implied, each discretion or power conferred upon the Protector, or upon any other person by this Settlement, or by any rule of law, or arising in consequence of the exercise of any power conferred upon the Protector, or any other person by this Settlement, shall be subject to ARTICLE V B, and nothing contained herein shall operate, so as to cause the Protector to be successful in ordering or vetoing any action or causing any result which is not of the Protector's own free will, or which is otherwise the result of the Protector acting under the duress or influence of an outside force.

E.    **WAIVER OF VETO POWER:**  The Protector may, from time to time, by written notice to the Trustees (a memorandum of which shall be endorsed on or permanently attached to this Settlement) declare (either generally or in relation to any particular act or acts, and either permanently or for such period as shall be specified in the notice) that any act or acts herein declared to be subject to the veto power of the Protector shall not be so subject and the said notice shall be effective according to its terms.

F.    **TRUST CONSTRUCTION IF NO PROTECTOR:**  If and whenever, and for so long as there is no Protector capable of acting, a memorandum to that effect shall be endorsed on or permanently attached to this Settlement and all the provisions of this Settlement (other than Sections A, B, C, E, and this Section F of this ARTICLE XII) shall be read and have effect as though references to the Protector or the consent of the Protector were omitted.

- 84 -

Exhibit C

G. **COMMITTEE OF TRUST PROTECTORS:** The Protector may, in the Protector's sole discretion, from time to time or at any time, determine that the position of Protector shall be composed of a Committee of Trust Protectors, which Committee shall consist of four (4) or fewer members, as the Protector may so choose, or as the Protector may otherwise set forth in written rules and regulations which shall govern the Committee. In no event shall such rules and regulations be inconsistent with or otherwise amend, revoke or change any other term, provision or discretion of this Settlement.

H. **REPRESENTATION OF BENEFICIARIES:** The Protector, or any person appointed in writing by the Protector (hereinafter, the "Nominated Person"), is authorized to represent the interests of all beneficiaries who: have not attained the age of majority, are yet to be ascertained, lack legal capacity for any reason, or who, after the best reasonable efforts of the Trustees, are unable to be contacted (a "Represented Beneficiary"). The Nominated Person may consent to or ratify any act or omission of a Trustee on behalf of a Represented Beneficiary. Each and every consent and/or ratification so given by the Nominated Person shall be deemed to be the consent or ratification of the Represented Beneficiary for all purposes. Absent gross negligence or criminal misconduct, the Nominated Person shall incur no liability whatsoever for any action taken in the capacity of the Nominated Person.

I. **RESPONSIBILITY OF PROTECTOR:** No Protector of any trust created hereunder shall be liable for any loss, liability, expense or damage to any such trust occasioned by such Protector's acts or omissions in good faith in acting as Protector of any such trust (including acts or omissions in reliance on opinion of counsel). In no event shall any Protector be liable except for his own fraud or criminal misconduct; in no event shall any Protector be liable for honest errors of judgment. No Protector shall incur any liability for consenting to, vetoing, or waiving the right to

- 85 -

Exhibit C

veto any discretionary act of the Trustee, payment, distribution, or amendment of the Trust. No successor Protector shall be liable for the acts or defaults of any predecessor Protector, nor for any loss, liability, damage, or expense resulting from anything done or neglected to be done by any predecessor Protector, nor shall any such successor be required to inquire into or take notice of the acts of predecessor Protector. Any successor Protector who shall be then acting as Protector pursuant to a written appointment shall not be guilty of any wrongdoing merely because he is acting as successor Protector if it shall later be discovered that another has been properly designated as successor Protector pursuant to any provision hereof. Any corporate Protector shall have the power and authority to act by and through any one of its duly appointed and proper officers or directors, and no officer or director of a company which is a Protector hereof shall be liable for any loss not attributable either to the fraud or criminal misconduct of that officer/director or to the wilful commission or omission of an act known by that officer/director to be fraud or a criminal act. In addition, no such person nor any such officer/director shall be bound to take any proceedings against a co-Protector or co-director (or officer) for any fraud or criminal misconduct or allegations thereof committed by that co-Protector or co-director (or officer) not involving fraud or criminal misconduct by that co-Protector or co-director (or officer).

J.    **COMPENSATION:**

1.    Each corporate and/or non-corporate Protector shall receive such compensation as shall be set forth in a written agreement between (i) such corporate and/or non-corporate Protector and (ii) the person who appointed the Protector, or if no such agreement shall be in effect or if any such corporate and/or non-corporate Protector shall be required to perform services which are not customary or usual, such Protector shall receive such compensation as shall be determined to be fair and reasonable by agreement of the parties, or by arbitration, if necessary.

- 86 -

Exhibit C

If no such agreement shall be in effect and if any such corporate Protector shall be required to perform only customary or usual services, then such Protector shall receive such compensation as shall be determined in accordance with its schedule of fees in effect from time to time during which services are performed hereunder. In any event, each corporate and/or non-corporate Protector shall receive reimbursement for all necessary and reasonable out-of-pocket expenses incurred during the performance of service in accordance herewith.

    2.    Each non-corporate Protector or successor non-corporate Protector (other than any Beneficiary or a member of the Settlor's family as hereinafter provided) shall receive reasonable compensation for such services and shall be reimbursed for any and all ordinary and necessary out-of-pocket expenses incurred in connection with such person's services as Protector hereunder.

    3.    Except as otherwise specifically set forth herein, the Settlor hereby directs that in no event shall any member of the Settlor's family or any Beneficiary hereunder serving as a Protector receive any compensation for services rendered as such Protector; however, any such person shall nevertheless be reimbursed for any and all reasonable out-of-pocket expenses incurred in the performance of such person's services as Protector hereunder. For the purposes of this provision, the term "member of the Settlor's family" shall mean any person who is related by blood or marriage to the Settlor or any Issue of the Settlor.

    4.    If the Trustee is of the opinion that any commission, fee, charge, or expense levied under this Section J is excessive, the Trustee may make application for its review under Applicable Law and for these limited purposes the Protector unconditionally and irrevocably agrees that the Trustee shall be deemed to be the "person on whose behalf the work was performed" and waive all objection to "locus standi".

Exhibit C

## ARTICLE XIII
## POWERS OF APPOINTMENT

**A.**     **GENERAL:**

Unless otherwise expressly provided, the donee of any power of appointment created by this Instrument may in the exercise of such power appoint:

1.     to any one or more of the objects of the power, to the exclusion of other such objects;

2.     to, or for the benefit of, children or grandchildren or more remote descendants, even though the parents, grandparents, or ancestors of such appointees are then living;

3.     general or limited interests, present or future, including life estates and remainders;

4.     in cash or kind, including a direction to the trustee to distribute specific property, outright to, or to a trustee or trustees to hold in trust, in which case the said donee of the power may select a trustee(s) who need not be an object of the power, and confer such administrative and dispositive powers upon any trustee so selected as are deemed by the donee appropriate;

5.     subject to such conditions and such lawful spendthrift and other restrictions as are specified by the said donee;

6.     by creating in any object of the power a general power of appointment or a special power to appoint among objects of the original power;

7.     substitute (but only if said donee himself shall not thereafter be a beneficiary of such trust) or add any one or more objects of the power as beneficiaries of the trust.

Provided, however, that notwithstanding anything to the contrary contained herein, no interest, power, or condition shall be created to benefit any person who is not an object of the

- 88 -

Exhibit C

power being exercised, or who is an Excluded Person.

**B.**   **OPERATING RULES:**

1.   **Testamentary Powers.**   Any power exercisable by Will (a "testamentary power") may be so exercised, unless otherwise provided herein, only by a specific reference to said power and its source herein in the donee's valid Will or Codicil admitted to probate, executed subsequent to the date on which such power was created whether before or after the date of the Settlor's death, and delivered to the Trustee. Delivery to the Trustees of a duly certified copy of a Will or Codicil (or such other document as may be authorized herein) on file in the appropriate court, or other official depository shall be equivalent to delivery of the original document.

a.   **Acting Upon Probated Instrument.**   No Trustee hereunder shall incur any liability to any person for relying on any instrument admitted to probate in any jurisdiction as the valid Will or Codicil of a donee of a testamentary power.

b.   **No Document Located.**   If, within ninety (90) days after the date of death of the donee of a testamentary power, the Trustees shall have no notice or knowledge of the existence of a valid Will or Codicil of said donee purporting to exercise the power, the Trustees shall incur no liability for acting upon the assumption that said donee failed to exercise such testamentary power, and in making allocation or distribution accordingly of the part of the Trust Estate subject to such power of appointment; provided, however, that any such allocation or distribution shall be without prejudice to the rights of any appointee of said donee to recover the allocated or distributed property from any persons or persons to whom such allocation or distribution shall have been made in the event that after such allocation or distribution there should be found a valid Will or Codicil in which said donee shall have validly executed such power of appointment.

Exhibit C

            c.    <u>Two   Documents   Purporting   To   Exercise   Power.</u>

If, within ninety (90) days after the date of death of the donee of a testamentary power, more than one document purporting to exercise a testamentary power held by such deceased donee has been brought to the attention of the Trustees, the Trustees shall distribute such property in accordance with the document last in date that effectively exercises the power.

      2.    **Inter Vivos Power Of Appointment.** Any power exercisable by any person inter vivos shall be exercised by the donee thereof by delivery during the lifetime of such donee of a written instrument (in the manner set forth in ARTICLE VIII B 3 a) to the appropriate Fiduciary, which instrument shall make specific reference to the power being exercised and its source herein, and shall state in specific terms the form, manner and extent of the exercise thereof.

      3.    **Release Or Renunciation.** All powers created by this Instrument are releasable or renounceable by the donee thereof, in whole or in part, or may be reduced by the donee of such power in such manner as to reduce or limit the objects in whose favor the power would otherwise be exercised. In addition to any other method of renunciation, release or reduction recognized by law, any power may be renounced, released or reduced by the donee of such power by a written instrument declaring such intent signed by the donee and delivered (in the manner set forth in ARTICLE VIII B 3 a) to at least one Trustee (other than the releasing party) of the Trust to which such renunciation, release or reduction applies. Any renunciation, release or reduction of a power as aforesaid shall be delivered to any beneficiary of the appropriate trusts hereunder.

      4.    **Trustee As Donee Of Power.** The Trustees shall have the power, at any time or times, by a written declaration executed by them (revocable during the Trust Period or irrevocable) to release or to any extent restrict the future exercise of any powers hereby or by law conferred on them, notwithstanding the fiduciary nature of any such power; *provided, however,* that

- 90 -

Exhibit C

the power conferred upon the Trustees by ARTICLE V, Section D hereof to add to the Appointed Class shall not be capable of being released or restricted unless at the date of any such release or restriction there are at least two (2) Beneficiaries.

5. **Restrictions On Exercise Of Limited Power Of Appointment.**

Unless and except as otherwise expressly provided herein, no power of appointment granted hereunder shall be exercised or exercisable to any extent in favor of the donee of such power, or the estate of such donee, the creditors of such donee, or the creditors of the estate of said donee, or to discharge or satisfy a legal obligation of said donee, or for the pecuniary benefit of said donee, and no exercise of any power of appointment by the donee thereof shall be effective unless the written instrument or the valid Will or Codicil of the donee in which the donee exercises such power (a) shall be executed subsequent to the date on which such power was created; and (b) shall specifically refer to and expressly exercise such power.

6. **Law Governing.** So far as is allowable, all questions relating to powers of appointment created hereby shall be resolved in accordance with Applicable Law.

7. **Perpetuities.** No power created hereunder may be exercised beyond or in such a manner as to be effective, and no such power may be exercised to create another power which may be exercised beyond or in such a manner as to be effective, with respect to any period subsequent to a time which would violate the Rule Against Perpetuities, which shall be measured from the date of the creation of the original power.

Exhibit C

## SCHEDULE I TO THE

## JOREN TRUST

The names and business addresses of the Trustees referenced on page 1 of this Settlement

of Trust are:


SOUTHPAC TRUST INTERNATIONAL, INC.
ANZ Bank Building
Avarua, Rarotonga
COOK ISLANDS

Exhibit C

**SCHEDULE II TO THE**

**JOREN TRUST**

The money and/or other property initially settled hereby and referred to in the recitals to this

Settlement of Trust are as follows:

1.      Cash and securities: US$9,000,000.00

Exhibit C

## SCHEDULE III TO THE

## JOREN TRUST

The Beneficiaries referenced in ARTICLE I, Section D 1, of this Settlement of Trust are as follows:

The Settlor

The Settlor's Issue

The Settlor's Heirs-At-Law

The Settlor's siblings (all adults): SAMUEL K. RENSIN, DAVID K. RENSIN, and DEBORAH K. RENSIN, their Issue, and any Trust(s) established by any of the foregoing persons or under which any of the foregoing persons is or may become a beneficiary.

The Settlor's parents: HOWARD M. RENSIN and KATHERINE K. RENSIN

Exhibit C

## SCHEDULE IV TO THE

## JOREN TRUST

The Excluded Persons referenced in ARTICLE I, Section D 3, of this Settlement of Trust are:

1.  Any Protector other than an individual Protector who is designated as a Beneficiary on Schedule III as of the date of the Commencement of Trusts hereunder.

