

**ORDERED in the Southern District of Florida on May 3, 2019.**



**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                          Case No.:17-11834-EPK
                                                CHAPTER 7
**JOSEPH K. RENSIN,**

      **Debtor.**
_____/

**NICOLE TESTA MEHDIPOUR,**
**Chapter 7 Trustee,**

      **Plaintiff,**

**v.**                                          Adv. Proc. No.:17-01281-EPK

**JOSEPH K. RENSIN,**

      **Defendant.**
_____/


**ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

     Nicole Testa Mehdipour, as chapter 7 trustee, filed this adversary proceeding against Joseph

K. Rensin, the debtor in this case, seeking declaratory relief, objecting to exemptions, and seeking

turnover of property.  The Federal Trade Commission ("FTC") joined in the trustee's objections to

the debtor's exemptions.  ECF Nos. 70 and 164, Case No. 17-11834.  The Court consolidated the plaintiff's objection to Mr. Rensin's homestead exemption with this adversary proceeding.  ECF Nos. 69, 81, 167, Case No. 17-11834; ECF Nos. 8, 23, 81, Adv. Proc. No. 17-01281.  The plaintiff and defendant each filed a motion for partial summary judgment.  ECF Nos. 24 and 28, Adv. Proc. No. 17-01281.  The Court reviewed these as well as the joint stipulation of facts and additional briefs.  ECF Nos. 55, 60, and 75.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (citing *Anderson*, 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

## FACTS

For the following summary of facts, the Court looks to the joint stipulation of facts, unrebutted evidence offered in support of the motions, and the Court's docket.

In December 2018, the Court entered a non-dischargeable judgment against Mr. Rensin in favor of the FTC in the amount of $13,400,627.60 plus post-judgment interest. ECF No. 113, Adv. Proc. No. 17-01185. The Court found that between April 2008 and July 2009, Mr. Rensin, as the founder, CEO and sole owner of BlueHippo Funding LLC and its subsidiary BlueHippo Capital LLC (together, "BlueHippo"), caused those entities to defraud more than 50,000 retail customers, taking more than $14 million in payments for which no product was delivered. The Court ruled that a judgment previously entered against Mr. Rensin by the United States District Court for the Southern District of New York (the "District Court") is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

More than 15 years before filing this bankruptcy case, in November 2001, Mr. Rensin established what is known as the "Joren Trust," an offshore trust initially governed by the laws of the Cook Islands. Mr. Rensin is both the settlor and the primary beneficiary of the Joren Trust. At the time, Mr. Rensin was not subject to any claim of the FTC. In fact, Mr. Rensin did not form BlueHippo until years after establishing the Joren Trust. Mr. Rensin funded the trust with a contribution of $9 million from the sale of his interest in a prior business. The trust is irrevocable and contains spendthrift provisions. The Joren Trust has both a trust protector and a trustee (the "Joren Trustee"). The parties stipulate that "[a]ccording to the terms of the Joren Trust, supposedly Rensin has not reserved for himself the power to remove or veto the Joren Trustee or the Trust Protector of the

3

Joren Trust." While Mr. Rensin has the ability to select the Joren Trustee when there is no trust protector or when the trust protector fails to select a Joren Trustee, that power is so remote as to not be material here. The Joren Trustee is a corporate trustee with complete autonomy under the terms of the trust document. Mr. Rensin may request distributions from the trust, but the Joren Trustee may approve or deny such requests in its sole discretion. Mr. Rensin has a testamentary power of appointment as to the remainder of the trust assets at his death, subject to certain restrictions.

Several years after Mr. Rensin formed the Joren Trust, the FTC filed suit against BlueHippo in the District Court. In April 2008, the District Court entered a stipulated final judgment against BlueHippo. The judgment did not name Mr. Rensin.

In November 2009, at the request of the FTC, the District Court entered an order to show cause against BlueHippo and also against Mr. Rensin, alleging violations of the stipulated judgment. That same month, BlueHippo filed a chapter 11 petition in Delaware. BlueHippo's case was later converted to chapter 7.

Mr. Rensin was a long-time resident of the State of Maryland. In May 2010, Mr. Rensin sold a home in Maryland, known in this case as the Fawn Run home, netting about $300,000. Although the District Court had not actually entered judgment against Mr. Rensin, at that time he believed he was subject to judgment in favor of the FTC. Mr. Rensin moved into a rented home in Maryland, where he stayed until April 2014.

In July 2010, the District Court entered judgment in favor of the FTC against BlueHippo and Mr. Rensin in the approximate amount of $609,000. That judgment was appealed to the Second Circuit Court of Appeals.

In 2012, the Joren Trust was amended to provide Mr. Rensin, as settlor, with a power of appointment under which he can direct the Joren Trustee to make distributions to members of an appointed class. However, under article V, section D of the trust agreement, the Joren Trustee retains

4

the right to remove any and all persons from the appointed class, and so the Joren Trustee may negate any appointment made by Mr. Rensin. As a result of the 2012 amendment, Mr. Rensin did not gain any real ability to control distributions under the trust.

In February 2014, Mr. Rensin purchased a Maryland home known in this case as the Hunt Crossing home. Mr. Rensin never lived in the Hunt Crossing home.

In April 2014, Mr. Rensin moved out of leased housing into a Maryland home known in this case as the Quarterfield home. Mr. Rensin obtained funds from the Joren Trust to purchase the Quarterfield home, where he lived for only 5 months. When Mr. Rensin sold the Quarterfield home, Mr. Rensin used all net proceeds from the sale, other than about $350,000, to fund a new business which failed prior to the filing of this bankruptcy case.

In June 2014, Mr. Rensin sold the Hunt Crossing home. Again, Mr. Rensin never lived in the Hunt Crossing Home. He netted about $1,154,000 from the sale. Mr. Rensin later used part of these funds to purchase a home in Florida that he now claims as his homestead.

In August 2014, the Second Circuit vacated the District Court's judgment against Mr. Rensin and BlueHippo and remanded the matter to the District Court for a recalculation of damages. The Second Circuit ruling placed Mr. Rensin on notice that the resulting judgment against him likely would be in the range of $14 million.

In September 2014, Mr. Rensin purchased a home in Florida for about $940,000. For this purchase, he used only proceeds from the sale of the Hunt Crossing home, where he never lived. Mr. Rensin seeks to exempt his Florida home as his homestead.