2.  Any Trustee other than an individual Trustee who is designated as a Beneficiary on Schedule III as of the date of the Commencement of Trusts hereunder.

Exhibit C

## SCHEDULE V TO THE

## JOREN TRUST

Appointment and removal of Trustees under ARTICLE VIII, Sections A and B of this Settlement of Trust, shall be made by the following persons in the order specified:

1.     The Protector, and in the event the Protector shall be unable or unwilling to so act, or in the event there shall be no Protector at a time relevant hereto, then by

2.     Any adult Beneficiary

Exhibit C

## SCHEDULE VI TO THE

## JOREN TRUST

Subject always to any restrictions contained in this Settlement, the additional Trustee powers and provisions referenced in ARTICLE VII, Section Z, of this Settlement of Trust are as follows:

1.    The Trustees shall have power and authority to permit any Beneficiary or member of the Appointed Class to reside in any dwelling house or other improved real property (whether directly owned or represented by the ownership of shares in a cooperative), to occupy any land, or to have the custody and use of any chattels which may for the time constitute part of the Trust Fund, upon such conditions as to payment or non-payment of rent, rates, taxes and other expenses, and generally upon such terms and conditions as the Trustees in their absolute discretion shall think fit. Except as otherwise provided in this Settlement, the Trustees are expressly authorized to invest in unproductive or underproductive property, or to retain property in such state, if the Trustees deem such to be consistent with the Settlor's overall intentions and goals.

2.    During the Settlor's lifetime the Trustees shall have the power and authority to make such technical or conforming alterations or additions in or to the powers, discretions or provisions of this Settlement as the Trustees may consider necessary or desirable to complement and/or implement the overall estate plan of the Settlor, including the effectuation of overall tax savings for the Settlor, the Settlor's Spouse, and their respective estates, and including the maximization of the Trust Fund and the sub-trusts thereof through planning towards the minimization of taxation.

3.    In addition, the Trustees may at any time or times during the Settlor's lifetime by

- 97 -

Exhibit C

writing but with the prior consent of the Protector make any alterations or additions to the provisions of this Deed which they consider in their absolute discretion to be for the benefit of all or any one or more of the Beneficiaries.

4.    United States Internal Revenue Code Subchapter S Provisions:

In the event any Trust created under this Instrument shall be or shall become the owner of any shares of any corporation which has elected, or which intends to elect (and has notified the Trustees hereunder in writing of such intent at least thirty [30] days prior to the time such election is to be filed) under Section 1362 of the Code to be an S corporation (and any of the following actions are or may be required to obtain or retain such tax status), then, in any such event, the Trustees are hereby authorized, but shall not be required to:

A.    1.    take any and all action and to do any thing required (including, but not limited to, taking steps to redomicile each such separate Trust as a United States trust) to cause the subject Trust to be treated as an "Electing Small Business Trust" pursuant to Section 1361(e) of the Code, or

2.    segregate such shares of stock into as many equal, separate, and independent Trusts as there shall be beneficiaries of such Trust, and to take any and all action and to do any thing required to qualify each such separate Trust as an S corporation shareholder under § 1361(c)(2) of the Code (including, but not limited to, taking steps to redomicile each such separate Trust as a United States trust) with the effect being that each such Trust shall be a United States trust and shall have only one beneficiary (all of which separate and independent Trusts may be hereinafter referred to in the aggregate as the "QSST") effective as of the date required to qualify as a shareholder under Section 1362(b), which Trust shall remain subject to all of the administrative and

- 98 -

Exhibit C

dispositive provisions of this Instrument otherwise applicable to the non-QSST Trusts, and shall have the same beneficiary as the non-QSST Trusts, except that, with respect to the QSST, the following provisions shall supplant and supersede any contrary provisions contained in this entire Instrument:

(1)    During the lifetime of the income beneficiary of the QSST, the income of the QSST shall only be distributed to such beneficiary;

(2)    Any principal distributed from the QSST during the lifetime of the income beneficiary shall be distributed only to such income beneficiary;

(3)    The income interest of the income beneficiary in the QSST shall terminate upon the earlier of the death of the income beneficiary or the termination of the QSST;

(4)    Upon the termination of the QSST during the lifetime of the income beneficiary, the QSST shall be distributed only to such beneficiary; and

(5)    All of the income of the QSST (within the meaning of Section 643(b)) shall be distributed to the income beneficiary (who must be an individual U.S. citizen or resident) at least annually.

B.    Effective upon the termination of the S election of the corporation the shares of stock of which were subject to Section A, above, the Trustees may take any action they deem appropriate to terminate the Electing Small Business Trust treatment and/or the QSST segregation and thereupon application of the provisions of Section A, above, shall terminate.

5.    The Powers and provisions of the International Trusts Act 1984 (Cook Islands) and its Amendments and Regulations are incorporated herein by this reference. In the event of any conflict between a power, authority or discretion of the Trustees as set forth in this Settlement, and

- 99 -

Exhibit C

as set forth in the International Trusts Act, to the extent the International Trusts Act is not obligatory

with respect thereto, the power, authority or discretion hereof shall govern.

Exhibit C

## SCHEDULE VII TO THE

## JOREN TRUST

Appointment of new Trust Protector under ARTICLE XII, Section B, of this Settlement of

Trust:

    The Protector

    The Trustees

Exhibit C

## SCHEDULE VIII TO THE

## JOREN TRUST

Powers, authorities and discretions of the Trustees which shall be subject to the Protector's veto power as referenced in ARTICLE XII, Section D, of this Settlement of Trust, so long as, and during such periods as, the Protector is not acting as the result of or subject to duress or compulsion of any nature:

1.      With respect to the body of the Settlement, those mentioned or referenced in ARTICLE II, Sections A, B, and C; ARTICLE III E; ARTICLE V, Sections C, D, and G; ARTICLE VII, Sections E, F, G, L, and S 2; ARTICLE VIII, Section B 1 a (i).

2.      With respect to those mentioned or referenced in Schedule VI hereof, Clause 1, Clause 2, and Clause 3.

3.      The powers, authorities and discretions to change the investments comprised in the Trust Fund from time to time, to be exercised by the Protector consistent with the Settlor's overall goals and intentions as set forth in the Settlement of Trust.

Exhibit C

IN WITNESS WHEREOF, the parties have executed this Settlement of Trust.

Signed, sealed and delivered
by the Settlor in the presence of:
As to Settlor:

_____ (SEAL)
JOSEPH K. RENSIN, Settlor

- 103 -

Exhibit C

THE COMMON SEAL of the said
**SOUTHPAC TRUST INTERNATIONAL
INC.**, Trustee, was hereunto
affixed in accordance with its
Articles of Association in the
presence of:                                                    (SEAL)



**CORPORATE DIRECTORS LTD.**
Director, by its authorised signatory:

**SEPAC LIMITED** - Resident
Secretary, by its authorised
signatory

- 104 -

Exhibit C

SIGNED, SEALED AND DELIVERED
by the said **PROTECTOR SERVICES (NEVIS), LTD.**,    BY: _G. Mitchell (Director)_
Protector, in the presence of:
                                                                              (Protector's signature)



_signature_
(Witness' signature)

_Marcus Diprose_
(Printed name)

_P.O. Box 116, Road Town, Tortola, British Virgin Islands_
(Address)

_Legal Counsel_
(Occupation)


**PROTECTOR CONTACT INFORMATION:**

c/o Barry Mitchell, Esq.
AMS Group
Sea Meadow House,
3rd Floor,
Blackburne Highway,
Road Town, Tortola,
British Virgin Islands

BVI TELEPHONE: (284) 494-3399
BVI FAX: (284) 494-3041

Exhibit C

# COMPOSITE EXHIBIT "B"

## DEED OF REMOVAL OF TRUSTEE, APPOINTMENT OF NEW TRUSTEE, ACCEPTANCE BY NEW TRUSTEE AND CHANGE OF TRUST SITUS

**THIS DEED** is made on this ⎵4th⎵ day of ⎵December⎵⎵, 2014, by and between the following:

1.     **ROUNDTABLE PROTECTORS, LLC**      (The "Protector")
    and

2.     **ORION CORPORATE AND TRUST SERVICES, LTD.**      (The "Successor Trustee")

SUPPLEMENTAL to the Trust Agreement ("the Trust") known as **THE JOREN TRUST,** u/t/d November 9, 2001, as amended.

### WHEREAS

A.     There is no Event of Duress pending as that term is defined in the Trust; and

B.     Pursuant to Article VIII, Section B (1) (a) (i) of the Trust, the Protector has the power to remove a Trustee by giving notice by execution and delivery of a witnessed document to such Trustee and by appointing a Successor Trustee; and

C.     The above named Successor Trustee desires to accept the appointment as Successor Trustee; and

D.     Pursuant to Article 1, Section (N), the Applicable Law for the administration of the Trust shall be jurisdiction to which primary supervision of the Trust shall be subject at any time, and from time to time.

E.     Pursuant to Article V Section (C) of the Trust, the Trustee may in effect, declare that the rights of all parties and all Beneficiaries under the Trust, and the construction and effect

1

THE JOREN TRUST
Deed of Removal of Trustee, Appointment of New Trustee, Acceptance by New Trustee and Change of Situs
Confidential      RENSIN Subp DT - 001022

of each and every provision in the Trust, shall no longer be determined according to the laws of the Initial Forum, but instead shall be determined as if they were governed by the laws of such other jurisdiction; and

F.    The Successor Trustee desires to change the situs of the Trust to Belize and the Protector consents to the said change in situs and administration; and

G.    The Successor Trustee has determined that changing the situs of the Trust Belize would facilitate economic and convenient administration of the Trust and would not materially impair the interests of any beneficiary; and

**NOW THEREFORE THIS DEED WITNESSES BY EXERCISE OF THE POWERS CONFERRED BY THE TRUST AND ALL POWERS NOW VESTED:**

1.    The Protector hereby removes **SOUTHPAC TRUST INTERNATIONAL, INC.,** as Trustee, effective on the __4th__ day of __December__, 2014 subject only to its further discharge of incident Trustee duties in transferring the Trust to the Successor Trustee and subject thereto the Removed Trustee is hereupon discharged and removed and divested from all future obligations as Trustee under the Trust.

2.    The Removed Trustee shall not in any way be responsible or liable for any loss arising from or in respect of any act or default on the part of the Successor Trustee.

3.    The Protector hereby appoints **ORION CORPORATE AND TRUST SERVICES LTD.** as Successor Trustee of the Trust to act in the Removed Trustee's place and stead, in accordance with the Protector's powers granted under Articles 8 of the Trust.

4.    The Successor Trustee hereby accepts the appointment as Successor Trustee.

2

THE JOREN TRUST
Deed of Removal of Trustee, Appointment of New Trustee, Acceptance by New Trustee and Change of Situs

Confidential        RENSIN Subp DT - 001023

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seals on the day and year denoted, intending that this appointment take effect immediately upon execution by all the parties hereto.

By:  _____

**ROUNDTABLE PROTECTORS, LLC**, Protector

To Be Effective on: _Deccember 4_____, 2014

_____
Witness Signature
Print Name: ___Ercil Dore_____

_____
Witness Signature
Print Name: __Petra Stapleton_____

Witness Address

Fothergill's Estate_____

Gingerland, Nevis_____

Witness Address

Prospect Estate_____

St. John's Paris, Nevis_____

I, the undersigned, a Notary Public, hereby certify that the same persons whose names are signed to the foregoing instrument are personally known to me or produced _____ as identification and appeared before me in person and acknowledged that each signed the instrument as his or her free and voluntary act, for the uses and purposes therein set forth.

Sworn to and Subscribed before me this _4th_ day of ___December_____, 2014.