During the litigation with the FTC, Mr. Rensin requested and received 14 distributions from the Joren Trust, aggregating approximately $8,679,042. He used some of the distributions to pay his legal fees and to pay settlements with creditors of BlueHippo. He used some of the distributions to start a new company which failed prior to this bankruptcy case.

From the creation of the Joren Trust until December 2014, the Joren Trustee was Southpac Trust International, Inc., an entity formed under the laws of the Cook Islands. In December 2014, Orion Corporate and Trust Services, an entity formed under the laws of Belize, became the Joren Trustee. The trust document was amended and restated to reflect its situs as Belize and to change the governing law to Belize. This is consistent with the original trust document which authorized the Joren Trustee to change the situs of the trust and the governing law. The plaintiff alleges that Mr. Rensin somehow exerts control over the Joren Trustee and the assets of the Joren Trust, including the appointment of Orion as Joren Trustee and moving the situs of the Joren Trust to Belize. The evidence before the Court on these motions provides no concrete support for those allegations.

In April 2015, Mr. Rensin obtained a $35,000 loan from an individual and gave a lien on all of his household furniture.

At a hearing in June 2015, the District Court orally ruled that the damages on remand would be about $14 million, subject to certain reductions reflecting prior payments to creditors.

In December 2015, Mr. Rensin transferred $350,000 to his counsel, who then transferred the funds to the Joren Trustee. The Joren Trustee used the $350,000 to purchase a deferred variable annuity issued by an entity in the Cayman Islands. A copy of the variable annuity contract is attached to the complaint as well as to Mr. Rensin's response. The $350,000 provided by Mr. Rensin was not immune from creditor collection.

Also in December 2015, the Joren Trustee used all assets then remaining in the Joren Trust to purchase a fixed annuity in the amount of $1.7 million, issued by the same entity that issued the variable annuity. A copy of the fixed annuity contract is attached to the complaint as well as to Mr. Rensin's response. As a result of this purchase, the only assets currently in the Joren Trust are the rights of the Joren Trust under the fixed and variable annuity contracts.

In April 2016, the District Court entered a new judgment in favor of the FTC against Mr. Rensin and BlueHippo, in the amount of about $13.4 million plus post-judgment interest.

In November 2016, Mr. Rensin made demand on the Joren Trustee to pay the much-increased FTC judgment. The Joren Trustee sought direction from the Supreme Court of Belize. In August 2017, specifically referencing the FTC action in the District Court, the Supreme Court of Belize ordered the Joren Trustee not to comply with any court order to turn over assets in the Joren Trust other than an order from the Supreme Court of Belize.

In February 2017, Mr. Rensin filed a chapter 7 petition in this Court. In his initial schedules, he listed a Regions Bank checking account with a balance of $79,014, which holds only proceeds from the fixed annuity. Mr. Rensin stated that he "is the discretionary beneficiary of the JOREN Trust, which is an irrevocable foreign situs trust that was settled in 2001. The trust's only assets are two annuities that pay Debtor $15,000/monthly." Mr. Rensin included the same statement in each of his amended schedules. More recently, in May 2018, Mr. Rensin filed a "Debtor's Notice of Filing Amended Schedule C" in which he claimed as exempt the "[p]roceeds of annuity contracts" pursuant to Fla. Stat. § 222.14.

In February, 2017, Mr. Rensin asked the Court to rule that the automatic stay prohibited the FTC from pursuing contempt against him in the District Court, and the FTC opposed that request, asking this Court to defer to the District Court on the issue. ECF Nos. 10 and 14, Case No. 17-11834. This Court abstained from determining whether the District Court contempt action was excepted from the automatic stay under 11 U.S.C. § 362(b)(4), as the matter was already fully briefed in the District Court and that court has concurrent jurisdiction on the issue. ECF No. 16, Case No. 17-11834. The District Court ruled that the automatic stay did not apply to its contempt proceedings. The District Court then held Mr. Rensin in contempt, found that he has assets that could be used to satisfy the FTC judgment, and directed Mr. Rensin to meet with the FTC to negotiate a payment plan,

which the District Court suggested may include the use of his Florida property and annuity payments. The District Court stayed further collection activity pending relief from the automatic stay in this case.

## APPLICABLE PROVISIONS OF THE ANNUITY CONTRACTS

Under the variable annuity, Mr. Rensin is the annuitant with the right to receive monthly payments during his life, commencing on the annuity starting date. Prior to the annuity starting date, the funds are invested. The Joren Trust is the owner of the variable annuity as well as the beneficiary entitled to receive payments after Mr. Rensin dies. The variable annuity contract becomes irrevocable on the annuity starting date. The variable annuity contract itself is silent on the annuity starting date. Based on Mr. Rensin's deposition testimony, the annuity starting date has not occurred. Because the annuity starting date has yet to occur, the Joren Trustee has the power to surrender the variable annuity, thereby canceling it, and also has the power to make withdrawals. In addition, prior to the annuity starting date, Mr. Rensin may borrow from the investment pool up to 90% of its value. But because the Joren Trustee can cancel the variable annuity at any time during the same period, the right to borrow is effectively subject to veto.

As with the variable annuity, under the fixed annuity Mr. Rensin is the annuitant with the right to receive monthly payments during his life, commencing on the annuity starting date. Unlike the variable annuity, the annuity starting date for the fixed annuity has occurred and the issuer makes regular monthly payments directly to Mr. Rensin. The Joren Trust is the owner of the fixed annuity as well as the beneficiary entitled to receive payments when Mr. Rensin dies. Unlike the variable annuity contract, the fixed annuity contract omits section 6.4, the operative provision for surrender of the contract or withdrawal of funds. The references to surrender and withdrawal in sections 6.1 and 6.2 are surplusage in light of the deletion of section 6.4 from the form of the fixed annuity contract. The fixed annuity contract includes section 6.3, permitting borrowing, but that right terminated upon the annuity starting date. Under section 4.3, the fixed annuity contract became irrevocable on the

annuity starting date.  The overall effect of these provisions is that the rights of the Joren Trust and Mr. Rensin are permanently established under the fixed annuity contract, subject to minor adjustments not relevant here.