_____
**NOTARY PUBLIC**

4

THE JOREN TRUST
Deed of Removal of Trustee, Appointment of New Trustee, Acceptance by New Trustee and Change of Situs

**ORION CORPORATE AND TRUST SERVICES, LTD**, Successor Trustee

By: _H. Duncan_           Dated: _4th december_ , 2014
     Authorized Signatory

Witness Signature
Print Name: _Tiffany Spencer_

Witness Address

_4293 Louise Bevans Street_

_Belize City, Belize_

Witness Signature
Print Name: _Tania Thompson_

Witness Address

_10 Hunters Lane_

_Belize City, Belize_

5

THE JOREN TRUST
Deed of Removal of Trustee, Appointment of New Trustee, Acceptance by New Trustee and Change of Situs

Confidential      RENSIN Subp DT - 001025

5.    The Successor Trustee covenants with the Removed Trustee and its respective personal representatives at all times fully and effectually (but subject as provided below) to indemnify the Removed Trustee, pursuant to the terms of the Trust, and its respective personal representatives from and in respect of all fiscal and other outgoings, claims, costs, expenses and liabilities whatsoever incurred or to be incurred by the Trustee following the appointment of the Successor Trustee as the Trustee of the Trust, including, without prejudice to the generality of the above any tax of whatever kind or nature which may at any future time become payable.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**
**EXECUTION PAGE FOLLOWS]**

3

THE JOREN TRUST
Deed of Removal of Trustee, Appointment of New Trustee, Acceptance by New Trustee and Change of Situs

# RESTATEMENT OF TRUST AND
## ACKNOWLEDGEMENT OF TRUSTEE AND TRUST SITUS

**THIS RESTATEMENT OF TRUST** is made on this _18_ day of ___DECEMBER___, 2014, by and between

1. **JOSEPH RENSIN** as Settlor of that certain **JOREN TRUST** u/t/d November 9, 2001 ("The Settlor"); and

2. **ORION CORPORATE AND TRUST SERVICES, LTD.** ("The Trustee")

Settlor and Trustee, in consideration of the receipt of trust property, payment of fees, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, agree as follows:

## RECITALS

**WHEREAS**, the TRUSTS (AMENDMENT) ACT, 2007 of Belize requires that every deed of settlement creating an international trust shall be signed by the Settlor and the Trustees, and every Declaration of Trust shall be signed by the Trustees, and such signatures, if made outside Belize, shall be authenticated before a notary public or other authority authorized by the law of that jurisdiction to administer oaths; and

**WHEREAS**, Settlor desires to execute this Restatement of the Joren Trust u/t/d November 9, 2001 as required by the applicable laws of Belize; and

**WHEREAS**, there is no Event of Duress pending as that term is defined in the Trust; and

**WHEREAS**, Pursuant to Article VIII, Section B (1) (a) (i) of the Trust, the Protector has the power to remove a Trustee, appoint a Successor Trustee; and

**WHEREAS**, the Protector has executed a signed, witnessed and notarized Deed of Removal, Appointment of New Trustee, and Acceptance by New Trustee and Change of Trust Situs as attached hereto; and

**WHEREAS**, the Settlor and Trustee desire to execute this Restatement of The Joren Trust u/t/d November 9, 2001 in conformance with the applicable laws of Belize.

**NOW THEREFORE**, THIS RESTATEMENT OF THE JOREN TRUST u/t/d November 9, 2001 is executed by Settlor and Trustee respectively as follows:

1. That the above Recitals and that certain Deed of Removal of Trustee, Appointment of New Trustee, Acceptance by New Trustee and Change of Trust Situs dated December 4, 2014 are hereby incorporated herein by reference as fully set forth;

2. The Settlor shall execute this Restatement of The Joren Trust u/t/d November 9, 2001 and such signature shall be witnessed and notarized;

3. The Trustee shall execute this Restatement of The Joren Trust u/t/d November 9, 2001 as required under the applicable laws of Belize;

4. Whereas The Joren Trust u/t/d November 9, 2001 as attached hereto is confirmed as a true and accurate Restatement of said Joren Trust u/t/d November 9, 2001 and its terms are hereby incorporated herein as if each such term was fully set forth subject as may be required to conform with the above stated Deed of Removal of Trustee as signed by the Protector, witnessed and notarized.

[Remainder of page intentionally left blank – execution page follows]

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seals on the day and year denoted, intending that this restatement take effect immediately upon execution by all the parties hereto.

By: _____

       **JOSEPH RENSIN**, Settlor

To Be Effective on: _____*12/18*_____, 2014

_____

Witness Signature
Print Name: *Melanie Marin*

Witness Address

*8768 BOYNTON BEACH BLVD*

*BOYNTON BEACH, FL 33473*

_____

Witness Signature
Print Name: *MARLENA T Sulla*

Witness Address

*SAME*

I, the undersigned, a Notary Public, hereby certify that the same persons whose names are signed to the foregoing instrument are personally known to me or produced _*DL*_ as identification and appeared before me in person and acknowledged that each signed the instrument as his or her free and voluntary act, for the uses and purposes therein set forth.

Sworn to and Subscribed before me this *8* day of *DECEMBER*, 2014.

_____

**NOTARY PUBLIC**

ROBERTO MARTINEZ, JR.
NOTARY
My Comm. Expires
August 18, 2018
No. FF 152140
PUBLIC
STATE OF FLORIDA

**ORION CORPORATE AND TRUST SERVICES, LTD,** Trustee

By: _~A. Cusalant,_____    Dated: _Dec 18th_____, 2014
    Authorized Signatory


_Natania Marin_____    Witness Address
Witness Signature
Print Name: _Natania Marin_____    _4293 louise Bevans Street_
    _Belize City, Belize_____

    Witness Address
    _10 Hunters lane_____
Witness Signature    _Belize City_____
Print Name: _Tonia Thompson___

# EXHIBIT "C"



# Advantage
## Insurance

---

## VARIABLE ANNUITY POLICY

---

| | |
|---|---|
| **ISSUED BY:** | ADVANTAGE LIFE & ANNUITY COMPANY SPC |
| **ISSUED TO:** | ORION CORPORATE AND TRUST SERVICES, LTD. AS TRUSTEE OF THE JOREN TRUST U/T/D NOVEMBER 9, 2001 |
| **POLICY NUMBER:** | ADVA 1504-6080 SP |
| **INITIAL PURCASE CONTRIBUTION:** | $350,000 |
| **POLICY CURRENCY:** | UNITED STATES DOLLARS |
| **DATE OF ISSUE:** | 31-Dec-2015 |

Advantage Life & Annuity Company SPC
5th Floor, Windward 3, Regatta Office Park
PO Box 2185, Grand Cayman, KY1-1105
Cayman Islands
+1 (345) 949-1599
www.advantagelife.com

**Advantage Life & Annuity Company SPC**

# Contents

WELCOME LETTER ....................................................................................................................3

IMPORTANT LEGAL NOTICES ..................................................................................................4

DECLARATION ...........................................................................................................................6

1.0   DEFINITIONS ...................................................................................................................7

2.0   AMOUNT OF ANNUITY PAYMENTS ..........................................................................10

3.0   STANDARD FORM OF ANNUITY ................................................................................10

4.0   OPTIONAL FORMS OF ANNUITY SETTLEMENT .....................................................11

5.0   OPTIONAL ANNUITY STARTING DATE .....................................................................12

6.0   PAYMENTS, POLICY SURRENDER, CASH WITHDRAWALS AND BORROWING RIGHTS OF POLICY OWNER AND ANNUITANTS ...................................................................................................12

7.0   BENEFICIARY DESIGNATION .....................................................................................13

8.0   PAYMENTS TO THE BENEFICIARY BEFORE ANNUITY STARTING DATE ...........13

9.0   PAYMENTS TO THE BENEFICIARY AFTER ANNUITY STARTING DATE ..............14

10.0   PAYMENTS IN LIEU OF ANNUITY INSTALLMENTS ...............................................14

11.0   POLICY OWNERSHIP AND ASSIGNMENT ...............................................................14

12.0   POLICY STRUCTURE AND REPORTING ...................................................................15

13.0   ANNUITY PURCHASE CONTRIBUTIONS .................................................................16

14.0   PAID-UP POLICY ..........................................................................................................17

15.0   DISBURSEMENTS, TAX AND EXPENSE PAYMENTS .............................................17

16.0   CHANGE OF CUSTODIAN ...........................................................................................17

17.0   GENERAL PROVISIONS ...............................................................................................17

18.0   TABLE OF DISBURSEMENTS, ANNUITIES, GUARANTEES AND CHANGES IN TABLES ..................19

Appendix I – Policy Application .....................................................................................211

**Advantage Life & Annuity Company SPC**

VARIABLE ANNUITY

POLICY # ADVA 1504-6080 SP



In association with:
Advantage Life & Annuity Company SPC
5th Floor, Windward 3, Regatta Office Park
PO Box 2185, Grand Cayman, KY1-1105
Cayman Islands
+1 (345) 949-1599

Insert Owner Name / Address

RE:  Policy Number  ADVA 1504-6080 SP

Advantage Life & Annuity Company SPC ("Advantage", "we" or "us") is pleased to provide Orion Corporate and Trust Services Ltd, as Trustee of the Joren Trust U/T/D November 9, 2001 ("you") with your Variable Annuity Policy ("Policy"). Please read the complete Policy document carefully and notify us of any errors or omissions immediately.

The Policy is issued in Grand Cayman, Cayman Islands as of December 31, 2015.

This Policy will pay to the Annuitants during the Annuitants life-time, the annuity payments specified herein beginning one month less one day after the Annuity Starting Date and ending with the last annuity payment prior to the death of the last Annuitant. If the person(s) covered by this Policy dies, we will pay to the Beneficiary designated herein, a Single Sum Benefit, subject to the terms of this Policy.

The value of your Policy depends upon the performance of the Investments held by the Policy. We do not manage the Investments held by the Policy. All Policy Investments are managed by qualified investment advisors nominated by you and approved by us.

We will deduct the costs of your Policy from its investment accounts as fees and charges become due. Investment management fees, custody fees and other investment costs are deducted directly from the investment accounts by the advisor or custodian.

Your Policy's features are explained in detail in the sections that follow. We have made every effort to make the Policy and its features easy to understand. If you have any questions about your Policy, please ask your advisor or contact us directly.

Thank you for placing your trust in Advantage.

Susan Walton

Authorised Signatory

**Advantage Life & Annuity Company SPC**

# IMPORTANT LEGAL NOTICES

You are urged to read this Policy carefully. If, after examination, you are dissatisfied with it for any reason you may return it within 10 days of its issue and receive a full refund of the Annuity Purchase Contribution you paid.

Please read and carefully check the copy of the Application attached to this Policy as Appendix I. This Application is a part of your Policy, and this Policy was issued on the basis that the answers to all questions and the information shown on this Application are true and complete. If any information shown on it is not true and complete, please notify us within 10 days from the date of delivery of the Policy to you.

The Policy is issued based upon reliance on the statements in the Application and conditioned on payment of the Initial Annuity Purchase Contribution.

We do not and will not make any recommendation as to selection or retention of an investment advisor, allocation of assets among investment funds or investments in particular securities or categories of securities, nor will we evaluate the investment performance of any investment advisor or investment fund. We make no claims, guarantees, representations, warranties or projections concerning any Investments or their expected returns or future performance.

The Segregated Portfolio Value and Disbursements payable under this Policy may increase or decrease at any time depending on the performance of the Investments in which the Segregated Portfolio is invested and no minimum investment performance or value is guaranteed. Segregated Portfolio Values, Surrender Values and Disbursement amounts are based on the investment experience of the Segregated Portfolio linked to this particular Policy and are entirely variable in nature. None of the values under the Policy are guaranteed. The Owners, Annuitants and Beneficiaries bear the entire risks of poor investment performance.

Advantage is incorporated as a Segregated Portfolio Company under the Companies Law of the Cayman Islands. It is further licenced as a Class B(iii) insurance company under the Insurance Law of the Cayman Islands. The Company is authorized to conduct insurance business only in the Cayman Islands for legal persons resident outside of the Cayman Islands.

A Segregated Portfolio will be established for this Policy and no claim against the Segregated Portfolio of this Policy may be paid from the general account of Advantage or from the assets of another Segregated Portfolio that is not linked to this Policy.

A Segregated Portfolio and all assets of a Segregated Portfolio are the property of Advantage and are not owned by the Policy Owner. The assets of a Segregated Portfolio shall be kept separate and independent of our general assets and all other Segregated Portfolios in accordance with the Governing Law of the Cayman Islands.

**NO COVERAGE ISSUED BY ADVANTAGE LIFE & ANNUITY COMPANY SPC IS PROTECTED BY ANY GUARANTEE OR INSOLVENCY FUND IN THE CAYMAN ISLANDS.**

A Partial Withdrawal from the Policy will result in a permanent reduction in the Surrender Value, the Segregated Portfolio Value and the Disbursements payable under this Policy. Certain penalties or other negative effects on the Segregated Portfolio Value may result from the liquidation process or premature termination of a particular Investment to accommodate a Partial Withdrawal or Full Surrender.

The Policy cannot be transferred or hypothecated without our prior written consent, which we may withhold at our absolute discretion.  The Policy has not been and will not be registered under United States federal or state securities laws or the securities laws of any other jurisdiction and, therefore, cannot be transferred unless so registered or unless such registration is not required or an exemption from registration is available.

The Policy is an appropriate investment only for purchasers who are sophisticated investors who, among other considerations, have no need for access to the Segregated Portfolio Values except to the extent permitted under the Partial Withdrawal provisions of the Policy.  By purchasing this Policy, you represent that you have sufficient financial resources to bear the investment risks associated with the Policy, up to and including a complete loss.

You have nominated an affiliate of Advantage to manage the investments of the Policy.  Advantage and its affiliates may invest in similar assets or investment programs to the one(s) selected by Advantage.  You understand and acknowledge the potential conflicts of interest inherent in the management of Policy investments by an affiliate of Advantage, and waive all rights, claims, and other causes of action against Advantage and its affiliates for any adverse effect or difference in investment result between the Policy investments and those of Advantage and its affiliates.

Investments held by the Policy and managed by Advantage may be further sub-advised by third party investment managers.  You understand and acknowledge the potential risks inherent in the management of Policy investments by sub-advisors, and waive all rights, claims, and other causes of action against Advantage and its affiliates for any adverse effect or difference in investment result between the Policy investments and those of Advantage and its affiliates which are managed by sub-advisor(s).

INVESTMENTS HELD BY THE POLICY ARE NOT GUARANTEED AS TO THEIR LIQUIDITY, PERFORMANCE, PRICE, QUALITY OR FUTURE VALUE.