Section 11.1 of each annuity contract states that if the annuitant is not also the owner, "all of the Annuitant's rights, title, interest and obligations under this policy vest in such Owner(s) and in such case the policy shall be read substituting 'Owner' in place of 'Annuitant' as respectively required." Reading just this provision, one might assume that the Joren Trust, as owner, is to be substituted in each instance where the annuity contract uses the word "annuitant."  But the inclusion of the phrase "as respectively required" suggests that the substitution of terms is not universal.  It is obvious from a review of the annuity contracts that substituting the owner for the annuitant in every instance does not make sense.  Among other things, the Joren Trust has no "birthday" nor will it ever suffer "death" in the obvious meaning of that term in the annuity contracts.

Section 2.0 of each annuity contract provides for payments to the annuitant.  If the owner is substituted for the annuitant under this provision, during Mr. Rensin's life the issuer would make payments to the Joren Trustee rather than to him.  After receiving such payments, the Joren Trustee could exercise discretion whether to provide any of such funds to Mr. Rensin but would not be required to pay anything to him.  On the other hand, if Mr. Rensin is entitled to receive direct payments from the issuer of the annuity contracts, neither the right to such annuity payments nor the funds themselves ever become part of the Joren Trust.

With regard to the fixed annuity, the issuer has been making and continues to make monthly payments directly to Mr. Rensin.  This supports the conclusion that Mr. Rensin, as annuitant, has the right to receive such payments and retains that right until his death under the now irrevocable fixed annuity.  Mr. Rensin's right to receive payments under the fixed annuity contract is not part of the

Joren Trust but represents his personal right under the contract. The Joren Trust holds only the remainder interest under the fixed annuity contract, after Mr. Rensin's death.

With regard to the variable annuity, the annuity starting date has not occurred, and so no monthly payments are being made. The Joren Trustee may surrender the variable annuity or withdraw funds. Mr. Rensin may borrow up to 90% of the investment pool, but this right is constrained by the Joren Trustee's right to surrender. One might argue that Mr. Rensin's right to borrow under the variable annuity is property of the bankruptcy estate, but if the plaintiff attempted to exercise that right the Joren Trustee could simply terminate the contract.

## MATTERS BEFORE THE COURT

Mr. Rensin seeks to exempt his right to receive payments from the annuity contracts and his interest in the Regions Bank account which holds only payments from the fixed annuity. The Regions Bank account had a balance on the petition date of $79,014.

In count I of the complaint, the plaintiff seeks a declaratory judgment that the contents of the Joren Trust, including the annuities and any proceeds from the annuities, are property of the bankruptcy estate. Mr. Rensin funded the Joren Trust with non-exempt assets, and he is both the settlor and primary beneficiary. The plaintiff argues that non-bankruptcy law does not recognize transfer restrictions in self-settled trusts and so, pursuant to 11 U.S.C. § 541(c)(2), the estate is not bound by the spendthrift provisions in the Joren Trust. Mr. Rensin argues that failure of the spendthrift provision does not necessitate the declaration requested by the plaintiff. According to Mr. Rensin, even if the spendthrift provision is not enforceable, applicable law permits his creditors to obtain only those assets that he himself may obtain. Mr. Rensin argues that the Joren Trust is fully discretionary and he has no right to any of its assets. The plaintiff responds that, under Fla. Stat. § 736.0505(1), Mr. Rensin's creditors may seek payment from any trust assets that could be paid to him even if he could not require such payment.

In count II of the complaint, the plaintiff objects to Mr. Rensin's exemption of the Regions Bank account and any payments from the annuities. Relying on Fla. Stat. § 222.30, the plaintiff argues that the assets of the Joren Trust, including the annuities, and any funds in the Regions Bank checking account, are not exempt assets as they are the product of fraudulent conversion of non-exempt assets into exempt assets. The plaintiff argues that all of the assets in the Joren Trust are subject to claims of Mr. Rensin's creditors from inception and so, even if Mr. Rensin's rights in the annuities otherwise would be exempt, they resulted from fraudulent conversion. The plaintiff argues that, even if the variable annuity would otherwise be exempt, it was purchased using Mr. Rensin's non-exempt funds at a time when he was subject to significant claims, including the FTC judgment, and so the variable annuity resulted from a fraudulent transfer. Mr. Rensin argues that Fla. Stat. § 222.30 does not apply, because Mr. Rensin did not purchase the annuities and because Mr. Rensin did not own the property used to purchase the annuities. The plaintiff argues that Fla. Stat. § 222.14, which governs exemption of annuity payments, does not apply in this case because the owner of the annuities, the Joren Trust, is not a citizen or resident of Florida. Mr. Rensin argues that the statute requires only that he be a citizen of Florida, which he is.

In count III of the complaint, the plaintiff seeks an order under 11 U.S.C. § 542(a), directing Mr. Rensin to turn over the funds in the Regions Bank checking account, the $15,000 per month Mr. Rensin receives as a result of the fixed annuity, and all other funds or cash surrender value of the annuities.

The Court consolidated the plaintiff's objection to Mr. Rensin's homestead exemption with this adversary proceeding. ECF No. 69, 81, 167, Case No. 17-11834; ECF Nos. 8, 23, 81, Adv. Proc. No. 17-01281. Mr. Rensin claimed a partial exemption in his Florida home in the amount of $160,375. He asks to exempt this amount, rather than the full value of the home, as he acquired the home within 1,215 days prior to filing this case. 11 U.S.C. § 522(p). Among other things, the plaintiff argues that

Mr. Rensin used non-exempt property to purchase the Florida home with the intent to hinder, delay, or defraud creditors, in violation of 11 U.S.C. § 522(o).  It is undisputed that the funds used to purchase the Florida home came from the sale of a property where Mr. Rensin never resided and that the Florida home was acquired less than 3 years prior to the filing of this case, thus well within the 10-year period covered by the statute.  The plaintiff claims that the circumstances of this case, including Mr. Rensin's activity in the FTC litigation and the timing of the purchase of the Florida home, indicate Mr. Rensin's intent to stymie his creditors.  Mr. Rensin does not dispute the plaintiff's argument based in badges of fraud.  Instead, he argues that his sale of a Maryland homestead, shortly after purchasing the Florida home, somehow negates the plaintiff's argument.  Mr. Rensin also argues that 11 U.S.C. § 522(o) does not apply in this case because it conflicts with 11 U.S.C. § 522(p), which governs.