# DECLARATION



| 1 | Owner(s) |
|---|---|

ORION CORPORATE AND TRUST SERVICES, LTD. AS TRUSTEE OF THE JOREN TRUST U/T/D NOVEMBER 9, 2001

| 2 | Details | | |
|---|---|---|---|
| ISSUER: | ADVANTAGRE LIFE & ANNUITY COMPANY SPC | POLICY NUMBER: | ADVA 1504-6080 SP |
| POLICY TYPE: | DEFERRED VARIABLE ANNUITY | POLICY CURRENCY: | USD |
| INITIAL PURCHASE CONTRIBUTION: | $350,000 | | |
| ISSUE DATE: | 31-DEC-2015 | EFFECTIVE DATE: 31-DEC-15 | |
| ANNUITY STARTING DATE: | TBA. | MATURITY DATE: 2-JUL-2065 | |
| WITHDRAWALS: | MINIMUM OF $10,000 | MINIMUM POLICY VALUE: | $25,000 |

| 3 | Annuitant(s) / Measuring Life(s) |
|---|---|

JOSEPH K. RENSIN
2-JULY-1965

| 4 | Beneficiary |
|---|---|

ORION CORPORATE AND TRUST SERVICES, LTD. AS TRUSTEE OF THE JOREN TRUST U/T/D NOVEMBER 9, 2001

| 5 | Investment Advisor(s) | 6 | Investment Custodian(s) | 7 | Third Party Advisor(s) |
|---|---|---|---|---|---|
| * | LEHMANN LIVIAN FRIDSON ADVISORS, LLC | * | DMS BANK & TRUST LTD. | * | DENIS KLEINFELD |

| 8 | Administration Charges |
|---|---|

ESTABLISHMENT FEE: 2.5% OF ANNUITY CONTRIBUTION

ADMINISTRATION EXPENSE:  0.1875% of Segregated Portfolio Value as of the prior Quarterly Valuation Date subject to a minimum of $625 per Quarter

SURRENDER & WITHDRAWAL CHARGES:  0% of Surrender Value or Withdrawal value

PERIODIC DEDUCTION:  Quarterly

VARIABLE ANNUITY POLICY

## 1.0    DEFINITIONS

**Administration Expense** means the annual amount allocated for administration expenses. This charge is calculated and applied to the Segregated Portfolio Value based on the applicable percentage amount and Period shown in the Declaration Page of this Policy.

**Anniversary Date** means one date one (1) year after Annuity Start Date and every annual anniversary date thereafter.

**Annuitant(s)** means the person(s) named as such in the Declaration Page of this Policy.

**Annuity Payment** means the annual amount payable under terms of Section 2.

**Annuity Purchase Contribution** means the amount paid or property contributed to Advantage upon the issuance of this Policy and any further payments or contributions later made to Advantage being part of the Segregated Portfolio Value and held as provided in Section 13.

**Annuity Starting Date** means the date so specified on the Declaration Page of this Policy unless another date is elected by the Annuitant as provided in Section 5 of this Policy. In no event may any Annuity Starting Date be later than the first day of the month next following the Annuitant's 90th birthday.

**Annuity Year** means a twelve (12) month period beginning with the Annuity Starting Date. Each subsequent Annuity Year shall commence on the anniversary of the Annuity Starting Date.

**Application** means the Application forms and supporting documentation as completed and submitted by the proposed Owner and the proposed Annuitants(s) for the purpose of purchasing the Policy.

**Beneficiary** means the person or persons or entity who having been designated under the terms of Section 7 of this policy is entitled to or receives payments under this Policy and upon the death of the Annuitant is paid the value of the Segregated Account pursuant to Sections 8 and 9 of this policy.

**Custodian** means the Custodian selected by the Company and noticed to the Policyowner under the Custodian Account Agreement or a duly qualified successor Custodian as provided in this policy and the Custodian Account Agreement.

**Custodian Account Agreement (Agreement)** means the agreement between Advantage and the Custodian.

**Declaration** is the section of the Policy that sets out the fees, charges, terms and conditions applicable to an individual Owner.

**Disbursement** means such amounts as are directed to be charged against and disbursed from the Account pursuant to Sections 18.13, 18.14, 18.15 and 18.16 and Annuity Purchase Contribution and Transaction Charges pursuant to Sections 18.9, 18.10, 18.11 and 18.12.

**Effective Date** the date on which this Policy is issued by Advantage.

**Establishment Fee** is an amount deducted from each initial and additional Annuity Purchase Contribution paid in to the Policy. The applicable percentage amount is shown in the Declaration Page of this Policy.

**Final Anniversary** means the anniversary of the Annuity Starting Date next following the 105th birthday of the Annuitant.

Governing Law means the laws of the Cayman Islands including, without limitation, the insurance law.

Insurance Law means the Insurance Law (as revised) of the Cayman Islands and the regulations adopted thereunder.

Investment(s) means any cash, financial asset, instrument, real property, precious metal, intellectual property, or other valuable object held in the Segregated Portfolio.

Investment Advisor means the person designated by Advantage to render investment advice to Advantage for this Policy and who is so named in the Declaration page of this Policy.

Maturity Date means the date on which we pay any Segregated Portfolio Value, if an Annuitant(s) are still living. This date is shown on the Declaration Page of this Policy.

Measuring Life(s) means the person(s) named in the Declaration Page of this Policy on whose life (or lives) the Annuity Payments and Single Sum Benefit is payable under the terms of this Policy.

Minimum Policy Value means the minimum Segregated Portfolio Value that is stated in the Declaration Page of this Policy.

Non-Participating means that this Policy does not share in Advantage's profits or surplus earnings and no dividends will be paid under this Policy.

Owner means the person or entity named as such in the Declaration Page of this Policy.

Periodic Deduction means the amounts that, on the Policy Issue Date and at the applicable payment date, are deducted from the Segregated Portfolio and includes any fees or charges due under or properly chargeable against the Policy throughout the Period. The first Periodic Deduction after issuance of the Policy may be pro-rated.

Periods are the parts of the calendar year that are used for the purposes of calculating the Cost of Insurance, Administration Expense and Segregated Portfolio Value. Periods may be Annual, Quarterly or Monthly, as set out in the Declaration.

Policy Currency means the currency of the Policy as shown in the Declaration Page of this Policy.

Policy Issue Date means the date that all financial and contractual arrangements have been completed and processed and is the effective date of coverage. It is used to determine Anniversary Date and relevant Annuity Year. The Policy Issue Date will be shown in the Declaration Page of this Policy.

Segregated Portfolio means the arrangements set up by us pursuant to the Governing Law in order to segregate our assets and liabilities held in relation to the Policy from our assets and liabilities held in relation to any other policy and from any of our other assets and liabilities. The Investments of the Policy will be held within the Segregated Portfolio.

Segregated Portfolio Value means the total value of the Investments held in the Segregated Portfolio at any time.

Single Sum Benefit means the residual value of this Policy upon the death of the last Measuring Life to the Beneficiary if the death occurs prior to the last annual Annuity Payment being paid.

**Surrender** means a voluntary return of the Policy to Advantage and concurrent surrender by the Owner of all rights under the Policy prior to the maturity date during the lifetime of the Measuring Life(s), at which time the Surrender Value is determined.

**Surrender Charge** means the amount, if any, that will be subtracted from the Segregated Portfolio Value and retained by Advantage upon Surrender of the Policy. The applicable percentage is shown in the Declaration Page of this Policy.

**Surrender Value** means the Segregated Portfolio Value less any accrued but unpaid Administration Expense, Surrender and Withdrawal Charges, and other fees and expenses due to Advantage as of the Surrender date.

**Withdrawal** means the withdrawal of funds from a Policy paid to the Policy Owner, where the amount withdrawn is less than the total Segregated Portfolio Value.

**Withdrawal Charge** means the amount that will be subtracted from the Segregated Portfolio Value and retained by Advantage upon a Withdrawal from the Policy. The applicable percentage is shown in the Declaration Page of this Policy.

**Quarterly Valuation Date** is the last day of March, June, September and December in each year.

**We, us, our, and Advantage** refer to Advantage Life & Annuity Company SPC

**You and your** refer to the Owner of this Policy.

## 2.0    AMOUNT OF ANNUITY PAYMENTS

2.1    The amount of annual Annuity Payment depends on the amount of Segregated Portfolio Value and the rates in the Disbursements and Annuities in Section 18 of this Policy.   A percentage of the Segregated Portfolio Value is charged against the Segregated Portfolio each Annuity Year and made as a Disbursement from the Segregated Portfolio at the direction of Advantage.

2.2    The amount of Annuity will change each year in relation to the change in Segregated Portfolio Value and the rates in the Schedule of Disbursement for Annual Annuity in Section 18 of this Policy.

2.3    Such annuity is payable in equal monthly installments with the first installment payable one month, less one day, after the Annuity Starting Date.   Each subsequent installment is payable as of the last day of each subsequent month.

2.4    In making Disbursements at any time under the Policy, Advantage reserves the right to pay the Annuitant the amount of the annuity in cash or in specie by transferring to the annuitant assets held in the Segregated Portfolio equal to the value of the annuity payments.

2.5    If on the Annuity Starting Date the Account Value of this Policy is less than $25,000 or will not produce an annual annuity of at least $1,200 under the form of annuity elected.   The Company may pay the Annuitant a Single Sum Benefit of the amount equal to the liquidated Account Value less the related charge pursuant to paragraph 18.10(b).   Payment will be made within ten (10) business days after the Company receives the related Disbursement from the Custodian.

## 3.0    STANDARD FORM OF ANNUITY

3.1    The standard form of annuity provided to the Annuitants under this Policy are:

a)    Single Life Annuity with a 10 year Minimum Period Guaranteed if the Annuitant is under age 85 (next birthday) on the Effective Date; or

b)    Single Life Annuity with a 5 year Minimum Period Guaranteed if the Annuitant is between age 85 and 90 on the Effective Date.

Annuity Payments are payable for the lifetime of the Annuitant and continue to a Beneficiary in the Minimum Period Guaranteed if the Annuitant dies during the Minimum Period Guaranteed.

## 4.0    OPTIONAL FORMS OF ANNUITY SETTLEMENT

4.1    The Annuitant may elect prior to the Annuity Starting Date to receive, subject to the limitations set forth in this Policy in lieu of the annuity provided by this Policy, an annuity settlement in any of the following forms:

    a)    Life Annuities

        1)    A Single Life Annuity with a Minimum Period Guaranteed. Annuity payments are payable for the lifetime of the Annuitant. The Annuitant elects a period of years, not in excess of 40, as the Minimum Period Guaranteed. Payments continue to a Beneficiary in the Minimum Period Guaranteed only if the Annuitant dies during the Minimum Period Guaranteed.

        2)    A Joint Life and Last Survivor Annuity with a Minimum Period Guaranteed. Annuity payments are payable for the joint lifetime of the Annuitant and a Joint Annuitant and continue to the lifetime of the last survivor in an equal or lesser proportion, as elected. The Annuitant elects a period of years, not in excess of 40, as the Minimum Period Guaranteed. Payments continue to a Beneficiary in the Minimum Period Guaranteed only if both the Annuitant and Joint Annuitant die during the Minimum Period Guaranteed.

        In the event that election is made for a change in the amount of the annuity payments during the lifetime of the survivor after the death of the annuitant or Joint Annuitant, any such change does not take effect until after the end of the Minimum Period Guaranteed.

        3)    A Single Life Annuity with no payments after the death of the Annuitant on or after the Annuity Starting Date.

        4)    A Joint and last Survivor Life Annuity with no payments after the death of both the Annuitant and all Joint Annuitants on or after the Annuity Starting Date.

    b)    Period Certain Annuity

        1)    Annuity payments are payable to the Annuitant for a number of years only. The Annuitant elects the number of years, not in excess of 40. Payments continue to a Beneficiary for the remainder of the period if the Annuitant dies during the number of years elected.

4.2    Application for any optional form of annuity settlement must be made at least sixty (60) days prior to the Annuity Starting Date, accompanied by this Policy. With the consent of Advantage more than one form of annuity settlement (under more than one Policy, if appropriate) may be elected. Advantage will issue to the Annuitant either a rider to this Policy or a new Policy or policies appropriate for the form of annuity elected.

4.3    Any form of annuity settlement provided for in this Policy is irrevocable on and after the Annuity Starting Date.

## 5.0    OPTIONAL ANNUITY STARTING DATE

5.1    In the event the Annuitant desires to have annuity payments begin at a date earlier or later than the Annuity Starting Date specified on the first page of this Policy, the Annuitant may elect an earlier or later Annuity Starting Date, subject to the conditions of Subsection 5.2 below.

5.2    Conditions governing any new Annuity Starting Date are:

   a)    it is the first day of a month;

   b)    the month is not later than the next following the Annuitant's 90th birthday;

   c)    Company receives notice of the Annuitant's election at least sixty (60) days before the earlier of:
      1)    the new Annuity Starting Date elected; or
      2)    the Annuity Starting Date then specified in this Policy; and

   d)    this Policy accompanies the Annuitant's election.

5.3    Advantage will endorse the new Annuity Starting Date on the Policy and amend the Policy to include the appropriate Schedule of Disbursement for Annual Annuity.