The Court has before it cross-motions for summary judgment.  ECF Nos. 24 and 28.  Mr. Rensin filed a response and the plaintiff filed a reply.  ECF Nos. 60 and 75.  The response and reply are intended to address all of the issues in the cross-motions for summary judgment.  The parties also filed a joint stipulation of facts.  ECF No. 55.

In her motion for partial summary judgment, the plaintiff seeks: (a) entry of summary judgment on count I, declaring that the annuities and their proceeds, including the Regions Bank account, are property of the bankruptcy estate; (b) entry of summary judgment on count II, sustaining the plaintiff's objection to Mr. Rensin's claimed exemption in the Regions Bank account that contains only proceeds from the fixed annuity; (c) partial summary judgment on count III, ordering Mr. Rensin to turn over the Regions Bank account and all funds received and to be received by Mr. Rensin as a result of the fixed annuity, including an accounting of funds taken out of the Regions Bank account after the date this bankruptcy case was filed; and (d) summary judgment sustaining the plaintiff's objection to Mr. Rensin's homestead exemption and ordering turnover of all proceeds from sale of the Florida homestead.  In his motion for partial summary judgment, Mr. Rensin argues that the Joren

Trustee is an indispensable party who is not joined in the adversary proceeding and so counts I and III must be dismissed.

**ANALYSIS**

The Court's ruling depends in large part on the relative property rights of Mr. Rensin and the Joren Trust at the time this bankruptcy case was filed. The Court begins by analyzing the property interests of Mr. Rensin, the Joren Trust, and the bankruptcy estate. After determining these rights, the Court then addresses the requests for relief in light of the fact that the Joren Trustee is not a party to the adversary proceeding.

**The Joren Trust is subject to Florida law.**

The Joren Trust originally stated that it was governed by the law of the Cook Islands. The trust document permits the Joren Trustee to move the situs of the trust and to designate a different governing law. When the current Joren Trustee took control of the trust, it moved the situs to Belize and restated the trust document to incorporate the law of Belize.

Bankruptcy courts are split on whether state or federal law supplies the choice-of-law rules in bankruptcy cases. *Jafari v. Wynn Las Vegas, LLC (In re Jafari)*, 569 F.3d 644, 648-49 (7th Cir. 2009); *Dzikowski v. Friedlander (In re Friedlander Capital Mgmt. Corp.),* 411 B.R. 434, 441-42 (Bankr. S.D. Fla. 2009) (detailing the diversity jurisdiction, uniform federal common law, and hybrid approaches). A bankruptcy court's jurisdiction arises from federal bankruptcy law, yet state law governs the validity of most property rights. *In re Jafari*, 569 F.3d at 648. In this case, the Court follows the so-called diversity jurisdiction approach and looks to Florida law.

Under Florida law, the choice of law provided in a contract is binding unless it offends Florida public policy. *Se. Floating Docks v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000). Florida law strongly disfavors asset protection trusts, where the settlor is also the primary beneficiary and there are spendthrift protections.

13

*Menotte v. Brown (In re Brown)*, 303 F.3d 1261, 1266 (11th Cir. 2002) (citing cases).  While Florida law provides a broad set of exemptions designed to protect various assets from the collection activities of creditors, *see* Fla. Stat. ch. 222, Florida courts will not enforce a spendthrift trust designed to permit a person to place his or her assets beyond the arms of creditors.  *See* Fla. Stat. § 736.0107; *In re Brown*, 303 F.3d at 1266-67; *Barbee v. Goldstein (In re Reliance Fin. & Inv. Group, Inc.)*, No. 05-80625, 2006 U.S. Dist. LEXIS 82945, at *19-20 (S.D. Fla. Nov. 14, 2006).  Mr. Rensin does not contest that the law of Belize is contrary to Florida public policy on this point.

The Joren Trust falls squarely within this category of trusts.  To permit Mr. Rensin to rely on the law of Belize, to enforce an asset protection trust designed to offend his creditors, is contrary to Florida public policy.  The Court will not apply Belize law but will apply the law of Florida to all aspects of the Joren Trust.  *See Goldberg v. Lawrence (In re Lawrence)*, 227 B.R. 907, 917-18 (Bankr. S.D. Fla. 1998).

### Mr. Rensin's creditors may attach all assets in the Joren Trust. All assets in the Joren Trust are subject to administration in this bankruptcy case.

Even absent the Court's ruling that Florida law applies generally to the Joren Trust, Mr. Rensin conceded that Florida law applies to the spendthrift provision.  This means that Mr. Rensin's interest in the Joren Trust is liable for his debts to the same extent as his legal interests in the trust.  *In re Brown*, 303 F.3d at 1267-68.  But the Joren Trust is a fully discretionary trust.  Mr. Rensin cannot require the Joren Trustee to make distributions to him.  The question, then, is how Mr. Rensin's creditors could obtain access to the assets of the Joren Trust.

Florida, like many states, adopted the Uniform Trust Code.  Fla. Stat. § 736.0505 enacted section 505 of the Uniform Trust Code.  Among other things, this statute provides:  "Whether or not the terms of a trust contain a spendthrift provision . . .With respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit."  Fla. Stat. § 736.0505(1)(b).  According to the official comment to this section, "[i]f the trustee

has discretion to distribute the entire income and principal to the settlor, the effect of this subsection is to place the settlor's creditors in the same position as if the trust had not been created." Unif. Trust Code § 505 cmt.; *accord* Restatement 3d of Trusts § 58(2) and cmt. e; Restatement (Second) of Trusts § 156.

The Joren Trustee has discretion to distribute the entire trust corpus to Mr. Rensin. Under Florida law, from inception of the Joren Trust, Mr. Rensin's creditors could attach any and all assets of the trust. Put another way, the assets in the Joren Trust are not protected from execution under Florida law. Because of this, all assets of the Joren Trust are subject to administration in this bankruptcy case.

**Mr. Rensin owns payment rights under the annuity contracts.**
**His payment rights are property of the bankruptcy estate unless exempt.**
**The bankruptcy estate owns all other rights under the annuity contracts.**

As of the petition date in this case, and now, the Joren Trust holds only its rights under the annuity contracts.

Under the fixed annuity, Mr. Rensin has the sole right to annuity payments during his life. These rights are his personal property and are part of his bankruptcy estate unless exempt.