## 6.0    PAYMENTS, POLICY SURRENDER, CASH WITHDRAWALS AND BORROWING RIGHTS OF POLICY OWNER AND ANNUITANTS

6.1    Subject as provided herein, payments, policy Surrender, Withdrawals or borrowings prior to or on the Annuity Starting Date are subject to the conditions of Section 6.2 below.

6.2    Conditions governing any and all Surrenders, Withdrawals or borrowings herein this Policy are:

   a)    the amount must be:
      1)    not less than $10,000 and an Account Value of not less than $25,000 must remain in the Account; and
      2)    the entire value of the Account;

   b)    for Withdrawals and Surrenders, any Investments other than cash remaining in the Segregated Portfolio as of the Surrender date will be liquidated by Advantage and distributed to the Policy Owner upon the receipt of cash by Advantage;

   c)    subject to applicable law and regulation, Policy Owners may request distributions in kind of Investments held by the Segregated Portfolio as of the date of Surrender, upon payment in cash of all accrued and unpaid Administration Charges, Surrender Charges and other amounts payable by the Policy;

   d)    under (a)(2) immediately preceding, the Policy Owner must return the Policy with a notice of Surrender;

   e)    Advantage will pay the Annuitant from the Segregated Portfolio, the amount or value applied for within seven (7) business days after Advantage receives the related Disbursement from the Custodian; and

   f)    in no event will a payment be greater than the amount realized from the partial or complete liquidation of assets held in the Segregated Portfolio.

g) Payments, policy surrender, withdrawal or borrowing may only be made as requested voluntarily and not involuntarily under or as a consequence of any legal, equitable or administrative order, or direction.

6.3 Prior to the Annuity Starting Date, the Annuitant may borrow from the Segregated Portfolio an amount or amounts not to exceed 90% of the Segregated Portfolio Value provided that such loans shall bear interest, payable annually at generally prevailing rates as determined by Advantage. All loans will be payable on demand and become due and payable at the earlier of the death of the Annuitant or the Annuity Starting Date.

6.4 The Policy may be Surrendered at any time prior to the Annuity Starting Date. Withdrawals may be made at any time, subject to limitations on amount, prior to the Annuity Starting date.

# 7.0    BENEFICIARY DESIGNATION

7.1 The Annuitant may designate a Beneficiary or Beneficiaries to receive any amounts payable as provided in this Policy. Subject to Section 6.2(g) any rights of any additional irrevocably appointed Beneficiary, and to the provisions of this Policy, an Annuitant may, from time to time only voluntarily and not involuntarily or as a consequence of any legal, equitable or administrative compulsion, order or direction change the Beneficiary or the form of benefit payment under this Policy, or both. A surviving Beneficiary, if any, unless the Annuitant has directed to the contrary may designate a successor Beneficiary to any unpaid benefits, and the form of payment thereof.

7.2 The interest of any Beneficiary who dies before the time benefits would have been paid to him as otherwise provided in this Policy shall be payable to the next named Beneficiary, or if none then it shall cease unless the Annuitant has directed otherwise.

7.3 If there is no designated Beneficiary to receive an amount payable under the provisions of this Policy or direction otherwise, such amount will be payable to the executor, administrator or personal representative of the last to die of the Annuitant or Beneficiary.

7.4 Subject to 7.1 any appointment or change of Beneficiary or form of benefit payment must be in writing, signed by the Annuitant, or a surviving Beneficiary, if any, received by Advantage at its registered office. After such appointment or change is received, it will relate back to and take effect as of the date requested but without prejudice to Advantage with respect to any payments made prior to Advantage's receipt of the request.

# 8.0    PAYMENTS TO THE BENEFICIARY BEFORE ANNUITY STARTING DATE

8.1 Upon the death of an Annuitant at any time before the Annuity Starting Date and after receipt of proof of such death, Advantage will pay to the Beneficiary, as elected by the Annuitant, either:

a) a Single Sum Benefit of an amount equal to the Segregated Portfolio Value liquidated less the related charge pursuant to paragraph 18.12(c), within seven (7) business days after Advantage receives the related Disbursement from the Custodian; or

b) an annuity appropriate for the Beneficiary's age, sex, form of annuity, and Annuity Starting Date so elected, at Advantage's then current rates.

8.2    Unless the Annuitant irrevocably elected that a Single Sum Benefit be paid, a Beneficiary may, in lieu of the Single Sum Benefit, elect with the approval of Advantage payment under a form of annuity, at Advantage's then current rates.

## 9.0    PAYMENTS TO THE BENEFICIARY AFTER ANNUITY STARTING DATE

9.1    Monthly Annuity Installment - Upon the death of the Annuitant and after the receipt by the Company of proof of such death, the Company will pay to the Beneficiary monthly annuity installments, on the last day of each month.

9.2    The amount of each monthly annuity installment payable to the Beneficiary during the Annuity Year in which the Annuitant dies will be the same as that otherwise payable to the deceased Annuitant during such year. For the remainder of the guaranteed payment period, the Beneficiary's Annual annuity will be determined under the Disbursements and Annuities in Section 18.15 of this Policy. It will be payable in equal monthly installments on the last day of each month.

9.3    Single Sum Benefit - Any Beneficiary then entitled to receive benefits may elect that a Single Sum Benefit to be paid to the Beneficiary in lieu of annuity installments for the remainder of the Minimum Period Guaranteed. The amount will be equal to the liquidated Account Value. The Company will pay the Single Sum Benefit within seven (7) business days after the Company receives the related Disbursement from the Custodian.

9.4    Upon the death of the Annuitant after the Minimum Period Guaranteed ceases, any Beneficiary then entitled to receive benefits will be paid a Single Sum Benefit. The amount will be equal to the liquidated Account Value. The Company will pay the Single Sum Benefit within seven (7) business days after the Company receives the related Disbursement from the Custodian.

9.5    Advantage reserves the right to pay the beneficiary under 9.1 to 9.4 above in cash or in kind by transferring to the Beneficiary assets held in the Segregated Account equal to the value of the payment due.

## 10.0    PAYMENTS IN LIEU OF ANNUITY INSTALLMENTS

10.1    Payment by Advantage under Section 6.2(a)(2) of a cash withdrawal under Section 6 or of a Single Sum Benefit under subsections 2.5, 8.1, 9.3 or 9.4 of this Policy is, to the extent thereof, in lieu of and in complete settlement for Advantage's obligations to make any annuity or other future payment under this Policy.

## 11.0    POLICY OWNERSHIP AND ASSIGNMENT

11.1    If a person other than the Annuitant is designated as the Owner or joint Owners in the Application for this Policy, all of the Annuitant's rights, title, interest and obligations under this Policy vest in such Owner(s) and in such case the Policy shall be read substituting "Owner" in place of "Annuitant" as respectively required.

11.2    If the Annuitant is also the Owner of this Policy on the Effective Date, then the Annuitant may later assign right, title and interest to the annuity payments, cash withdrawals and death benefits but this provision does not give the Annuitant the right to assign any right, title or interest to the assets in the Segregated Portfolio, which are held by the Custodian for Advantage.

11.3    No assignment is binding on Advantage until a copy is received by at its registered office. It will only be recognized provided that it can be established as valid and accepted by Advantage.  Advantage assumes no responsibility for the validity or sufficiency of any assignment.

## 12.0   POLICY STRUCTURE AND REPORTING

12.1    The Segregated Portfolio has been established by us for the Policy in compliance with the Governing Law.

We own all of the assets of the Segregated Portfolio but are obliged to keep them separate and separately identifiable from the assets held for our general account and the account of the Segregated Portfolio of any other policy issued by us.

All rights and interests in assets and property linked to the Segregated Portfolio will be determined in accordance with this Policy and the terms of the Governing Law.  Our liability and obligations under this Policy are limited to the assets linked to the Segregated Portfolio and, in the event of exhaustion of the assets linked to the Segregated Portfolio, there will be no recourse to the assets which are linked to the Segregated Portfolio of any other policy issued by us or to our general account.

Under the terms of this Policy and the Governing Law, assets held in each Segregated Portfolio are our legal property.  You do not own or have any rights to any particular investment within the Segregated Portfolio nor do you have the right to direct the particular investments within the Segregated Portfolio.

Income, realized and unrealized gains or losses from investments in the Segregated Portfolio are credited or charged to the Segregated Portfolio without regard to income, deductions, gains or losses of investments in any of the Segregated Portfolios of any other policy issued by us or our general account.

The Segregated Portfolio Value of the Policy on the Policy Issue Date is:

a)    The Annuity Purchase Contribution received by us on or before the Policy Issue Date; minus
b)    Any Periodic Deduction due on or before the Policy Issue Date.

The Segregated Portfolio Value on a Quarterly Valuation Date is equal to the total value of the Investments in the Segregated Portfolio, less the Periodic Deductions, plus any net Annuity Purchase Contribution received on that Quarterly Valuation Date but not yet allocated to the Segregated Portfolio.  The Investments are periodically valued based on the values as reported to us by the investment advisor and/or custodian.  We will rely for our reporting entirely on the values reported by the investment advisor and/or custodian regarding the value of such Investments.  We will not and expressly disclaim any responsibility to, audit, monitor or otherwise review such valuations as reported by the investment advisor or custodians.

12.2    The assets of the Segregated Portfolio are invested in the securities and other forms of investments under the control of independent investment advisors approved by us.  Appointed investment advisors(s) manage Policy Investments under guidelines agreed by us.  The value of the Segregated Portfolio will increase or decrease depending on the performance of the Investments.

12.3    The investment advisory fees and related investment expenses with respect to the Investments are deducted in accordance with the relevant investment advisory agreement (including any contractually required payments of indemnity) with respect to that particular investment advisor.  Fees and expenses paid to investment advisors and

custodians are excluded from the Deductions made by us. By requesting a specific investment advisor and/or custodian, you hereby approve and agree to the fees and expenses charged with respect to such investment advisor and/or custodian.

In addition to the specific charges detailed in this Policy, any non-routine expenses that we incur with respect to this Policy (such as professional services fees, brokerage fees, special accounting fees, custodial fees, etc.) are charged against and deducted from the Segregated Portfolio as incurred. Such non-routine expenses provided by third party service providers are billed to the Policy at their cost to us, without markup.

12.4    The Administration Expense will be calculated at the annualized rate set out in the Policy Declaration which is disclosed in the quarterly reports made available to you. Administration Expense does not include special or one-time costs incurred by us on behalf of you or your Policy. These costs are additional and will be charged to the Segregated Portfolio as incurred.

12.5    The Periodic Deduction is a charge made against the Segregated Portfolio and paid to us on the frequency as established in the Declaration, either Annually, Monthly or Quarterly. The Periodic Deduction is equal to:

   a)   The Administration Expense as pro-rated for the number of Periods as set out in the Declaration; plus
   b)   Any non-routine charges or third party costs that we incur and/or pay on behalf of this Policy.

Periodic Deductions are generally paid first by cash on hand from recently contributed net Annuity Purchase Contribution and, if such amount is insufficient to cover all of the Periodic Deductions then by cash obtained from the Segregated Portfolio accounts. We may at our sole discretion instruct the investment advisor to liquidate a portion of the Investments and to remit such amount to us for payment of the Periodic Deductions.

12.6    Within forty-five (45) days after each Quarterly Valuation Date, a report will be made available to the Owner that will show for the most recent Policy Year:

   a)   Annuity Purchase Contributions received by us;
   a)   Periodic Deductions; and
   b)   Other pertinent information deemed relevant by us or as may be required by law.

The following values will be shown as of the most recent Quarterly Valuation Date:

   a)   Segregated Portfolio Value;
   b)   Outstanding Policy Debt, if any.

12.7    The owner may request a report illustrating future values of the Policy using projections based on historical results or a hypothetical interest rate. We may charge reasonable fee for preparing this report.

## 13.0    ANNUITY PURCHASE CONTRIBUTIONS

13.1    After receipt of an Annuity Purchase Contribution, Advantage shall transfer the amount thereof, less the transaction charge authorized by Subsection 18.9 or amendment thereto, to the Segregated Portfolio and all such amounts shall thereafter be held by the Custodian.

## 14.0   PAID-UP POLICY

14.1   This is a paid-up Policy on the Effective Date. The Annuitant's rights and obligations are as described in this Policy.

## 15.0   DISBURSEMENTS, TAX AND EXPENSE PAYMENTS

15.1   Disbursements, taxes and expenses are payable by the Custodian from the Segregated Portfolio to Advantage at its registered office or as otherwise properly directed by endorsement to this Policy in accordance with Section 17 and 18 of this Policy.

15.2   As to each payment, Advantage will furnish the Custodian with a notice, at such times as agreed upon by Advantage and the Custodian setting forth information to enable the Custodian to make the said payment.

15.3   A grace period of one month after the due date will be allowed for the payment of any Disbursements and taxes or expenses due. In the event of the payment of any Disbursement, tax or expense after its due date, Advantage may defer annuity or other payments by not more than thirty days following receipt of such Disbursements, tax or expense payments.

15.4   In the event that Disbursements, taxes and expenses become due and payable at the same time, taxes will have priority, then expenses; Disbursements will only be paid after the payments in full of the taxes and expenses due.