The Joren Trust has no interest in the monthly annuity payments to Mr. Rensin under the fixed annuity. The Joren Trust holds only the remainder interest. After Mr. Rensin dies, any remainder is paid to the Joren Trustee and is applied pursuant to the Joren Trust. In light of the Court's analysis above, the remainder interest held by the Joren Trust is subject to administration in this bankruptcy case.

Under the variable annuity, the annuity starting date has not occurred. Mr. Rensin has no current right to annuity payments from the variable annuity as such payments will not begin until after the annuity starting date. While Mr. Rensin technically holds the right to borrow from the variable annuity, the Joren Trustee may veto any borrowing request by terminating the contract. On the

petition date, Mr. Rensin had only a potential right to payment from the variable annuity, subject to revocation by the Joren Trustee. These rights are his personal property and are part of his bankruptcy estate unless exempt.

The Joren Trustee may surrender the variable annuity, terminating it, with the funds paid to the Joren Trust. If the variable annuity is not surrendered prior to the annuity starting date, then the Joren Trust will hold only the remainder after Mr. Rensin's death. In light of the Court's analysis above, the Joren Trust's right to surrender the variable annuity and, if it is not timely surrendered, the remainder interest, are subject to administration in this bankruptcy case.

In summary, Mr. Rensin holds irrevocable payment rights under the fixed annuity and revocable payment rights under the variable annuity. Mr. Rensin's rights under the annuity contracts are his personal property and so are property of the bankruptcy estate unless exempt. The Joren Trust holds only the remainder under the fixed annuity and that interest is subject to administration in this bankruptcy case. The Joren Trust holds the right to surrender the variable annuity until the annuity starting date, and after that date the trust owns the remainder. Those rights are subject to administration in this bankruptcy case. However, because the Joren Trustee is not a party to this action, the plaintiff cannot obtain enforceable relief regarding the assets of the Joren Trust. This concern is discussed more fully below.

**Mr. Rensin's annuity payment rights are exempt from administration in this case.**

Mr. Rensin scheduled his rights to payment under the annuities as exempt, conceding that such rights are property of his bankruptcy estate if not exempt. Mr. Rensin holds irrevocable payment rights under the fixed annuity. He holds payment rights under the variable annuity, subject to the Joren Trustee's right to surrender that contract prior to the annuity starting date. Mr. Rensin claims all of these payment rights as exempt under Fla. Stat. § 222.14.

16

Florida Statutes § 222.14 provides, in relevant part: "The . . . proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of . . . any creditor of the person who is the beneficiary of such annuity contract, unless the . . . annuity contract was effected for the benefit of such creditor." In this statute, the term "beneficiary" means a person who receives payments under an annuity contract. The creditors of such a payee may not execute on the annuity payments. Mr. Rensin is a "beneficiary" under this provision as he is entitled to payments under the annuities.[1]

The Florida annuity exemption protects Florida citizens and residents who receive payments under annuity contracts. At least one court has ruled that section 222.14 requires that the annuity contract also be issued to, and thus owned by, a Florida citizen or resident, even if that person is not receiving the annuity payments. The issue is material here because the Joren Trust, a resident of Belize, owns the contracts.

The statutory phrase "issued to citizens or residents of the state" is the key to this question. One court, cited by Mr. Rensin, initially ruled that this phrase modifies the term "annuity contracts" and so the annuity contract must be issued to a citizen or resident of Florida. *In re Pizzi*, 153 B.R. 357 (Bankr. S.D. Fla. 1993). That same court later ruled that the phrase "issued to citizens or residents of the state" modifies the word "proceeds" and so the proceeds must be payable to a citizen or resident of Florida. *In re Belue*, 238 B.R. 218 (Bankr. S.D. Fla. 1999) (noting that the issue was not critical to the same court's prior decision in *Pizzi*); *accord In re Bennett*, 217 B.R. 654 (Bankr. M.D. Fla. 1998); *In re Benedict*, 88 B.R. 387 (Bankr. M.D. Fla. 1988). The latter view is the majority view and most closely reflects the obvious intent of the statute.

---

[1] The annuity contracts in this case also use the term "beneficiary," but in those contracts the beneficiary is the person or entity entitled to payments after Mr. Rensin dies.

17

It does not matter that the Joren Trust is the owner of the annuity contracts.  Mr. Rensin is a citizen and resident of Florida.  Mr. Rensin's rights to payment under the annuities are exempt under Fla. Stat. § 222.14.

The plaintiff argues that to permit a debtor to exempt rights under an annuity contract that is owned by a non-Florida person or entity would only encourage fraudulent or inappropriate behavior. It is hard to see how this is the case.  The statute protects payment rights under annuity contracts. The Florida legislature determined that, except when acquired with fraudulent intent in violation of Fla. Stat. § 222.30 or if the exemption results from a fraudulent transfer or conveyance in violation of Fla. Stat. § 222.29, all payment rights under an annuity contract are exempt from process.  When an annuity contract provides for payments to a citizen or resident of Florida, it does not matter who owns the contract.  There are a variety of valid reasons why an annuity contract may be owned by a person other than those entitled to payment.  For example, an estate plan may include an annuity contract providing payments to the testator while alive with the remainder paid to a trust that is also designated the owner of the contract.  If section 222.14 is interpreted to require the owner of the annuity contract to also be a Florida citizen or resident, this would greatly restrict the selection of a trustee, without any valid purpose.  In any case, Fla. Stat. §§ 222.29 and 222.30 address the concerns raised by the plaintiff by limiting the effect of the exemption provisions where fraud is involved.

**The annuity contracts are not subject to Fla. Stat. § 222.30.**

Florida Statutes § 222.30 is aimed at preventing a person who is liable to a creditor from taking an asset owned by that person and converting it into a form that is immune from collection, specifically to stymie the creditor.  Section 222.30(2) provides:  "Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay,

or defraud the creditor."  A creditor harmed by fraudulent asset conversion may seek avoidance of the conversion, attachment of the asset converted, and other equitable relief.  Fla. Stat. § 222.30(3).