15.5   In the event that two or more Disbursements become due at the same time the priority is in the following order:

Subsections 18.8, 18.9, 18.10, 18.11, 18.12, 18.13 and 18.14.

In determining any Disbursement, the value of the Segregated Portfolio will be reduced by the amount of any other previously determined Disbursements that are unpaid.

## 16.0   CHANGE OF CUSTODIAN

16.1   The Custodian under this Policy may be changed for good cause. The change may be initiated by the Custodian or Advantage. The Investments will be transferred to a duly qualified successor Custodian. All other provisions of this Policy will remain unchanged. The conditions of the change and transfer may not conflict with the provisions of the Agreement.

## 17.0   GENERAL PROVISIONS

17.1   Benefit Payments

All benefit payments under this Policy to the Annuitant and/or Beneficiary will be paid by Advantage in cash (US Dollars) or with Investments held in the Segregated Portfolio.

17.2   Filing of Notice, Application, Election or Proof

Any notice, application, election or proof required under this Policy by Advantage must be in writing and received by Advantage at its registered office.

**17.3    Proof of Age, Survival or Death and Identity**

Advantage reserves the right to require and receive proof of age, survival or death and identity of any payee under this Policy before making any payment to him. Acceptable proof of death is a death certificate, order of a court of competent jurisdiction, or statement of attending physician.

**17.4    Notification to Custodian**

Written notification that may be appropriately given by Advantage to the Custodian regarding the implementation of this Policy in respect to the Annuitant or Beneficiary is binding upon the Custodian.

**17.5    Incontestability**

After the Policy has been in force during the lifetime of the Annuitant for two (2) years following its Effective Date, it will be incontestable.

**17.6    Misstatement or Omission**

If the value of the Segregated Portfolio or any other data pertaining to any Annuitant or Beneficiary is incorrectly stated, appropriate retroactive adjustments, including where appropriate, interest adjustments at 3% per annum compounded annually, will be made.

**17.7    Modification**

No person or entity other than Advantage may execute, amend or modify this Policy or extend he time for payment of Annuity Purchase Contributions nor can this Policy be amended or modified or the provisions waived or extended in any respect, except with the written consent of Advantage signed either by the President or Life Manager or other authorized person.

**17.8    Facility of Payments**

If any payee is in the judgment of Advantage legally incapable of personally receiving and giving valid receipt of any payment due hereunder or conditions exist whereby a payee or beneficiary thereof is under physical or mental constraint or duress, Advantage may refuse to make payment to such person in such case until a claim is filed with Advantage on behalf of a duly appointed guardian or other legal representative of such person and accepted by Advantage. In any event, Advantage may pay such amount or amounts or any parts thereof to any person, persons or institutions who in the judgment of Advantage is or are then contributing toward or providing care, support or general welfare for such person. Any amount paid in accordance with this provision will completely discharge Advantage's obligation for the amount so paid.

**17.9    Gender and Plural**

Words in the masculine include the feminine and neuter, where appropriate, and wherever the context of the Policy dictates, the plural includes the singular and the singular the plural.

**17.10    Non-Participating**

This Policy is Non-Participating.

**17.11    Entire Contract**

This Policy (including Parts One and Two of the Application and the Custodian Account Agreement and the Investment Management Agreement, if applicable) constitute the entire contract between all parties. It will be construed according to and governed by the Governing Law.

17.12    Taxes and Expenses

If any premium tax or other taxes are levied or assessable upon Advantage attributable to any Annuity Purchase Contribution or to any Disbursement to Advantage from the Policy, the effective amount of such taxes as determined by Advantage will be paid from the Policy to Advantage by the Custodian. In the event that other taxes or expenses (other than those incurred by Advantage in the administration of the Policy) may be levied or assessed upon Advantage directly attributable to the Policy, Advantage shall have the right to require the Custodian to pay from the Segregated Portfolio for such tax or expense. These provisions are subject to change by Advantage in the future to reflect any applicable changes in law or regulation.

## 18.0    TABLE OF DISBURSEMENTS, ANNUITIES, GUARANTEES AND CHANGES IN TABLES

18.1    Guarantees:

a)    The Disbursement and Annuities payable in this Section may not be changed on or after the Annuity Starting Date except upon agreed endorsement by the Owner and Advantage.

b)    Before the Annuity Starting Date, no change or changes may be made in the Disbursement and Annuities payable in this Section which would reduce the amount of the annuity determined under the Schedule by more than five percent.

c)    The Disbursements provided in Subsections 18.8, 18.9, 18.10 and 18.11 of this Policy may not be increased without the written consent of the Policy Owner.

18.2    The mortality and expense experience realized by Advantage will not adversely affect the guarantee provided in Subsection 18.1 above.

18.3    The guarantee provisions in Subsection 18.1 and 18.2 above apply to other forms of annuity, age, sex and duration combinations as if the appropriate Schedule of Disbursements for Annual Annuity was originally incorporated in this Policy.

18.4    Advantage may change the Schedule of Disbursements for Annual Annuity in this Policy, subject to the provisions of Subsection 18.1 above, at any time on and after the January 1 next following the second anniversary of the Effective Date of this Policy.

18.5    Written notice of any change in this Section of Disbursements and Annuities, including a copy of the revised Schedule of Disbursements for Annual Annuity must be sent by Advantage to the Annuitant at least sixty (60) days in advance of the date the change is to become effective.

18.6    The changes shall be deemed incorporated in this Policy as of the effective date thereof.

18.7    The Disbursement for Annuities Schedule provided for in this Section is based upon an investment increment rate assumption of six per cent per annum, compounded annually. At any time at least sixty (60) days before the

Annuity Starting Date, the Annuitant or the Beneficiary in the event of death of the Annuitant may elect such other rate assumption that is acceptable to Advantage. Upon Advantage's acceptance of such election, an appropriate Disbursement for Annuity Schedule based upon the rate assumption elected will be furnished by Advantage either as an amendment to this Policy or as a part of any policy issued in exchange for this Policy. All of the other provisions of this Policy will remain as if this Policy had been originally issued with Disbursement for Annuity Schedule based upon the elected investment increment rate assumption.

18.8    If at any time Advantage is unable to make payment of Disbursements due under Subsections 18.9, 18.10, 18.11 and 18.12 due to insufficient funds held in the Segregated Account and the disbursements are not paid to Advantage by the Owner within 90 days of demand of payment Advantage may at its sole discretion cancel the Policy.

### ANNUITY PURCHASE CONTRIBUTION AND TRANSACTION CHARGES PAYABLE TO ADVANTAGE

|  | Due Dates | Amount of Charge |
|---|---|---|
| 18.9 | Each date Advantage receives an Annuity Purchase Contribution | Declaration Page: Establishment Fee |
| 18.10 | Quarterly on the last day of March, June, September and December | Declaration Page: Administration Expense |

Advantage Life & Annuity Company SPC

Appendix I – Policy Application

# ADVANTAGE                                    ] Deferred Variable Annuity Policy Application

## PART ONE

### 1  Annuitant (Kindly complete all sections in BLOCK CAPITALS)

FULL NAME: JOSEPH KALLET RENSIN          DATE OF BIRTH: 2 JUL 1965    OCCUPATION: ENTREPENEUR

ADDRESS: 9865 STONE PIER DRIVE          PROVINCE/STATE: FLORIDA          CITY: BOYNTON BEACH

POSTAL/ZIP CODE: 33472      COUNTRY: UNITED STATES      PHONE: (410) 935-8732      EMAIL: joe@rensin.com

### 2  Policyholder/Owner

FULL NAME: BELIZE CORPORATE & TRUST SERVICES, LTD. AS TRUSTEES OF THE ORION TRUST U/T/D NOVEMBER 9, 200 DATE OF BIRTH: | POLICY HOLDER 2 (IF JOINT)
FULL NAME:                               DATE OF BIRTH:

RELATIONSHIP TO ANNUITANT: TRUSTEE        RELATIONSHIP TO ANNUITANT:

ADDRESS: 5 CORK STREET, PO BOX 1708       ADDRESS:

CITY: BELIZE CITY    PROVINCE/STATE:       CITY:               PROVINCE/STATE:

POSTAL/ZIP CODE:        COUNTRY: BELIZE     POSTAL/ZIP CODE:         COUNTRY:

PHONE: 501-223-6910      EMAIL: orion@btl.net    PHONE:            EMAIL:

### 3  Beneficiary

FULL NAME: SAME AS POLICY OWNER    DATE OF BIRTH:        RELATIONSHIP TO ANNUITANT: TRUSTEE

ADDRESS: 5 CORK STREET, PO BOX 1708      PROVINCE/STATE:          CITY: BELIZE CITY

POSTAL/ZIP CODE:      COUNTRY: BELIZE      PHONE: 501-223-6910      EMAIL: orion@btl.net

### 4  Annuity Purchase Contributions

The initial Annuity Purchase Contribution of $          is submitted herewith or as stated in the attached schedule.

The applicant hereby promises to pay Advantage additional Annuity Purchase

CONTRIBUTIONS IN THE AMOUNT OF:          ON A: ☑ Quarterly   ☐ Semi-Annual  ☐ Annual

### 5  Annuity Plan

ACCOUNT TYPE: ☑ Variable  ☐ Fixed

↳ If variable account please indicate investment programme to be undertaken:

### 6  Custodian

FULL NAME: DMS BANK & TRUST LTD    DATE OF BIRTH:        RELATIONSHIP TO ANNUITANT:

ADDRESS: DMS HOUSE, 20 GENESIS CLOSE, PO BOX 314    PROVINCE/STATE:          CITY: GRAND CAYMAN

POSTAL/ZIP CODE: KY1-1104    COUNTRY: CAYMAN ISLANDS    PHONE: (345) 749-2566    EMAIL: bmarler@dmsbank.com

### 7  Annuity Details

ANNUITY START DATE:        ◂ Age of Annuitant. Annuity payments to commence one month after the annuitants        birthday.

FORM OF ANNUITY SETTLEMENT:

☑ A.  Single Life Annuity                          ☑ B.  Joint and Last Survivor Annuity

☐ C.  Single Life Annuity with 10 year minimum period guaranteed.    ☐ D.  Joint and Last Survivor Annuity with 10 year period guaranteed

☐ E.  Period Certain Annuity          | If you checked (b) or (d) please provide details of Joint Life Persons

FULL NAME:            DATE OF BIRTH:        RELATIONSHIP TO ANNUITANT:

ADDRESS:          PROVINCE/STATE:            CITY:

POSTAL/ZIP CODE:      COUNTRY:        PHONE:            EMAIL:

The applicant has designated above with the right reserved to change such designation prior to the annuity starting date the form of annuity settlement.

ADVANTAGE                    [ Deferred Variable Annuity Policy Application

**PART TWO**

**B    Representations and Understandings**

The undersigned applicant hereby applies to Advantage (hereinafter called the "Company") for an annuity policy to be issued on the life of the named annuitant(s) and hereby declares, agrees and understands that:

A.   All statements, representations and answers made in this application are a consideration for a basis of any annuity contract issued on this application and are declared to be true, full and complete to the best of the applicant's knowledge and belief.

B.   Premiums are payable to the Company from the Segregated Account as of the Effective Date of the Policy applied for and thereafter on dates specified in the Policy.

C.   As a pre-condition to the payment of any benefit payment under the policy, the Annuitant agrees to furnish upon request, satisfactory evidence of survival and identity, and proof of age if other than a single sum payment.

D.   This Policy applied for becomes effective only upon acceptance of this Application by the Company at its Administrative Office and upon such acceptance the Policy will bear the Effective Date set forth on page one of the Policy.

E.   This Application comprised of Parts One and Two, together with any amendments as agreed upon and any policy issued in consequence hereof, constitutes the entire contract. Only the Company may execute, amend or modify any policy or extend the time for payment of premiums, nor can any policy be amended or modified or any provision waived or extended in any respect, except with the written consent of the Company endorsed on the Policy, and signed by either the Managing Director, Life Manager or other authorised person.

F.   The Segregated Account share of any premium or other taxes and expenses imposed on the Company are payable from the Segregated Account to the Company or directly for the benefit of the Account.

G.   All charges made in connection with the policy applied for, and the fee schedule for Custodian services have been explained and are fully understood and hereby acknowledged.

H.   The Applicant has the right to cancel this Application within the 10-day period beginning with the date of this Application shown below and receive back his Annuity Purchase Contribution. To cancel this Application, deliver or mail notice to the Company within the 10 day period. The Company is not required to make any investment of the funds during the 10 day period.

☑   I understand that annuity payments and surrender values when based upon the value of the investment experience of a separate segregated account are variable and are not guaranteed as to a fixed amount but are dependent upon the market value determined by the investment performance of the account.