Mr. Rensin provided $350,000 of non-exempt funds to his counsel for deposit in the Joren Trust.  The Joren Trustee then used the funds to purchase the variable annuity.  The plaintiff argues that Mr. Rensin, acting through his counsel as agent, placed his non-exempt assets in the Joren Trust to facilitate the purchase of the variable annuity in an attempt to remove the assets from the reach of his creditors.  Likewise, the plaintiff argues that Mr. Rensin caused the Joren Trustee to use funds long held in the Joren Trust to purchase the fixed annuity, also in an attempt to remove the assets from the reach of his creditors.  The plaintiff claims that these conversions of assets to the fixed and variable annuities are subject to remedies under section 222.30.  While the plaintiff presents a seemingly compelling review of the facts under the traditional badges of fraud, there are fatal errors in the plaintiff's analysis.

Section 222.30 requires a "conversion by a debtor."  A "conversion" under this statute involves an intentional act with the power to follow through.  The plaintiff argues that the badges of fraud indicate Mr. Rensin intended to stymie his creditors by causing the Joren Trustee to purchase the annuities.  The "conversion by a debtor" is, in plaintiff's view, the Joren Trustee following through on Mr. Rensin's desires.  But there is no evidence that Mr. Rensin asked the Joren Trustee to purchase either of the annuities.  To the contrary, the only relevant evidence is that Mr. Rensin objected to the purchase of the annuity contracts.  Even if Mr. Rensin had asked the Joren Trustee to purchase the annuities, this would not be sufficient for relief under section 222.30.  Mr. Rensin does not have the legal ability to require the Joren Trustee to use trust assets in any regard.  In other contexts, Florida courts have held that, even where the evidence shows that a trustee has historically acted as requested by a beneficiary, if the trust document provides the trustee with complete discretion the courts need give no weight to past practice.  *Miller v. Kresser*, 34 So. 3d 172, 175-76 (Fla. 4th DCA 2010).  In other

words, because Mr. Rensin had no legal power to require the Joren Trustee to buy the annuities, he could not have converted non-exempt assets under section 222.30. This is a moot point as, here, the only relevant evidence shows that Mr. Rensin did not cause the Joren Trustee to purchase the annuities.

Nor does Mr. Rensin's deposit of the $350,000 into the Joren Trust fit within the requirements of section 222.30. When Mr. Rensin took his non-exempt personal funds and deposited them into the Joren Trust, this did not result in the funds becoming "exempt by law from the claims of a creditor" as required under the statute. Section 222.30 provides an exception from the exemptions otherwise granted under chapter 222. There is no provision of chapter 222 that would protect assets in the Joren Trust. Since a deposit into the Joren Trust would not result in the funds becoming protected under any provision of chapter 222, section 222.30 does not apply. Even if section 222.30 is read more broadly, to cover any conversion resulting in an asset becoming no longer subject to execution by creditors, all Joren Trust assets are subject to claims of Mr. Rensin's creditors, and so Mr. Rensin's transfer of $350,000 into the Joren Trust did not place those funds beyond the reach of creditors. In any case, in the complaint the plaintiff did not seek any relief relating to the transfer of $350,000 into the Joren Trust, but rather focused on the use of those funds to acquire the variable annuity.

Because the Joren Trustee purchased the fixed annuity, and not Mr. Rensin, the plaintiff argues that the Joren Trust itself is covered by section 222.30. The plaintiff contends that the defined terms in section 222.30 apply to the Joren Trustee and its creditors, including the FTC and the bankruptcy estate. Even assuming this is correct, for section 222.30 to apply, the conversion of assets must result in the assets becoming exempt from creditors of the converting party. But the Joren Trust is not a Florida citizen or resident and so obtains no protection under section 222.14. Nor does any other provision of chapter 222 protect the Joren Trustee. In other words, the Joren Trusts's purchase of

the fixed annuity did not result in the asset becoming protected from creditors of the Joren Trust. Section 222.30 does not apply.

The annuities are not subject to avoidance, attachment, or equitable remedies under Fla. Stat. § 222.30.  Mr. Rensin's payment rights under the annuities, and the Regions Bank account containing only proceeds from the fixed annuity, remain exempt from administration in this bankruptcy case.

**The Court may and does rule on Mr. Rensin's property interests.**

Mr. Rensin is the only defendant in the adversary proceeding.  The Court may rule on all claims affecting Mr. Rensin's interests in property.

In count I of the complaint, the plaintiff seeks "a declaratory judgment finding that the assets held in the Joren Trust, the Variable Annuity, the Fixed Annuity, and proceeds of the Annuities, constitute property of the Estate."  Although exempt from administration in this bankruptcy case, Mr. Rensin's payment rights under the annuities and the Regions Bank account, which holds only proceeds from the fixed annuity, are property of the estate.  The Court will grant the plaintiff's request for a declaration to this effect, subject to Mr. Rensin's valid exemption of the same assets.  To the extent the plaintiff seeks a declaration that property in the Joren Trust is property of the bankruptcy estate, the Court cannot grant such relief unless the Joren Trustee is joined in this action.  This is addressed below.

In count II of the complaint, the plaintiff requests "a judgment denying the exemption for deposits in the Regions Annuity Account and any proposed exemption the Debtor may allege to the Variable Annuity, the Fixed Annuity, and/or any proceeds or cash surrender value of the Annuities." All of Mr. Rensin's rights under the annuities, including past and future payments, and the Regions Bank account, are exempt from administration in this case.  The Court will deny all relief requested in count II.

Under count III of the complaint, the plaintiff requests "a judgment compelling Rensin to turnover to the Trustee the funds in the Regions Annuity Account, the $15,000 per month income stream from the Fixed Annuity and any and all other funds or cash surrender value held in the Variable Annuity and the Fixed Annuity." All of Mr. Rensin's rights under the annuities, including past and future payments, and the Regions Bank account, are exempt from administration in this case. The Court will not require Mr. Rensin to turn over these assets. To the extent the plaintiff is asking the Court to order Mr. Rensin to cause the Joren Trust to turn over assets, Mr. Rensin has no legal right under the Joren Trust documents to cause the Joren Trustee to take any such action. *See Miller v. Kresser*, 34 So. 3d 172, 175-76 (Fla. 4th DCA 2010). In count III, the plaintiff does not seek any relief directed at the Joren Trustee itself, so it does not matter that the Joren Trustee is not a party to the adversary proceeding. Because the plaintiff is not entitled to any relief requested in count III, the Court will deny all relief requested in count III.