**Signatures**

POLICYHOLDER 1 ▶                                    POLICYHOLDER 2 ▶

WITNESS ▶                                           DATE & LOCATION ▶   17-APR-2015
                                                                        BELIZE CITY,
                                                                        BELIZE

For and on behalf of Advantage:

NAME ▶                                              SIGNATURE ▶

# EXHIBIT "D"

# Advantage
## Insurance

| | |
|---|---|
| **POLICY OWNER (S):** | **ORION CORPORATE AND TRUST SERVICES, LTD. AS TRUSTEE OF THE JOREN TRUST U/T/D NOVEMBER 9, 2001** |
| **ANNUITANT(S):** | **JOSEPH RENSIN** |
| **ANNUITY STARTING DATE:** | **1-DEC-15** |
| **EFFECTIVE DATE:** | **14-OCT-15** |
| **POLICY NUMBER:** | **ADVA 1504-6081** |

**ADVANTAGE LIFE & ANNUITY COMPANY SPC** (hereinafter called "the Company") for and on behalf of Advantage Life and Annuity Company Segregated Portfolio ADVA agrees, subject to the provisions of this policy, to pay the Annuitant during such Annuitant's life-time, the annuity payments specified herein, beginning one month less one day after the Annuity Starting Date and ending with the last annuity payment before the death of the Annuitant.

The Company further agrees, subject to the provisions of this policy, and upon receipt of due proof of death of the Annuitant, to pay to the Beneficiary designated hereunder annuity installments or the lump sum benefit as provided herein.

This policy is issued in consideration of:

The Application for this Policy (Part one and Part two), a copy of which is attached hereto and forms an integral part thereof.

Payment of the Initial Annuity Purchase Contribution as set forth in the application for this policy.

The Provisions and conditions on the following pages are part of this policy.

Signed at the Home Office in
George Town, Grand Cayman

**Susan Walton**
**Authorised Signatory**

### Advantage Life & Annuity Company SPC

Windward 3, 5th Floor
Regatta Office Park, West Bay Road
P.O. Box 2185, Grand Cayman KY1-1105
Cayman Islands

**Phone:** +1 (345) 949 1599
**Fax:** +1 (345) 949 0520
info@aih.com.ky
www.advantagelife.com.ky

DVA 1504-6081

# TABLE OF CONTENTS

**SECTION 1: POLICY WORDING**

1.  DEFINITIONS
2.  ANNUITY PAYMENTS
3.  STANDARD FORM OF ANNUITY
4.  OPTIONAL FORMS OF ANNUITY SETTLEMENT
5.  OPTIONAL ANNUITY STARTING DATE
6.  PAYMENTS, POLICY SURRENDER, CASH WITHDRAWALS AND BORROWING RIGHTS OF ANNUITANTS
7.  BENEFICIARY DESIGNATION
8.  PAYMENTS TO THE BENEFICIARY BEFORE ANNUITY STARTING DATE
9.  PAYMENTS TO THE BENEFICIARY AFTER ANNUITY STARTING DATE
10. PAYMENTS IN LIEU OF ANNUITY INSTALLMENTS
11. POLICY OWNERSHIP AND ASSIGNMENT
12. SEGREGATED ACCOUNT ASSETS
13. ANNUITY PURCHASE CONTRIBUTIONS
14. PAID-UP POLICY
15. DISBURSEMENTS, TAX AND EXPENSE PAYMENTS
16. CHANGE OF CUSTODIAN
17. GENERAL PROVISIONS
18. TABLE OF DISBURSEMENTS, ANNUITIES, GUARANTEES AND CHANGES IN TABLES


**SECTION 2: APPLICATION FOR A DEFERRED VARIABLE POLICY**

1.  ANNUITANTS PERSONAL DETAILS
2.  POLICY OWNER DETAILS
3.  JOINT OWNER DETAILS
4.  DETAILS OF BENEFICIARY
5.  ANNUITY PURCHASE CONTRIBUTIONS
6.  ANNUITY PLAN APPLIED FOR
7.  DETAILS OF CUSTODIAN
8.  FORM OF ANNUITY ELECTED AND STARTING DATE

DVA 1504-6081

# SECTION 1: POLICY WORDING

## 1. DEFINITIONS

**Account Value** - means the fair market value of the Account or total assets held in the Account adjusted for charges associated with the Account, as determined by the Custodian, with appropriate further adjustments, if any, as may be directed by the Company to provide for disbursements from the Account (under Subsections 18.7, 18.8, 18.9, and 18.10 of this policy or endorsement) and/or taxes and expenses that may be incurred by The Company and payable from the Account.

**Annuitant** - means the person named as such in the Declaration Page of the Policy.

**Annuity Purchase Contribution** - means the amount paid or property contributed to the Company upon the issuance of this policy and any further payments or contributions later made to the Company being part of the Account Value and held as provided in Section 13.

**Annuity Starting Date** - means the date so specified on the Declaration Page of this policy unless another date is elected by the Annuitant as provided in Section 5 (Optional Annuity Starting Date) of this policy. In no event may any Annuity Starting Date be later than the first day of the month next following the Annuitant's 90th birthday.

**Annuity Year** - means a twelve month period beginning with the Annuity Starting Date. Each subsequent Annuity

**Beneficiary** - means the person or persons or entity who having been designated under the terms of Section 7 of this policy is entitled to or receives payments under this Policy and upon the death of the Annuitant is paid the value of the Segregated Account pursuant to Sections 8 and 9 of this policy.

**Custodian** - means the Custodian selected by the Company and noticed to the Policyowner under the Custodian Account Agreement or a duly qualified successor Custodian as provided in this policy and the Custodian Account Agreement.

**Disbursement** - means Premiums and Transaction Charges pursuant to Sections 18.7, 18.8, 18.9, and 18.10

**Effective Date** - the date on which this policy is issued by the Company.

**Final Anniversary** - means the anniversary of the Annuity Starting Date next following the 105th birthday of the Annuitant.

**Policy Owner** - means the person or entity named as such in the Declaration Page of the Policy.

**Segregated Account (Account)** - means the assets held under the Agreement by the Custodian pursuant to the Insurance Laws of the Cayman Islands.

**Segregated Account Transfer** - means the amount paid into the Account by the Company with respect to this policy, subject to Section 13 (Annuity Purchase Contributions) of this policy, from time to time on or before the Annuity Starting date. The value of a Segregated Account Transfer means the fair market value of such payments as determined by the Custodian.

DVA 1504-6081

# 2. ANNUITY PAYMENTS

2.1    The amount of annual annuity payments depends on the amount of Account Value and the rates in the Disbursements and Annuities in Section 18 of this policy. A percentage of the Account Value is charged against the Account each Annuity Year and made as a Disbursement from the Account at the direction of the Company.

2.2    The amount of Annuity will change each year in relation to the change in Account Value and the rates in the Disbursement and Annuity Schedule in Section 18 of this Policy.

2.3    Such annuity is payable in equal monthly installments with the first installment payable one month, less one day, after the Annuity Starting Date. Each subsequent installment is payable as of the last day of each subsequent month.

2.4    In making disbursements at any time under the Policy, the Company reserves the right to pay the Annuitant the amount of the annuity in cash or in specie by transferring to the annuitant assets held in the segregated account equal to the value of the annuity payments.

2.5    The annuity shall pay on the Annuity Starting Date a minimum amount of $15,000 per month. If on the Annuity Starting Date the Account Value of this Policy will not produce an annual annuity of at least $180,000 under the form of annuity elected, then the Company may pay such minimum amount from the principal of the Account Value or otherwise pay the Annuitant a Single Sum Benefit of the amount equal to the liquidated Account Value less the related charge pursuant to paragraph 18.10(b). Payment will be made within ten (10) business days after the Company receives the related Disbursement from the Custodian.

# 3. STANDARD FORM OF ANNUITY

3.1    The standard form of annuity provided to the Annuitant under this policy is a:

    (a)  Single Life Annuity with a 10 year Minimum Period Guaranteed if the Annuitant is under age 85 (next birthday) on the Effective Date; or

    (b)  Single Life Annuity with a 5 year Minimum Period Guaranteed if the Annuitant is between age 85 and 90 on the Effective Date.

Annuity payments are payable for the lifetime of the Annuitant and continue to a Beneficiary in the Minimum Period Guaranteed if the Annuitant dies during the Minimum Period Guaranteed.

# 4. OPTIONAL FORMS OF ANNUITY SETTLEMENT

4.1    The Annuitant may elect prior to the Annuity Starting Date to receive, subject to the limitations set forth in this policy in lieu of the annuity provided by this policy, an annuity settlement in any of the following forms:

DVA 1504-6081

(a) **Life Annuities**

    (1)  A Single Life Annuity with a Minimum Period Guaranteed. Annuity payments are payable for the lifetime of the Annuitant. The Annuitant elects a period of years, not in excess of 40, as the Minimum Period Guaranteed. Payments continue to a Beneficiary in the Minimum Period Guaranteed only if the Annuitant dies during the Minimum Period Guaranteed.

    (2)  A Joint Life and Last Survivor Annuity with a Minimum Period Guaranteed. Annuity payments are payable for the joint lifetime of the Annuitant and a Joint Annuitant and continue to the lifetime of the last survivor in an equal or lesser proportion, as elected. The Annuitant elects a period of years, not in excess of 40, as the Minimum Period Guaranteed. Payments continue to a Beneficiary in the Minimum Period Guaranteed only if both the Annuitant and Joint Annuitant die during the Minimum Period Guaranteed.

    (3)  In the event that election is made for a change in the amount of the annuity payments during the lifetime of the survivor after the death of the annuitant or Joint Annuitant, any such change does not take effect until after the end of the Minimum Period Guaranteed.

    (4)  A Single Life Annuity with no payments after the death of the Annuitant on or after the Annuity Starting Date.

    (5)  A Joint and last Survivor Life Annuity with no payments after the death of both the Annuitant and all Joint Annuitants on or after the Annuity Starting Date.

(b) **Period Certain Annuity**

    Annuity payments are payable to the Annuitant for a number of years only.

4.2    Application for any optional form of annuity settlement must be made at least sixty (60) days prior to the Annuity Starting Date, accompanied by this policy. With the consent of the Company more than one form of annuity settlement (under more than one policy, if appropriate) may be elected. The Company will issue to the Annuitant either a rider to this policy or a new policy or policies appropriate for the form of annuity elected.

4.3    Any form of annuity settlement provided for in this policy is irrevocable on and after the Annuity Starting Date.

# 5. OPTIONAL ANNUITY STARTING DATE

5.1    In the event the Annuitant desires to have annuity payments begin at a date earlier or later than the Annuity Starting Date specified on the first page of this policy, the Annuitant may elect an earlier or later Annuity Starting Date, subject to the conditions of Subsection 5.2 below.

5.2    Conditions governing any new Annuity Starting Date are:

    (a)  it is the first day of a month;

    (b)  the month is not later than the next following the Annuitant's 90th birthday;

DIVA 1504-6051

(c) the Company receives notice of the Annuitant's election at least sixty (60) days before the earlier of:

    (1) the new Annuity Starting Date elected; or:

    (2) the Annuity Starting Date then specified in this policy;

(d) this policy accompanies the Annuitant's election.

5.3    The Company will endorse the new Annuity Starting Date on the policy and amend the policy to include the appropriate Disbursement and Annuity Schedule.

# 6. PAYMENTS, POLICY SURRENDER, CASH WITHDRAWALS AND BORROWING RIGHTS OF ANNUITANTS

6.1    Subject as provided herein, payments, policy surrender, withdrawals' or borrowings are subject to the conditions of Subsection 6.2 below.

6.2    Conditions governing any and all payments, policy surrender, withdrawals or borrowings herein this policy are:

    (a) amount must be

        (3) not less than $10,000 and an Account Value of not less than $25,000 must remain in the Account; or

        (4) the entire value of the Account,

    (b) Under (a)(2) immediately preceding, the policy must accompany the withdrawals form and will be cancelled.

    (c) The Company will pay the Annuitant from the Segregated Account the amount or value applied for within seven (7) business days after the Company receives the related Disbursement from the Custodian.

    (d) In no event will a payment be greater than the amount realized from the partial or complete liquidation of assets held in the Segregated Account.

    (e) Payments, policy surrender, withdrawal or borrowing may only be made as requested voluntarily and not involuntarily under or as a consequence of any legal, equitable or administrative order, or direction.

6.3    Prior to the Annuity Starting Date, the Annuitant may borrow from the Segregated Account an amount or amounts not to exceed 90% of the Account Value provided that such loans shall bear interest, payable annually at generally prevailing rates as determined by the Company. All loans will be payable on demand and become due and payable at the earlier of the death of the Annuitant or the Annuity Starting Date.

DVA 1504-6081

# 7. BENEFICIARY DESIGNATION

7.1     The Annuitant designates the Policyowner as primary Beneficiary to receive any amounts payable as provided in this policy.  Subject to Section 6.2 (e) and any rights of any additional irrevocably appointed Beneficiary, and to the provisions of this policy, an Annuitant may, from time to time, only voluntarily and not involuntarily or as a consequence of any legal, equitable or administrative compulsion, order or direction, change the Beneficiary or the form of benefit payment under this policy, or both.  A surviving Beneficiary, if any, unless the Annuitant has directed to the contrary may designate a successor Beneficiary to any unpaid benefits, and the form of payment thereof.

7.2     The interest of any Beneficiary who dies before the time benefits would have been paid to him as otherwise provided in this policy shall be payable to the next named Beneficiary, or if none then it shall cease unless the Annuitant has directed otherwise.

7.3     If there is no designated Beneficiary to receive an amount payable under the provisions of this policy or direction otherwise, such amount will be payable to the executor, administrator or personal representative of the last to die of the Annuitant or Beneficiary.