**The Court cannot presently grant declaratory judgment regarding assets of the Joren Trust.**

The Joren Trust holds only rights under the annuity contracts. It owns the remainder rights under the fixed annuity, the powers to withdraw from and/or surrender the variable annuity and, if not surrendered prior to the annuity starting date, the remainder rights under the variable annuity. In count I of the complaint, the plaintiff asks this Court to declare all such rights to be property of this bankruptcy estate.

Mr. Rensin argues that the Court cannot enter the requested declaratory judgment as the Joren Trustee is not a party to this action. In opposition to this view, the plaintiff points to *Lawrence v. Chapter 7 Trustee. (In re Lawrence)*, 251 B.R. 630 (S.D. Fla. 2000), *aff'd*, 279 F.3d 1294 (11th Cir. 2002). But in that case the court ruled that the debtor had actual legal power over the trust in the form of a right to replace the trustee at will. The facts in *Lawrence* illustrate the outside edge of a court's ability to order a trust beneficiary to cause property to be delivered from an otherwise fully discretionary

spendthrift trust. The triggering right in that case, meaning the power to repeatedly replace the trustee until one complies with the wishes of the beneficiary, is not present here. Mr. Rensin has no legal ability to control any material aspect of the administration of the Joren Trust.

Mr. Rensin argues that when a suit affects a trust estate the trustee must be named in the suit. It is the general rule under Florida law that the trustee is an indispensable party in such a suit. *See Trueman Fertilizer Co. v. Allison*, 81 So. 2d 734, 738 (Fla. 1955) (en banc). The Court agrees that the plaintiff may not obtain any relief regarding assets of the Joren Trust without joining the Joren Trustee.

Mr. Rensin argues that the Joren Trustee is an indispensable party under Fed. R. Civ. P. 19 and, absent joinder, the plaintiff's request for a declaratory judgment relating to Joren Trust assets must be denied. Rule 19 is applicable in this case under Fed. R. Bankr. P. 7019. Rule 19 provides as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) Pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2) the reasons for not joining that person.

(d) Exception for Class Actions. This rule is subject to Rule 23.

Rule 19 requires that the party in question be subject to service of process and that joinder of the party will not result in loss of subject matter jurisdiction.  The Joren Trustee is located in Belize. Rule 4(f) of the Federal Rules of Civil Procedure governs service on an individual in a foreign country. Fed. R. Bankr. P. 7004(a)(1).  Rule 4(f)(1)-(2) requires service by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, or, if there is no internationally agreed means or if an international agreement allows but does not specify other means, by a method reasonably calculated to give notice by certain other methods in accordance with the foreign country's law.  The Court may

also order other means of service not prohibited by international agreement where necessary.  Fed. R. Civ. P. 4(f)(3).  At a minimum, citizens of Belize may be served under The Hague Convention.[2]  The Joren Trustee is thus subject to service of process.  Joining the Joren Trustee would have no impact on subject matter jurisdiction in this case.

Rule 19(a)(1) then provides two alternative tests for determining whether the party must be joined.  If either (a) the Court cannot accord complete relief without the party, or (b) the party claims an interest in the subject of the case and ruling without it may impair its ability to protect that interest or subject an existing party to multiple or inconsistent obligations, then the party must be added to the suit.  The Joren Trustee satisfies both standards.  Because the Joren Trust is the sole owner of certain rights under the annuity contracts, the Court cannot grant the declaratory relief requested unless the Joren Trustee is a party.  In addition, the Joren Trustee has a fiduciary obligation to all beneficiaries of the trust.  Mr. Rensin is not the only beneficiary.  A ruling in favor of the plaintiff on claims affecting property rights of the Joren Trust would impair the Joren Trustee's ability to protect the interests of the other stakeholders.  As a result, under Rule 19(a)(1), in order to obtain the relief requested with regard to property owned by the Joren Trust the plaintiff must seek to add the Joren Trustee as a defendant.

The parties agree that it is not feasible to join the Joren Trustee, as contemplated in Rule 19(b).  But the Court need not heed that agreement as the law and circumstances obviously negate it.  There are two issues relevant to this question:  (a) whether the Court could obtain personal jurisdiction over the Joren Trustee, and (b) whether the order of the Supreme Court of Belize, directing the Joren Trustee to ignore orders of other courts, means that joining the Joren Trustee would be futile.

---

[2] Belize is a contracting party to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, though it is a not a Member of the Hague Conference on Private International Law. https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last updated Nov. 29, 2018).

This Court looks to the Due Process Clause of the Fifth Amendment to the United States Constitution to determine whether it has personal jurisdiction over a defendant. *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, No. 09-31881-EPK, 2013 WL 1881712, at *2 (Bankr. S.D. Fla. Apr. 30, 2013). Personal jurisdiction may be either general, meaning the defendant has continuous and systematic affiliation with the forum, or specific, meaning the controversy arises out of the defendant's contacts with the forum with regard to the underlying controversy. *Id.* There is not sufficient evidence now before the Court to determine whether the Court would or would not have personal jurisdiction over the Joren Trustee. It is certainly possible that personal jurisdiction would attach. In any case, the lack of personal jurisdiction is a defense to be raised by the Joren Trustee if it is served. Unless it is obvious that there would be no personal jurisdiction over a proposed defendant, and that is not the case here, the potential lack of personal jurisdiction does not make joinder infeasible within the meaning of Rule 19(b).

The order of the Supreme Court of Belize, directing the Joren Trustee not to comply with certain orders, is not dispositive on the feasibility of joining the Joren Trustee. The order addresses potential rulings of the District Court, specifically in reference to the FTC action discussed above. The Supreme Court of Belize directed the Joren Trustee to look only to the Supreme Court itself for direction, thereby retaining ultimate control of the Joren Trust. This does not necessarily mean that the Supreme Court of Belize will refuse to direct the Joren Trustee to comply with a final judgment of this Court entered after the Joren Trustee is duly joined.

But even if joinder of the Joren Trustee was not feasible, the Court would nonetheless rule that the plaintiff's request for a declaratory judgment regarding property of the Joren Trust must be dismissed. Under Rule 19(b), if joinder of a necessary party is not feasible, the Court must "determine whether, in equity and good conscience, the action should proceed among the existing parties." The Court considers, among other things: (a) whether the non-joined party and existing parties would be

prejudiced; (b) whether the relief could be tailored to ameliorate that prejudice; (c) whether judgment in absence of the non-joined party would be adequate; and (d) whether the plaintiff would have an adequate remedy if the matter is dismissed.  In this case, the plaintiff seeks a ruling that all assets owned by the Joren Trust are property of the bankruptcy estate subject to administration here.  Only an order binding on the Joren Trustee can achieve that relief.   There is no way to tailor the relief to make this Court's ruling binding on the Joren Trust without actually adding the Joren Trustee as a defendant.  As an alternative, the plaintiff may seek relief against the Joren Trust in Belize.