7.4     Subject to 7.1 any appointment or change of Beneficiary or form of benefit payment must be in writing, signed by the Annuitant, or a surviving Beneficiary, if any, received by the Company at its Home Office.  After such appointment or change is received, it will relate back to and take effect as of the date requested but without prejudice to the Company with respect to any payments made prior to the Company's receipt of the request.

# 8. PAYMENTS TO THE BENEFICIARY BEFORE ANNUITY STARTING DATE

8.1     Upon the death of an Annuitant at any time before the Annuity Starting Date and after receipt of proof of such death, the Company will pay to the Beneficiary, as elected by the Annuitant, either:

    (a)  A single Sum Benefit of an amount equal to the Account Value liquidated, within seven (7) business days after the Company receives the related Disbursement from the Custodian; or

    (b)  An annuity appropriate for the Beneficiary's age, sex, form of annuity, and Annuity Starting Date so elected, at the Company's then current rates.

8.2     Unless the Annuitant irrevocably elected that a Single Sum Benefit be paid, a Beneficiary may, in lieu of the Single Sum Benefit, elect with the approval of the Company payment under a form of annuity, at the Company's then current rates.

DVA 1504-6083

# 9. PAYMENTS TO THE BENEFICIARY AFTER ANNUITY STARTING DATE

9.1     Monthly Annuity Installment - Upon the death of the Annuitant and after the receipt by the Company of proof of such death, the Company will pay to the Beneficiary monthly annuity installments, on the last day of each month.

9.2     The amount of each monthly annuity installment payable to the Beneficiary during the Annuity Year in which the Annuitant dies will be the same as that otherwise payable to the deceased Annuitant during such year.  For the remainder of the Minimum Period Guaranteed, the Beneficiary's Annual annuity will be determined under the Disbursements and Annuities in Section 18 of this policy.  It will be payable in equal monthly installments on the last day of each month.

9.3     Single Sum Benefit - Any Beneficiary then entitled to receive benefits may elect that a Single Sum Benefit to be paid to the Beneficiary in lieu of annuity installments for the remainder of the Minimum Period Guaranteed.  The amount will be equal to the liquidated Account Value.  The Company will pay the Single Sum Benefit within seven (7) business days after the Company receives the related Disbursement from the Custodian.

9.4     Upon the death of the Annuitant after the Minimum Period Guaranteed ceases, any Beneficiary then entitled to receive benefits will be paid a Single Sum Benefit.  The amount will be equal to the liquidated Account Value.  The Company will pay the Single Sum Benefit within seven (7) business days after the Company receives the related Disbursement from the Custodian.

9.5     The Company reserves the right to pay the beneficiary under 9.1 to 9.4 above in cash or in specie by transferring to the Beneficiary assets held in the Segregated Account equal to the value of the payment due.

# 10. PAYMENTS IN LIEU OF ANNUITY INSTALLMENTS

10.1    Payment by the Company under Section 6.2 (a)(2) or of a Single Sum Benefit under subsections 2.5, 8.1, 9.3 or 9.4 of this policy is, to the extent thereof, in lieu of and in complete settlement for the Company's obligations to make any annuity or other future payment under this policy.

# 11. POLICY OWNERSHIP AND ASSIGNMENT

11.1    If a person other than the Annuitant is designated as the Owner or joint Owners in the Application for this policy, all of the Annuitant's rights, title, interest and obligations under this policy vest in such Owner(s) and in such case the policy shall be read substituting "Owner" in place of "Annuitant" as respectively required.

11.2    The Annuitant does not have the right to assign any right, title or interest to the assets in the Account, which are held by the Custodian for the Company.

---

DVA 1504-6081

**11.3**    No assignment is binding on the Company until a copy is received by at its Home Office. It will only be recognised provided that it can be established as valid and accepted by the Company. The Company assumes no responsibility for the validity or sufficiency of any assignment.

## 12. SEGREGATED ACCOUNT ASSETS

**12.1**    Segregated Account assets are provided by Segregated Account Transfers. From such assets (including dividends, interest and other income or distributions therefrom) Disbursements and taxes, are paid by the Custodian to the Company and custodian and investment expenses are charged to the Segregated Account by the Custodian. The Custodian shall hold all such assets in accordance with the Custodian Agreement and may not return any such assets to the Annuitant or to any Beneficiary (or their respective heirs, executors, administrators or personal representatives), as such assets are held on behalf of the Company.

**12.2**    The Company is entitled to charge to the Account the Transaction charges, provided in Subsections 18.7, 18.8, 18.9, and 18.10 for its expenses and profit.

**12.3**    The assets of the Account are invested under the Custodian Account Agreement as directed by the Company consistent with the general investment philosophy of the Owner as described in the investment objectives questionnaire.

## 13. ANNUITY PURCHASE CONTRIBUTIONS

**13.1**    After receipt of an Annuity Purchase Contribution, the Company shall transfer the amount thereof, less the transaction charge authorised by Subsection 18.7 or amendment thereto, to the Account as a Segregated Account Transfer and all such amounts shall thereafter be held by the Custodian.

## 14. PAID-UP POLICY

**14.1**    This is a paid-up policy on the Effective Date. The Annuitant's rights and obligations are as described in this policy.

## 15. DISBURSEMENTS, TAX AND EXPENSE PAYMENTS

**15.1**    Disbursements, taxes and expenses are payable by the Custodian from the Account to the Company at its Home Office or as otherwise properly directed by endorsement to this Policy in accordance with Section 17 and 18 of this policy.

DVA 1504-6081

15.2   As to each payment, the Company will furnish the Custodian with a statement, at such times as agreed upon by the Company and the Custodian setting forth information to enable the Custodian to make the said payment.

15.3   A grace period of one month after the due date will be allowed for the payment of any Disbursements and taxes or expenses due. In the event of the payment of any Disbursement, tax or expense after its due date, the Company may defer annuity or other payments by not more than thirty days following receipt of such Disbursements, tax or expense payments.

15.4   In the event that Disbursements, taxes and expenses become due and payable at the same time, taxes will have priority, then expenses; Disbursements will only be paid after the payments in full of the taxes and expenses due.

15.5   In the event that two or more Disbursements become due at the same time the priority is in the following order: **Subsections** 18.7, 18.8, 18.9, and 18.10

In determining any Disbursement, the value of the Account will be reduced by the amount of any other previously determined Disbursements that are unpaid.

## 16. CHANGE OF CUSTODIAN

16.1   The Custodian under this policy may be changed for good cause. The change may be initiated by the Custodian or the Company. The Account will be transferred to a duly qualified successor Custodian. All other provisions of this policy will remain unchanged. The conditions of the change and transfer may not conflict with the provisions of the Agreement.

## 17. GENERAL PROVISIONS

17.1   **Benefit Payments**
All benefit payments under this policy to the Annuitant and/or Beneficiary will be paid by the Company in cash (US. Dollars) or with assets from the segregated account from its Home Office.

17.2   **Filing of Notice, Application, Election or Proof**
Any notice, application, election or proof required under this policy by the Company must be in writing and received by the Company at its Home Office.

17.3   **Proof of Age, Survival or Death and Identity**
The Company reserves the right to require and receive proof of age, survival or death and identity of any payee under this policy before making any payment to him. Acceptable proof of death is a death certificate, order of a court of competent jurisdiction, or statement of attending physician.

17.4   **Notification to Custodian**
Written notification that may be appropriately given by the Company to the Custodian regarding the implementation of this policy in respect to the Annuitant or Beneficiary is binding upon the Custodian.

DVA 1504-6081

**17.5    Incontestability**

After the policy has been in force during the lifetime of the Annuitant for two (2) years following its Effective Date, it will be incontestable.

**17.6    Misstatement or Omission**

If the value of an Account or any other data pertaining to any Annuitant or Beneficiary is incorrectly stated, appropriate retroactive adjustments, including where appropriate, interest adjustments at 4% per annum compounded annually, will be made.

**17.7    Modification**

No person or entity other than the Company may execute, amend or modify this policy or extend he time for payment of Annuity Purchase Contributions nor can this policy be amended or modified or the provisions waived or extended in any respect except with the written consent of the Company signed either by the President or Life Manager or other authorised person.

**17.8    Facility of Payments**

If any payee is in the judgment of the Company legally incapable of personally receiving and giving valid receipt of any payment due hereunder or conditions exist whereby a payee or beneficiary thereof is under physical or mental constraint or duress, the Company may refuse to make payment to such person in such case until a claim is filed with the Company on behalf of a duly appointed guardian or other legal representative of such person and accepted by the Company. In any event, the Company may pay such amount or amounts or any parts thereof to any person, persons or institutions who in the judgment of the Company is or are then contributing toward or providing care, support or general welfare for such person. Any amount paid in accordance with this provision will completely discharge the Company's obligation for the amount so paid.

**17.9    Gender and Plural**

Words in the masculine include the feminine and neuter, where appropriate, and wherever the context of the policy dictates, the plural includes the singular and the singular the plural.

**17.10    Non-Participating**

This policy is Non-Participating.

**17.11    Entire Contract**

This policy (including Parts One and Two of the Application and the Custodian Account Agreement and the Investment Management Agreement) constitute the entire contract between all parties. It will be construed according to and governed by the Laws of the Cayman Islands.

**17.12    Taxes and Expenses**

If any Premium tax or other taxes are levied or assessable upon the Company attributable to any annuity Purchase Contribution or to any Disbursement to the Company from the Account, the effective amount of such taxes as determined by the Company will be paid from the Account to the Company by the Custodian. In the event that other taxes or expenses (other than those incurred by the Company in the administration of the annuity policy) may be levied or assessed upon the Company directly attributable to the Account, the Company shall have the right to require the Custodian to pay from the Account for such tax or expense. These provisions are subject to change by the Company in the future to reflect rulings and regulations by appropriate authorities.

DVA 1504-6031

# 18.  TABLE OF DISBURSEMENTS, ANNUITIES, GUARANTEES AND CHANGES IN TABLES

**18.1**    **Guarantees:**

(a)    The Disbursement and Annuities payable in this Section may not be changed on or after the Annuity Starting Date except upon agreed endorsement by the Owner and the Company.

(b)    Before the Annuity Starting Date, no change or changes may be made in the Disbursement and Annuities payable in this Section which would reduce the amount of the annuity determined under the Schedule by more than five percent.

(c)    The Disbursements provided in Subsections 18.7, 18.8, 18.9 and 18.10 of this policy may not be increased without the consent in wording of the Policy Owner.

**18.2**    The mortality and expense experience realised by the Company will not adversely affect the guarantee provided in Subsection 18.1 above.

**18.3**    The guarantee provisions in Subsection 18.1 and 18.2 above apply to other forms of annuity, age, sex and duration combinations as if the appropriate Disbursement and Annuity Schedule was originally incorporated in this policy.

**18.4**    Written notice of any change in this Section of Disbursements and Annuities, including a copy of the revised Disbursements and Annuities Schedule must be sent by the Company to the Annuitant at least sixty days in advance of the date the change is to become effective.

**18.5**    The changes shall be deemed incorporated in this policy as of the effective date thereof.

**18.6**    If at any time the Company is unable to make payment of Disbursements due under Subsections 18.7, 18.8, and 18.9 due to insufficient funds held in the Segregated Account and the disbursements are not paid to the Company by the Policy Owner within 90 days of demand of payment the Company may at its sole discretion cancel the policy.

DVA 1504-6081

## PREMIUMS AND TRANSACTION CHARGES PAYABLE TO THE COMPANY

| | Due Dates | Amount of Charge or Premium |
|---|---|---|
| 18.7 | Each date the Company receives an Annuity Purchase Contribution: | Two and one half percent (2.5%) of the Annuity Purchase Contribution received on such date: provided, however, that if as a condition of the purchase of this Policy, the Company has been required to purchase securities for the Segregated Account then the charge imposed on the Initial Annuity Purchase Contribution shall be 2.5% of the value of such securities and no further charge shall be imposed upon additional Annuity Purchase Contribution until they exceed, in the aggregate, the value of such securities on the date of purchase by the Company. |
| 18.8 | Quarterly on the last day of March, June, September and December the first quarter fees will be prorated: | 0.1875% of the Account Value |
| 18.9 | On the date before the Annuity Starting and each anniversary thereof: | 0% of the Account Value |
| 18.10 | On the date the Company receives from the Custodian the Disbursement needed for the: | |
| | (a) Cash withdrawal under Section 6 of this Policy. | 0% of the amount of the Disbursement required for such cash withdrawal |
| | (b) Single Sum Benefit under Subsection 2.5 of this Policy, if a small annuity. | 0% of the amount of the Disbursement required for such cash withdrawal |
| | (c) Single Sum Benefit under Subsection 8.1(a) of this Policy if the Annuitant dies before the Annuity Starting Date. | 0% of the liquidated Account Value |
| | (d) Single sum benefit under Subsection 9.3 of this Policy, if the Annuitant dies during the Minimum Period Guaranteed. | 0% of the liquidated Account Value |
| | (e) Cash Payment under Subsection 9.4 of this Policy, if the Annuitant dies after the Minimum Period Guaranteed. | 0% of the liquidated Account Value |
| | (f) Annuity Payments after the Final Anniversary of the Policy. | 0% of the liquidated Account Value |