Because the Joren Trustee is not a party defendant in the adversary proceeding, the plaintiff's request in count I of the complaint for a declaratory judgment that all assets in the Joren Trust are property of the bankruptcy estate must be dismissed, without prejudice.  The Court will provide the plaintiff an opportunity to attempt to join the Joren Trustee in this action if she so desires.

Mr. Rensin also asks the Court to dismiss count III of the complaint because the Joren Trustee is not a party.  In count III, the plaintiff seeks an order "compelling Rensin" to turn over assets.  The plaintiff does not ask this Court to order the Joren Trustee to do so.  It is not necessary for the Joren Trustee to be a party to that component of the complaint.  Mr. Rensin's request to dismiss count III will be denied.

### Mr. Rensin's Florida home is not exempt.

Mr. Rensin claims a homestead exemption under Florida law made applicable under 11 U.S.C. § 522(b)(3)(A).  He claims the exemption in the amount of $160,375, rather than the full value of the home, as he acquired the home within 1,215 days prior to the petition date.  11 U.S.C. § 522(p).  The plaintiff objects to the homestead exemption under 11 U.S.C. § 522(o), claiming that the home was acquired with non-exempt assets in the 10 years prior to the petition date with actual intent to hinder, delay, or defraud a creditor.

Mr. Rensin argues that, when the exemption cap under section 522(p) applies, then the section 522(o) limitation with regard to conversion of non-exempt assets does not apply. He contends that these provisions cannot be reconciled and that the more specific provisions of section 522(p) trump the more general provisions of section 522(o). Mr. Rensin cites no case law to support this argument. This is not surprising as the text of the statute does not support his view. Sections 522(o) and (p) are easily reconciled; indeed, they are intended to work together. Section 522(p) automatically limits the value of a homestead exemption where the home was acquired during the 1,215 days prior to the bankruptcy. Section 522(o) provides for a reduction in the homestead value claimed, including the capped homestead value when section 522(p) applies, where it is shown that the debtor used non-exempt assets to obtain value in a homestead with the intent to stymie creditors.

Mr. Rensin acquired his Florida home within 10 years prior to the filing of this case. To buy the home, he used only the proceeds from the sale of the Hunt Crossing home in Maryland, where he never lived. The funds used to purchase Mr. Rensin's Florida home were not exempt under any law. That Mr. Rensin later sold his former Maryland homestead has no impact on this analysis. Even if Mr. Rensin could have preserved the exempt nature of his Maryland homestead in its proceeds, none of those proceeds were actually used to purchase his Florida home.

In the alternative, Mr. Rensin argues that he is entitled to the Maryland exemption on his homestead with a value of $22,975. But, under 11 U.S.C. § 522(b)(3), only Florida exemption law applies in this case.

The plaintiff presents a thorough analysis of the facts and circumstances of Mr. Rensin's purchase of the Florida home under the usual badges of fraud, which the Court adopts. The evidence is overwhelming that Mr. Rensin purchased the Florida home with the intent to hinder and delay his creditors, including the FTC, within the meaning of section 11 U.S.C. § 522(o). Mr. Rensin did not present anything to rebut the plaintiff's evidence. Mr. Rensin's claimed exemption in his Florida

homestead will be denied and the Court will order turnover of all proceeds of the homestead, which was sold pursuant to prior order of this Court.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.        The plaintiff's motion for partial summary judgment [ECF No. 24, Adv. Proc. No. 17-01281; as joined by ECF Nos. 70 and 164, Case No. 17-11834] is GRANTED IN PART and DENIED IN PART as provided herein.

2.        Mr. Rensin's motion for partial summary judgment [ECF No. 28] is GRANTED IN PART and DENIED IN PART as provided herein.

3.        Under count I of the complaint, the Court will enter declaratory judgment that Mr. Rensin's interests as annuitant under the fixed annuity and the variable annuity, including payments received and to be received by him, are property of the bankruptcy estate, subject to Mr. Rensin's valid exemption of such assets from administration in this case.

4.        Because the Joren Trustee is an indispensable party that has not been joined, that portion of count I seeking a declaratory judgment that the assets of the Joren Trust are property of the bankruptcy estate will be dismissed, without prejudice.

5.        The Court will deny all relief under count II of the complaint.

6.        The Court will grant Mr. Rensin's claimed exemption of his rights under the fixed annuity and the variable annuity, including amounts paid and to be paid to him thereunder, and his claimed exemption in the Regions Bank account.  The Court will enter a separate order in the main chapter 7 case to this effect.

7.        The Court will deny all relief under count III of the complaint, without prejudice to potential amendment to seek relief against the Joren Trustee pursuant to paragraph 8 of this Order.

8.      The plaintiff shall have sixty (60) days from entry of this order to (a) file an amended complaint (i) adding the Joren Trustee as a party defendant and (ii) amending the text of count III solely to make it applicable to the Joren Trust and to request turnover of assets declared as property of the bankruptcy estate pursuant to count I, and (b) file proof of service on the Joren Trustee.  The plaintiff may waive this deadline by filing a notice that it does not intend to join the Joren Trustee.

9.      If the plaintiff does not timely file an amended complaint and proof of service on the Joren Trustee or if the plaintiff waives such deadline, each as provided in paragraph 8 of this Order, the Court will enter a separate judgment in this adversary proceeding providing the relief addressed in paragraphs 3, 5 and 7 of this Order and also denying that portion of count I seeking a declaratory judgment that the assets of the Joren Trust are property of the bankruptcy estate.

10.     If the plaintiff timely files an amended complaint and proof of service on the Joren Trustee, as required by paragraph 8 of this Order, the Court will set a status conference in this adversary proceeding.

11.     The Court will sustain the plaintiff's objection to Mr. Rensin's homestead objection and direct turnover of all proceeds of the home.  The Court will enter a separate order in the main chapter 7 case to this effect.

### 

Copies Furnished To:
D. Brett Marks, Esq.

*D. Brett Marks, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service with the court.*